WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
CLAUDIA M. VETESI (CA SBN 233485)
CVetesi@mofo.com
LISA A. WONGCHENKO (CA SBN 281782)
LWongchenko@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
UNILEVER UNITED STATES, INC.
and PEPSI/LIPTON TEA PARTNERSHIP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMY MAXWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., PEPSICO, INC., and PEPSI LIPTON TEA PARTNERSHIP,<br><br>Defendants. | Case No. C12-01736-EJD<br><br>**NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS  UNILEVER UNITED STATES, INC. AND PEPSI/LIPTON TEA PARTNERSHIP'S MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>Hearing Date: December 7, 2012<br>Time:             9:00 a.m.<br>Judge:           Hon. Edward J. Davila<br>Action Filed:  April 6, 2012 |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ........................................................................... viii

STATEMENT OF THE ISSUES TO BE DECIDED........................................................ ix

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 1

II.     FACTUAL BACKGROUND ........................................................................ 2

     A.     The Gravamen of the FAC. ................................................................ 2

     B.     Procedural History. ............................................................................ 3

     C.     The Nine Causes of Action and the Prayer for Relief......................... 3

III.    THE LEGAL STANDARD ........................................................................... 3

IV.    ARGUMENT ................................................................................................. 4

     A.     Plaintiff Cannot Satisfy Article III's "Case or Controversy" Requirement. ........... 4

          1.     This Is a "No-Injury" Case that Fails the Test of Article III....................... 4

          2.     The Court Should Strike All Claims Regarding Statements Plaintiff Did Not See and Concerning Products Plaintiff Did Not Buy.................... 8

     B.     All of Plaintiff's Claims Are Preempted. ................................................. 9

          1.     There is No Private Right of Action to Enforce FDA Regulations............. 9

          2.     The Sherman Law Cannot Be Used to Enforce FDA Regulations. .......... 13

          3.     Plaintiff's Attempts to Impose Requirements "Not Identical" to FDA Regulations Are Expressly Preempted............................................. 14

     C.     Plaintiff Has Not Alleged a Plausible Legal Injury, Reliance, or Deception........ 18

          1.     Plaintiff's Claims Are Facially Implausible............................................. 18

          2.     Plaintiff Has Not Pled Her Case with the Requisite Particularity............. 22

     D.     Plaintiff's Claims All Fail for Other, Claim-Specific Reasons............................ 23

          1.     Plaintiff's UCL, CLRA, and FAL Claims Fail to State a Claim. ............... 23

          2.     Plaintiff's Breach of Warranty Claims Should Be Dismissed. ................. 24

          3.     "Unjust Enrichment" is Not a Cause of Action in California. ................. 24

V.     CONCLUSION ............................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*All One God Faith, Inc. v. Hain Celestial Grp., Inc.*,
   No. C 09-3517 SI, 2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012) ........... 10, 15, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 3, 18, 19

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10-4937 PJH, 2011 U.S. Dist. LEXIS 57348 (N.D. Cal. May 26, 2011) ...................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 18

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ............................................................................................ 7, 23

*Boysen v. Walgreen Co.*,
   No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ........... 6, 8, 23

*Braintree Labs, Inc. v. Nephro-Tech, Inc.*,
   No. 96-2459-JWL, 1997 U.S. Dist. LEXIS 2372 (D. Kans. Feb. 26, 1997) ........................... 10

*Buckman Co. v. Pls.' Legal Comm.*,
   531 U.S. 341 (2001) ................................................................................................................ 9

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) .................................................................................................... 3

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   No. C 10–01044 JSW, 2011 WL 159380, *aff'd*, 475 F. App'x 113 (9th Cir. 2012) .......... 8, 15

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................................... 17

*Chavez v. Nestle USA, Inc.*,
   No. CV 09-9192-GW(CWx),
   2011 U.S. Dist. LEXIS 9773 (C.D. Cal. Jan. 10, 2011) ................................................. 10, 11

*Chavez v. Nestle USA, Inc.*,
   No. CV 09-91920GW(CWx),
   2011 U.S. Dist. LEXIS 58733 (C.D. Cal. May 2, 2011) ....................................................... 19

*Degelmann v. Advanced Med. Optics, Inc.*,
   659 F.3d 835 (9th Cir. 2011) ............................................................................................ 7, 15

*Dvora v. Gen. Mills, Inc.*,
    No. CV 11-1074-GW(PLAx), 2011 WL 1897349 (C.D. Cal. May 16, 2011) .................. 9, 20

*Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ................................................................................................. 13

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995).............................................................................................. 21

*Frye v. L'Oreal USA, Inc.*,
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ................................................................................ 6

*Hairston v. S. Beach Beverage Co.*,
    No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012)............................ 20, 24

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) .................. 4, 6

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ......................................................................................... 21

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) ............................................................................ 14

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ........................................................................... 9, 23

*In re Fruit Juice Products Marketing and Sales Practices Litigation*,
    No. 11-MD-02231-MAP, 2011 U.S. Dist. LEXIS 147588 (D. Mass. Dec. 21, 2011) ............. 6

*In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008)................................................................................ 18

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D. N.J. July 10, 2009) ................ 14

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..................................................................................................... 24

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ........................................................................................... 21

*Johns v. Bayer Corp.*,
    No. 09-1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ........................... 8, 9, 24

*Kanter v. Warner-Lambert Co.*,
    99 Cal. App. 4th 780 (2002) ......................................................................................... 18, 24

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)......................................................................................... 4, 22

*Kelley v. Mortg. Elec. Registration Sys.*,
    642 F. Supp. 2d 1048 (N.D. Cal. 2009) ................................................................ 23

*Kuenzig v. Kraft Foods, Inc.*,
    No. 8:11–cv–838–T–24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) ..................... 18

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ......................................................................... 7, 21

*Larsen v. Trader Joe's Co.*,
    No. C 11-05188 SI, 2012 U.S. Dist. LEXIS 102284 (N.D. Cal. July 23, 2012) ................... 24

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ..................................................................... 21

*Loreto v. Procter & Gamble Co.*,
    737 F. Supp. 2d 909 (S.D. Ohio 2010) ............................................................. 13

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2012 U.S. Dist. LEXIS 97012 (N.D. Cal. July 12, 2012) ........ 22, 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................... 4

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011) ............................................................ 19, 21

*Meaunrit v. Pinnacle Foods Grp., LLC*,
    No. C 09-04555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010) ................................ 13, 15

*Meyer v. Sprint Spectrum, L.P.*,
    45 Cal. 4th 634 (2009) ........................................................................... 23

*Mills v. Giant of Md., LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd on other grounds*,
    508 F.3d 11 (D.C. Cir. 2007) ................................................................ 14, 18

*Minims Apothecary, LLC v. InformedRx, Inc.*,
    No. C 11-6612 PJH, 2012 U.S. Dist. LEXIS 41162 (N.D. Cal. Mar. 26, 2012) ................... 25

*Myers-Armstrong v. Actavis Totowa, LLC*,
    382 F. App'x 545 (9th Cir. 2010) ................................................................. 24

*Perez v. Nidek Co.*,
    657 F. Supp. 2d 1156 (S.D. Cal. 2009) ........................................................ 14, 24

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ............................................................ 17

*Polk v. KV Pharm. Co.*,
　 No. 4:09-CV-00588 SNLJ,
　 2011 U.S. Dist. LEXIS 144313 (D. Mo. Dec. 15, 2011) ........................................................ 19

*Pom Wonderful LLC v. Coca-Cola Co.*,
　 679 F.3d 1170 (9th Cir. 2012) ...................................................................................... *passim*

*Red v. Kroger Co.*,
　 No. 10-01025-DMG-MAN,
　 2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) ..................................................... 18

*Reid v. Johnson & Johnson*,
　 No. 3:11-cv-1310-L-BLM,
　 2012 U.S. Dist. LEXIS 133408 (S.D. Cal. Sept. 18, 2012) ............................................. 17, 20

*Riegel v. Medtronic, Inc.*,
　 552 U.S. 312 (2008) ............................................................................................................ 13

*Rivera v. Wyeth-Ayerst Labs.*,
　 283 F.3d 315 (5th Cir. 2002) ................................................................................................ 7

*Rosen v. Unilever United States, Inc.*,
　 No. C 09-02563 JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ....................................... 21

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
　 902 F.2d 222 (3d Cir. 1990) ................................................................................................ 13

*Sateriale v. R.J. Reynolds Tobacco Co.*,
　 No. 11-55057, 2012 U.S. App. LEXIS 14394 (9th Cir. July 13, 2012) ................................ 23

*Shepard v. DineEquity, Inc.*,
　 No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245 (D. Kan. Sept. 25, 2009) ....................... 18

*Skelton v. GM Corp.*,
　 660 F.2d 311 (7th Cir. 1981) ................................................................................................ 24

*Smith v. Ebay Corp.*,
　 No. C 10-03825 JSW,
　 2012 U.S. Dist. LEXIS 1211 (N.D. Cal. Jan. 5, 2012) ......................................................... 25

*Stephenson v. Neutrogena Corp.*,
　 No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) ................... 8

*Turek v. Gen. Mills, Inc.*,
　 662 F.3d 423 (7th Cir. 2011) ............................................................................................ 9, 14

*Verzani v. Costco Wholesale Corp.*,
　 No. 09 Civ. 2117 (CM), 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010) ........... 14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..................................................................................... 22

*Whitson v. Bumbo*,
    No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009)............... 23

*Williams v. Purdue Pharma Co.*,
    297 F. Supp. 2d 171 (D.D.C. 2003) ............................................................................... 7

*Williamson v. Apple, Inc.*,
    No. 5:11-cv-00377 EJD, 2012 U.S. Dist. LEXIS 125368 (N.D. Cal. Sept. 4, 2012) ....... 20, 24

*Wright v. Gen. Mills, Inc.*,
    No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)................................ 21

*Zwart v. Hewlett-Packard Co.*,
    No. 5:10-CV-03992-JF HRL, 2011 WL 767750 (N.D. Cal., Feb. 25, 2011) ........................ 8

STATUTES

15 U.S.C.
    § 2301 *et seq.* ........................................................................................................ 3, 24
    § 2301(6) ....................................................................................................................... 24
    § 2302(e) ....................................................................................................................... 24

21 U.S.C.
    § 301 *et seq.* ................................................................................................................. 2
    § 321(g)(1)(B) ............................................................................................................... 17
    § 321(g)(1)(C) ............................................................................................................... 17
    § 337(a) ................................................................................................................. *passim*
    § 343-1(a) ....................................................................................................... 14, 17, 18
    § 343(a) .......................................................................................................................... 17
    § 343(r)............................................................................................................................ 15
    § 343(r)(1)(B) ................................................................................................................. 17

21 C.F.R.
    § 100.1(c)(4)................................................................................................................... 17
    § 101.13.......................................................................................................................... 3
    § 101.13(i)(3) .......................................................................................................... 16, 17
    § 101.14.......................................................................................................................... 3
    § 101.22.......................................................................................................................... 3
    § 101.22(a)(1) ............................................................................................................... 16
    § 101.54.......................................................................................................................... 3
    § 101.54(g) ..................................................................................................................... 3
    § 170.3(o)(21) ........................................................................................................ 15, 17
    § 184.1033 ..................................................................................................................... 12
    § 184.1866(a) ................................................................................................................ 16

58 Fed. Reg. 2302 (Jan. 6, 1993) ......................................................................................... 3

Fed. R. Civ. P.
    Rule 9(b) ................................................................................................................ 22

Cal. Bus. & Prof. Code
    § 17200 ..................................................................................................................... 3
    § 17500 ..................................................................................................................... 3

Cal. Civ. Code
    § 1750 *et seq.* ......................................................................................................... 3
    § 1790 ....................................................................................................................... 3
    § 1791.2(a)(1) ......................................................................................................... 24
    § 1794(a) ................................................................................................................ 24
    § 1794(d) ................................................................................................................ 24
    § 1790 *et seq.* ....................................................................................................... 24

**OTHER AUTHORITIES**

FDA, *Guidance for Industry: A Food Labeling Guide*, (revised Oct. 2009), *available at*
    http://www.fda.gov/downloads/Food/GuidanceComplianceRegulatoryInformation/Gui
    danceDocuments/FoodLabelingNutrition/FoodLabelingGuide/UCM265446.pdf. ............... 16

Nurk, et al., *Intake of Flavonoid-Rich Wine, Tea, and Chocolate by Elderly Men and
    Women is Associated with Better Cognitive Test Performance*,
    139 J. NUTR. 120 (2009) ......................................................................................... 6

Stephanie Strom, *Lawyers from Suits Against Big Tobacco Target Food Makers*, New
    York Times, August 18, 2012, *available at* http://www.nytimes.com/
    2012/08/19/business/ lawyers-of-big-tobacco-lawsuits-take-aim-at-food-industry.html ......... 2

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 7, 2012 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Jose Division, located at 280 South First Street, San Jose, CA 95113, before the Honorable Edward J. Davila, defendants Unilever United States, Inc. and Pepsi/Lipton Tea Partnership ("Defendants") will, and hereby do move, to dismiss the Amended Complaint ("FAC") of Plaintiff Amy Maxwell pursuant to (i) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, (ii) Fed. R. Civ. P. 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted, and (iii) Fed. R. Civ. P. 9(b) for failure to plead claims grounded in fraud with sufficient particularity.

In addition, pursuant to Fed. R. Civ. P. 12(f), Defendants will ask the Court to strike as "immaterial" all averments regarding (i) other products that Plaintiff never alleges that she bought (*see* FAC ¶¶ 2, 5, 16, 68, 71, 83, 95, 104, 105, 117, 125), and (ii) Defendants' SEC filings, regulatory filings, and non-label advertising that Plaintiff does not allege that she read or saw. (*Id.* ¶¶ 3, 4, 6, 8, 15, 55, 117, 118, 120, 125.)

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations of Stuart Cobert and Claudia M. Vetesi, Defendants' Request for Judicial Notice in Support of Their Motion to Dismiss, filed simultaneously with this motion, and on such other written and oral argument as may be presented to the Court.

Dated:  October 12, 2012

WILLIAM L. STERN
CLAUDIA M. VETESI
LISA A. WONGCHENKO
MORRISON & FOERSTER LLP


By:  /s/ William L. Stern
    William L. Stern

Attorneys for Defendants
UNILEVER UNITED STATES, INC. and
PEPSI/LIPTON TEA PARTNERSHIP

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2

This motion raises the following issues:

3

1. **Article III/Standing.**  Can consumers sue a food manufacturer over a product label in the absence of any particularized allegation that Plaintiff suffered an injury in fact, economic or otherwise, within the meaning of Article III? Alternatively, can Plaintiff sue on the basis of advertising or statements made in "10-K" and other regulatory filings she never read or saw, or over products she never bought?

4

5

6

2. **Preemption.**  Are Plaintiff's state-law claims seeking to privately enforce FDA regulations barred under 21 U.S.C. § 337(a) and the Ninth Circuit's holding in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012)?  Are such claims preempted by the Nutrition Labeling and Education Act, 21 U.S.C. § 343-1(a) to the extent Plaintiff seeks to impose product label requirements that are "not identical to" FDA regulations or guidance?

7

8

9

3. **Plausibility (*Iqbal/Twombly*).**  Can a consumer sue a food manufacturer over a product label if the product itself is not tainted or corrupted and there is no plausible allegation that she relied, suffered cognizable injury, or was deceived?  Must plaintiff plead her claims with particularity?

10

11

12

4. **Individual Causes of Action (UCL/CLRA; Warranty; Unjust Enrichment).**  First, if Plaintiff bought and consumed food products and suffered no personal or economic injury or alleged no plausible claim of reliance, has she stated a claim under Cal. Bus. & Prof. Code §§ 17200/17500 or Cal. Civ. Code § 1750?  Second, if the food products were sold without any promise of a defect-free product or level of performance over a specific period of time, can she state a claim for breach of express warranty under Cal. Civ. Code § 1790 and 15 U.S.C. § 2301?  Third, is there a cause of action in California for unjust enrichment?

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

3       This is a no-injury "private Surgeon General" action, one of 24 (and counting) nearly-

4   identical "misbranding" class action cases filed during a 15-week blitz by nine law firms from six

5   different states.[1]  These "assembly-line" complaints follow a common recipe:  Posit a wrong by

6   reading in isolation a few words on a food label, mix in a cramped reading of an FDA regulation,

7   toss in a plaintiff, and sue, seeking massive damages and product label changes.

8       Plaintiff Amy Maxwell's claims fail for four reasons.

9       <u>First</u>, Plaintiff cannot show Article III "injury-in-fact."  Starting from cooked-up wrongs

10  and extending to advertising she never saw and products she never bought, she insists everyone

11  should get his or her money back.  Not because the Lipton Tea and bottled beverage products she

12  bought were spoiled or contaminated, not because she (or anyone else) suffered injury, and not

13  because the contents were misidentified.  Rather, all of the products, such as black and green tea

14  bags that have been sold around the globe for 100 years, are supposedly "*legally* worthless,"

15  Plaintiff says, because the labels do not measure up to her notions of what FDA requires.  The

16  products she bought are worth exactly what Ms. Maxwell paid for them.  So, Plaintiff advances a

17  novel theory of "regulatory injury," but no court has allowed that to stand in place of Article III's

18  "injury in fact" requirement.  Calling a product "*legally* worthless" adds nothing except a preview

19  of class counsel's closing argument.

20      <u>Second</u>, all of Plaintiff's claims are preempted.  Ms. Maxwell wants to redress alleged

21  violations of FDA regulations using state law claims that she says are "identical."  However, there

22  is no private right of action.  Only the government may sue for such violations, as the Ninth

23  Circuit held in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012).

24  Furthermore, many of Plaintiff's claims seek to impose labeling requirements that are *not*

25

26

---

27      [1]  Exhibit A to Defendants' Request for Judicial Notice ("RJN") lists the 24 cases.  Five of
   them, including this case, are pending in this Department.

28

1   "identical" to what FDA has mandated; those claims are expressly preempted.  Either way, Ms.

2   Maxwell is barred.

3           <u>Third</u>, Ms. Maxwell has not pled "plausible" claims of injury, reliance, or deception.  Nor

4   has she pled her claims with the level of particularity the Ninth Circuit requires.  In August, class

5   counsel told the New York Times that "we researched [FDA] regulations and labels for two years

6   before filing our first case."[2]  If it took nine law firms two years of legal research to figure this

7   out, how does she suppose a "reasonable consumer" entering a grocery store could attain such an

8   understanding of FDA labeling rules, let alone that the entire class would have had that

9   understanding, so as to have been duped by these alleged technical FDA infractions?

10          <u>Fourth</u>, none of Plaintiff's nine causes of action states a viable claim.

11          Ms. Maxwell seeks colossal damages, punitive damages, and a nationwide injunction

12   asking the Court to redesign Defendants' labels.  These are matters that FDA already oversees.

13   Plaintiff is saying, in effect, "Never mind FDA, I get to do the mandating and interpreting."  But a

14   "*Maxwell* label"—named after this case—is both unwarranted and unnecessary.

15          The Court should grant Defendants' motion to dismiss and to strike, with prejudice.

16   **II.     FACTUAL BACKGROUND**

17          **A.     The Gravamen of the FAC.**

18          Plaintiff seeks certification of a California class of buyers of Defendants' tea and tea

19   beverages.  (Amended Complaint at 1:21-2:2 ("FAC").)  She claims Defendants have made

20   statements that violate FDA[3] labeling regulations.  A "reasonable person," she supposes, "would

21   attach importance to whether Defendants' products are legally salable and capable of legal

22   possession." (*Id.* ¶ 158.)[4]  She says she would not have bought the products had she known they

23   were "legally worthless as a matter of law." (*Id.* ¶ 131; *see also id.* ¶¶ 65, 80, 87, 99, 111.)

---

[2] Stephanie Strom, *Lawyers from Suits Against Big Tobacco Target Food Makers*, New York Times, August 18, 2012, *available at* http://www.nytimes.com/2012/08/19/business/lawyers-of-big-tobacco-lawsuits-take-aim-at-food-industry.html.

[3] FDA requirements are set forth in the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (FDCA) as amended in 1990 by the Nutrition Labeling and Education Act (NLEA).

[4] Legible copies of labels discussed in this motion are in the RJN, Exs. C, D, and H.

B.     **Procedural History.**

In her original complaint, Ms. Maxwell alleged four violations of FDA regulations or policies.  These related to: (i) antioxidants (21 C.F.R. § 101.54(g)); (ii) nutritional value (*id.* § 101.54(g)(1)); (iii) "natural" (58 Fed. Reg. 2302, 2407 (Jan. 6, 1993)) (RJN Ex. B); and (iv) "health" claims (21 C.F.R. § 101.14).  Defendants moved to dismiss.  (*See* ECF Dkt. No. 19.)

Instead of opposing, Plaintiff amended.  (ECF Dkt. No. 23.)  The Amended Complaint is now 55 pages long.  Instead of four purported infractions, now there are six.[5]  Instead of seven products, she now attacks "any Lipton or Brisk tea products" as well.  (FAC ¶ 160.)  And instead of a nine-page litany of supposed regulatory offenses, the FAC has now expanded this into a 21-page catalog.  (*Id.* at 15-36.)

C.     **The Nine Causes of Action and the Prayer for Relief.**

Plaintiff alleges that the six purported FDA labeling violations (FAC ¶¶ 53-130) also constitute violations of California's "Sherman Law."  (*Id.* ¶¶ 13, 28-30.)  She sues under eight state law claims and one federal law claim: (i) the "unlawful" prong of California's unfair competition law (Cal. Bus. & Prof. Code § 17200) (UCL), (ii) the UCL's "unfair" prong, (iii) the UCL's "fraudulent" prong, (iv) deceptive advertising under the False Advertising Law (Cal. Bus. & Prof. Code § 17500) (FAL), (v) untrue advertising, (vi) the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) (CLRA), (vii) unjust enrichment, (viii) the Song-Berverly Act (Cal. Civ. Code § 1790), and (ix) the Magnuson-Moss Act (15 U.S.C. § 2301).

Plaintiff prays for compensatory and punitive damages, restitution, disgorgement of profits, interest, attorneys' fees, costs, and injunctive relief. (FAC at 53:2-16.)

III.   **THE LEGAL STANDARD**

A court must accept all factual allegations pleaded in the complaint as true, *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations.  *See Ashcroft v.*

---

[5] The two new claims allege violations of FDA regulations regarding nutrient content claims (21 C.F.R. §§ 101.13 and 101.54) and preservatives (*id.* § 101.22).

1  *Iqbal*, 556 U.S. 662, 681 (2009) ("[B]are assertions…amount[ing] to nothing more than a

2  'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to

3  an assumption of truth (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

4        Plaintiff alleges that Defendants engaged in a scheme of false advertising (*see* FAC

5  ¶¶ 205-206), thus, the entire FAC must be pled with particularity.  *Kearns v. Ford Motor Co*.,

6  567 F.3d 1120, 1126-27 (9th Cir. 2009); *Herrington v. Johnson & Johnson Consumer Cos.*,

7  No. C 09-1597 CW, 22010 U.S. Dist. LEXIS 90505, at *26-27 (N.D. Cal. Sept. 1, 2010) (Wilken,

8  J.) (dismissing UCL, FAL, and CLRA claims because plaintiff did not plead with particularity).

9  **IV.**   **ARGUMENT**

10      **A.**   **Plaintiff Cannot Satisfy Article III's "Case or Controversy" Requirement.**

11          **1.**   **This Is a "No-Injury" Case that Fails the Test of Article III.**

12        This is a no-injury case.  To have Article III standing, a plaintiff must plead and prove

13  "injury in fact," causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

14  61 (1992).  "Injury in fact" requires damage to "a legally protected interest which is (a) concrete

15  and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.*  (internal

16  citations omitted).  Plaintiff cannot satisfy these requirements.

17        Plaintiff's alleged injury arises from the allegation that the products are "*legally* worth-

18  less.  (*See* FAC ¶¶ 64-65, 99-100, 111, 130-31, 179, 189, 199, 208, 217, 240, 250, 261 (italics

19  added).)  That is a legal construct—"regulatory injury"—it is not real harm.

20        Imagine suing an airline and demanding a refund because the airline filed maintenance

21  reports with the FAA that are technically non-compliant, or a restaurant because of a licensing

22  application filed with a city health department that was somehow non-compliant.  Assume that

23  the airline got you safely to your destination and that your meal was unobjectionable.  In each

24  case, you got fair value.  You have not suffered Article III "injury-in-fact."

25        A similar analysis applies here.  Ms. Maxwell contends, for example, that she was injured

26  by the truthful labeling statement, "130 mg tea flavonoids per serving" (RJN Ex. C), because it

27  allegedly violates FDA's antioxidant regulations. (FAC ¶ 69.)  But she never alleges that she even

28  knew about the FDA regulations, that she believed the statement meant anything other than the

1    product contains 130 mg of flavonoids per serving, that she failed to get "130 mg" of flavonoids

2    (which she did receive), or that the tea products were not in fact genuine and unadulterated.

3           Ms. Maxwell got what she paid for.  She paid for tea and bottled beverages.  The foods

4    were not tainted, spoiled, or contaminated.  She does not allege that the mandatory "Nutrition

5    Facts" box was noncompliant or that anything on the labels inaccurately disclosed the products'

6    actual contents.  Plaintiff consumed them without incident or physical injury.  Even if there were

7    instances of technical noncompliance with FDA rules, which Defendants deny, Plaintiff suffered

8    no more harm than did the airline passenger or restaurant patron in the example just cited.

9           There is no transgression too small to have escaped Ms. Maxwell's notice.  For example,

10   she complains about parentheses in Lipton's "Sweet Tea" label, which states "…phosphoric acid,

11   sodium hexametaphosphate (to protect flavor)…," and two additional parentheticals in the

12   ingredient list.  (FAC ¶ 105; *see* RJN Ex. D.)  She thinks phosphoric acid should also have a

13   parenthetical description because it is "being used as an artificial flavor *and/or* acidulant."  (FAC

14   ¶ 105 (emphasis added).)  Plaintiff does not know the function of this ingredient, yet claims—

15   without any factual support—that there should be a parenthetical after it.  More importantly,

16   nowhere does Plaintiff explain how she was injured by this parenthetical.  Buying a knock-off

17   Rolex may cause injury; an allegedly absent parenthesis cannot.  Even Ms. Maxwell makes no

18   such claim.  The most she can muster is that a reasonable consumer would expect "that when

19   Defendants lists [sic] their products' ingredients that it would make all disclosures required by

20   law."  (FAC ¶ 106.)

21          Just as bad, she claims that she "based her purchasing decisions in part on the belief that

22   these products did not contain chemical preservatives or artificial ingredients." (*Id.* ¶ 107.)  But

23   the Sweet Tea product lists three separate parentheticals describing preservatives, so Plaintiff

24   must have ignored these statements.  She cannot claim injury from the placement of a

25   parenthetical, while simultaneously ignoring the parentheticals in the very same ingredient list.

26          Plaintiff's statement that the products are "*legally* worthless" is telling.  It suggests that

27   Ms. Maxwell's "injury" was inflicted by an adverb—"legally"—and not economics.  This is not

28   the type of injury that Article III recognizes.  Plaintiff has simply invented the notion of "legal

worthlessness," yet there is nothing in federal or state law that says a product—even one with a non-conforming label—is "worthless" as a matter of law.

Judge Illston faced a similar claim in *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012), in which purchasers of fruit juice claimed "injury-in-fact" from the fact that the products contained trace amounts of lead and arsenic. However, as here, plaintiff consumed the products and suffered no side-effects. Judge Illston dismissed for lack of Article III standing, citing the fact that plaintiff made no claim that the products "were unfit for their intended use, i.e. consumption, …." 2012 U.S. Dist. LEXIS 100528, at *22 (citing *Koronthaly v. L'Oreal USA, Inc.*, 343 F. App'x 257, 259 (3d Cir. 2010)); *Herrington*, 2010 U.S. Dist. LEXIS 90505, at *17-18 (presence of carcinogens in children's bath products did not create a cognizable economic injury under Article III).[6]

Our case is even more compelling for a no-injury finding. In the foregoing cases, the products allegedly contained toxins. Ms. Maxwell alleges no such thing. The flavonoids that Plaintiff focuses on, for example, are not in any way detrimental ingredients, but exist naturally in tea and have widely recognized health benefits.[7]

Plaintiff cannot claim economic injury where she received the benefit of her bargain. She repeatedly states that she would not have purchased the products at all, or would not have paid a premium, "had she known they were not capable of being legally sold or held." (FAC ¶¶ 65, 75, 81, 88, 100, 111, 129, 179, 189, 199, 208, 217, 250, 261.) But she alleges no "bait-and-switch" (e.g., that that the products' contents were different than what the labels said they were),[8] that the

---

[6] *See also In re Fruit Juice Products Marketing and Sales Practices Litigation*, No. 11-MD-02231-MAP, 2011 U.S. Dist. LEXIS 147588, at *12 (D. Mass. Dec. 21, 2011) (no injury because "Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm"); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (presence of lead in lipstick had no observable economic consequences as would satisfy Article III).

[7] *See, e.g.*, Nurk, et al., *Intake of Flavonoid-Rich Wine, Tea, and Chocolate by Elderly Men and Women is Associated with Better Cognitive Test Performance*, 139 J. NUTR. 120, 120-27 (2009) (RJN Ex. E).

[8] For example, in *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4937 PJH, 2011 U.S. Dist. LEXIS 57348 (N.D. Cal. May 26, 2011), the court found plaintiffs alleged injury because they claimed the ice cream they purchased contained the undisclosed ingredient,

(Footnote continues on next page.)

1    products *lacked* the nutrients they claimed to have (e.g., "130 mg" flavonoids), or that she failed

2    to receive positive health benefits.  She cannot allege injury-in-fact from health benefits that she

3    bargained for, and received.[9]  *See Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78

4    (D.D.C. 2003) (no economic injury where plaintiffs allegedly overpaid for drug advertised as

5    providing twelve-hour pain relief with little risk of addiction, but failed to allege lack of relief or

6    addiction); *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315, 320 (5th Cir. 2002) (claims of economic

7    loss relating to use of recalled drug were meritless because plaintiff "paid for an effective pain

8    killer, and she received just that—the benefit of her bargain"); *Birdsong v. Apple, Inc.*, 590 F.3d

9    955, 961 (9th Cir. 2009) ("plaintiffs have failed to allege a cognizable defect under any of their

10   asserted claims … the alleged loss in value does not constitute a distinct and palpable injury").

11          *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011)*,* does not

12   undermine this conclusion.  In that case, a contact lens solution was recalled after FDA reported

13   an increase among users of a serious eye infection.  *Id.* at 838.  The plaintiffs alleged that they

14   had "paid more" due to their reliance on representations that the product was an effective

15   disinfectant when, in fact, consumers were seven times more likely to suffer an eye infection.  *Id.*

16   at 838, 840.  Unremarkably, the Ninth Circuit found that this stated a legal injury.  *Id.* at 840.

17   Consumers paid money for something they didn't get.  Judge Illston distinguished *Degelmann* on

18   that basis—those "plaintiffs supported their claims of economic injury with plausible allegations

19   that the product actually performed at a lower level than comparable products and less well than

20   (Footnote continued from previous page.)

21   potassium carbonate.  Ms. Maxwell doesn't allege that any of Defendants' products contained
     ingredients that are different than what the labels or Nutrition Facts box described.

22         [9]  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), is not to the contrary either.
     There the court found standing based on the plaintiff's allegations that she relied on the "Made in

23   the U.S.A." claim and would not have bought the products had she known it was false.  *Id.* at
     327-28.  But that was a standard bait-and-switch: Kwikset tried to "pass off" a product as having

24   attributes it didn't have.  Moreover, the alleged falsity in *Kwikset* resided within the "four
     corners" of the label, which meant that any consumer picking up the product could have been

25   potentially misled by "Made in the U.S.A."  Here, by contrast, the contents are not misidentified
     and there is nothing intrinsically misleading about the "four corners" of the labels.  To the

26   contrary, Plaintiff asks the Court to draw upon an *extrinsic* reference point: FDA regulations and
     policy.  This feature also renders Plaintiff's alleged reliance implausible because only someone

27   steeped in the arcana of FDA regulations would have a basis for drawing the conclusion that
     Defendants' labels are misleading.  (*See* Section C, *infra*.)

28

1  advertised." *Boysen*, 2012 U.S. Dist. LEXIS 100528, at *21.  By contrast, in *Boysen*, Plaintiffs

2  failed to plead that the supposed *regulatory* noncompliance carried economic consequences.

3          The same is true here.  The FAC should be dismissed for failure to satisfy Article III.

4          **2.      The Court Should Strike All Claims Regarding Statements Plaintiff**
           **Did Not See and Concerning Products Plaintiff Did Not Buy.**
5

6          You can't be deceived by something you never saw, and you can't have lost money on

7  something you never bought.  The Court should strike those irrelevant averments.[10]

8          After reading Defendants' earlier motion, which pointed out this defect, Plaintiff

9  (suddenly refreshed) realized she bought other products and tried to fix the problem.  Yet, having

10 bought just eight products (FAC ¶ 149), she now wants to attack *all* "Lipton or Brisk tea

11 products" and "any carbonated beverage manufactured, distributed or bottled under the authority

12 of the Defendants that contained an artificial flavoring, artificial coloring, or chemical

13 preservative but failed to bear a statement on its label disclosing that fact."  (*Id*. ¶ 160.)

14         Plaintiff "cannot expand the scope of [her] claims to include a product [she] did not

15 purchase."  *Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal.

16 Feb. 9, 2010); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10–01044 JSW, 2011

17 WL 159380, at *2-3 (same), *aff'd*, 475 F. App'x 113 (9th Cir. 2012); *Zwart v. Hewlett-Packard

18 Co.*, No. 5:10-CV-03992-JF HRL, 2011 WL 767750, at *8-11 (N.D. Cal., Feb. 25, 2011) (Fogel,

19 J.) (dismissing claims based on products plaintiff never bought/no injury, reliance, or causation).

20 The Court should strike claims regarding products Plaintiff did not buy.  In particular, the various

21 Lipton products are each unique and distinctive and require an individualized factual inquiry;

22 therefore the complaint should be dismissed with prejudice with respect to products that were not

23 actually purchased by Plaintiff.  *See Stephenson v. Neutrogena Corp.*, No. C 12-0426 PJH, 2012

24 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) (similar conclusion relating to cosmetic

25 products).

26

27 ─────────────────

28         [10] For a list of the irrelevant averments in the FAC, *see* Notice of Motion, p. viii.

1        Moreover, the FAC continues to contain references to representations that Plaintiff never

2    alleges to have seen, including Unilever's "Global Principles for Responsible Food and Beverage

3    Marketing." (*Cf.* FAC ¶¶ 3, 6.) These averments should be stricken. *See Johns*, 2010 U.S. Dist.

4    LEXIS 10926, at *13 (no claims based on false advertisements on which plaintiff did not rely);

5    *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May

6    16, 2011) (Wu, J.) (no claim over website statements that plaintiff never read); *In re Ferrero*

7    *Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (Huff, J.) (same).

8        **B.**    **All of Plaintiff's Claims Are Preempted.**

9            **1.**    **There is No Private Right of Action to Enforce FDA Regulations.**

10        At bottom, all of Plaintiff's allegations are based on alleged violations of FDA regulations

11    or policies. As a result, Plaintiff's allegations (even those pled under California law) seek to

12    privately enforce the FDCA. But there is no private right of action. Private litigants are

13    prohibited from suing to enforce compliance with the FDCA. *See Buckman Co. v. Pls.' Legal*

14    *Comm.*, 531 U.S. 341, 349 n.4 (2001); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir.

15    2011). "[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall

16    be by and in the name of the United States." 21 U.S.C. § 337(a).[11]

17        The Ninth Circuit's May 2012 decision in *Pom Wonderful LLC v. Coca-Cola Co.*,

18    679 F.3d 1170 (9th Cir. 2012), forecloses a private party from bringing indirectly a claim to

19    enforce alleged violations of FDA labeling regulations. In *Pom Wonderful*, the manufacturer of a

20    pomegranate juice beverage sued Coca-Cola under the federal Lanham Act, alleging that Coke's

21    competing product, "Pomegranate Blueberry," was false both in name and label because it

22    consisted of 99.4% apple and grape juice. As here, plaintiff brought state law claims under the

23    Sherman Law, the UCL, and the FAL, alleging that those state laws incorporate the identical

24

25

26

---

27        [11] Section 337(b) lists the circumstances under which *States*—but not private parties—may
enforce the FDCA. Thus, Congress intended to ensure FDA's control over the interpretation of

28    FDA labeling regulations. It could not be clearer that no private right of action exists.

1   FDA labeling standards and prohibitions.[12]  The district court (Otero, J.) granted Coke's motion

2   for summary judgment.  *Id.* at 1174.  The Ninth Circuit affirmed.

3        The FDCA "comprehensively regulates food and beverage labeling," said the court.  *Id.* at

4   1175.  Thus, a plaintiff is barred from doing three things:

5       • A plaintiff may not "sue under the Lanham Act to enforce the FDCA or its regula-
           tions because allowing such a suit would undermine Congress's decision to limit

6           enforcement of the FDCA to the federal government."  *Id.* at 1175-76.

7       • A plaintiff may not "maintain a Lanham Act claim that would require a court
           originally to interpret ambiguous FDA regulations, because rendering such an

8           interpretation would usurp FDA's interpretive authority."  *Id.* at 1176.

9       • "Where FDA has not concluded that particular conduct violates the FDCA, we
           have even held that a Lanham Act claim may not be pursued if the claim would

10          require litigating whether that conduct violates the FDCA."  *Id.*

11       Judge Illston recently adopted *Pom Wonderful*'s analysis and granted a motion to dismiss

12   a Lanham Act claim challenging "organic" statements.  *All One God Faith, Inc. v. Hain Celestial

13   Grp., Inc.*, No. C 09-3517 SI, 2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012).  The

14   plaintiff first alleged the product labels were false and misleading because they violated National

15   Organic Program regulations, but then changed course and argued they were misleading based

16   purely on "consumer expectations."  *Id.*, at *15-17.  The court rejected both approaches.

17   "[G]uided by" *Pom Wonderful, id.*, at *24-25, it found that the plaintiff's allegations "would

18   inevitably require the Court to interpret and apply federal organic standards, potentially create a

19   conflict with those standards, and would intrude upon and undermine the USDA's authority to

20   determine how organic products should be produced, handled processed and labeled."  *Id.*, at *33.

21       The logic of *Pom Wonderful* is not limited to Lanham Act claims.  Another court has

22   already applied Judge Otero's district court Lanham Act analysis to UCL claims.  *See Chavez v.

23   Nestle USA, Inc.*, No. CV 09-9192-GW(CWx), 2011 U.S. Dist. LEXIS 9773, at *24-25 (C.D. Cal.

24   Jan. 10, 2011) (Wu, J.).  In dismissing UCL claims concerning juice drinks, Judge Wu found that

25   "to the extent that any of Plaintiff's allegations that Nestle falsely represents that its products

26

27   _____

        [12] Plaintiff adopts the same stratagem.  (*Cf.* FAC ¶ 29; *see also* ¶¶ 131-46, 176.)  She says
28   California's requirements are "identical."  (*Id.* at 10:2.)

1  contain 100% fruit juice, or 100% of a particular fruit juice are based on Defendants' product

2  labeling, they would be preempted by federal law." *Id.* He stated, "[t]his exact preemption

3  analysis – albeit in the context of a Lanham Act claim – was undertaken recently by a court in this

4  district in [*Pom Wonderful*]." *Id.*; *see also Braintree Labs, Inc. v. Nephro-Tech, Inc.*, No. 96-

5  2459-JWL, 1997 U.S. Dist. LEXIS 2372, at *22 (D. Kans. Feb. 26, 1997) ("the same concerns

6  that militate against allowing the Lanham Act to serve as a vehicle for alleging FDCA violations

7  attend the use of a common law cause of action"). Regardless of the cause of action pled, claims

8  based on FDA regulations are preempted.

9      Plaintiff seeks to use state law to do each of the three things *Pom Wonderful* prohibits.

10     First, all of Plaintiff's claims piggyback alleged violations of FDA regulations. (FAC

11  ¶¶ 44-130.) She insists that California's laws are "identical" to federal food labeling laws. (*Id.*

12  ¶¶ 13, 28.) She admits, however, that FDA has oversight as to food product labels, and she

13  devotes an entire section of her Amended Complaint to a chronicle of what she calls "FDA

14  *Enforcement* History." (*Id.* ¶¶ 31-43 (italics added).) Her repeated references to federal guidance

15  on how the law should be interpreted demonstrate that she seeks to apply federal law.[13]

16     Elsewhere in the FAC, Ms. Maxwell reproduces the bulk of a warning letter that FDA sent

17  to Unilever in August 2010 regarding certain website "antioxidant" statements and health claims

18  as well as statements regarding flavonoids on the label of one of its Lipton® green tea products.

19  (*Id.* ¶¶ 15, 60-61; Ex. 1.) She admits that "in response" to that letter, Lipton "modified its Lipton

20  website and its packaging." (*Id.* ¶ 15.) But missing from Plaintiff's narrative is that in September

21  2010 Unilever sent a letter to FDA explaining why its label and website claims were lawful, but

22  nevertheless committing to make certain changes. In May 2011, FDA sent a "closeout" letter in

23  which it acknowledged those commitments but did not further address the legality of Unilever's

24

25     [13] Ms. Maxwell's elaborate "enforcement" history includes citations to FDA industry
    "guidance" (FAC ¶¶ 32-34) and FDA directives (*id.* ¶ 35). Elsewhere, she references FDA

26  "warning letters" issued to third parties. (*Id.* ¶ 94 and FAC Exs. 5-7 ["Oak Tree Farm Dairy,"
    "Hirzel," and "GMP Manufacturing" letters].) She also reports that "USDA recently removed the

27  USDA ORAC Database for Selected Foods from its website" because "[t]he data for antioxidant
    capacity of foods generated by *in vitro* (test-tube) methods cannot be extrapolated to *in vivo*

28  (human) effects…." (FAC ¶ 73.)

1   claims or respond to Unilever's explanations.  (RJN Ex. F.)  As a result, there has been no final

2   agency action regarding the legality of Unilever's claims, and that issue remains committed to

3   FDA discretion.  "Not enough," insists Ms. Maxwell, there are still "several unlawful statements

4   on Lipton's website" and labels that she wants to take jurisdiction over.  (FAC ¶¶ 15, 61.)

5          If anything, the picture that Ms. Maxwell paints is of a government agency exercising

6   robust oversight over matters committed exclusively to its legal jurisdiction.  That history only

7   underscores what the Ninth Circuit has now concluded: "[A]llowing such a suit would undermine

8   Congress's decision to limit enforcement of the FDCA to the federal government."  *Pom Wonder-*

9   *ful*, 679 F.3d at 1175-76.

10         Second, Plaintiff asks this Court "originally to interpret" FDA rules.  Indeed, she cannot

11   prevail *unless* she can convince this Court to interpret whether, for example, website statements

12   reporting the positive health effects of tea flavonoids on reducing cholesterol in post-menopausal

13   women renders the Lipton products a "drug" that requires prior FDA approval, or whether

14   statements that Defendants' tea products have "130 mg tea flavonoids" trigger FDA's "nutrient

15   content claim" requirements instead of its "quantity claim" requirements.  She also asks the Court

16   to decide whether use of "citric acid" is consistent with an "all natural" claim or if it is a chemical

17   preservative.  (FAC ¶¶ 96, 105.)  But citric acid is defined as a "*naturally occurring* constituent of

18   plant and animal tissues."  21 C.F.R. § 184.1033 (emphasis added).  In fact, FDA recently

19   approved the use of citric acid in a "natural" product, as noted by ConAgra Foods, Inc. as part of

20   its motion to dismiss another of class counsel's 24 similar complaints.  (*See Jones v. ConAgra*

21   *Foods, Inc.*, No. 12-cv-1633-CRB (N.D. Cal.) (Dkt. No. 20-1, RJN Ex. A) (RJN Ex. G).)  FDA's

22   letter to ConAgra states that "provided the [citric acid] is from a natural source, we would not

23   take issue with its use on a product labeled as 'natural.'"  If left to meddle, Ms. Maxwell would

24   decide this differently.

25         Plaintiff will disagree and insist that FDA labeling rules were violated.  But that would

26   only confirm that she is asking this Court to "originally interpret" FDA policy, thus fulfilling her

27   goal of becoming a "private Surgeon General" and mandating what is said on Defendants'

28   websites and labels.  That assault on FDA's authority is what 21 U.S.C. § 337(a) and a line of

1   cases (including *Pom Wonderful*) prohibit.  On this motion, the Court is not being asked to decide

2   these things.  It is enough that this Court recognize that it cannot adjudicate Plaintiff's claims

3   *without* having to "originally interpret" FDA rules.

4         **Third**, what matters is not whether FDA has acted, but whether FDA *could* act:  "If the

5   FDA believes that more should be done to prevent deception, or that Coca–Cola's label misleads

6   consumers, it can act.  But, under our precedent, for a court to act when the FDA has not—despite

7   regulating extensively in this area—would risk undercutting the FDA's expert judgments and

8   authority. … Out of respect for the statutory and regulatory scheme before us, we decline to allow

9   the FDA's judgments to be disturbed."  *Pom Wonderful*, 679 F.3d at 1177-78.  Substitute

10   "Defendants" for "Coca-Cola" and the Ninth Circuit could have been writing of this case.

11         The FDCA precludes a private right of action.  The Court should dismiss with prejudice.

12             **2.**        **The Sherman Law Cannot Be Used to Enforce FDA Regulations.**

13         Plaintiff will say the Sherman Law offers a detour around the private enforcement bar.

14   Not so.  This is the same argument the plaintiff in *Pom Wonderful* tried.  *Cf.* 679 F.3d at 1174.[14]

15         What FDA regulations do not create directly, other statutes may not create indirectly.  *See*

16   *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (FDA guide-

17   line violations are insufficient, as there is no private right of action).  If Congress wanted Ms.

18   Maxwell to police whether Defendants' products are "legally salable," it would have said so.[15]

---

19         [14] The Ninth Circuit remanded, presumably to determine whether the same bar on private

20   enforcement that would preclude plaintiff's Lanham Act claims would also preclude UCL and
FAL claims.  *Pom Wonderful*, 679 F.3d at 1179.

21         [15] *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008), is not to the contrary.  There, the

22   California Supreme Court allowed plaintiff to proceed with state law claims that alleged
defendants were selling salmon without disclosing artificial color additives that made grey

23   salmon appear pink so as to resemble wild salmon.  Unlike this case, *Farm Raised Salmon* was a
classic case of "passing off"—the product had been allegedly mislabeled to fool people into

24   thinking it was something it was not.  *Id.* at 1083-84.  In contrast, here, Plaintiff alleges that
violations of FDA regulations and policies *by themselves* cause harm (by causing the food to be

25   legally "worthless").  Further, *Farm Raised Salmon* is not controlling in Federal court, nor is it
persuasive because the Court failed to consider that the FDCA prohibits *any* private enforcement

26   of FDA regulations.  As such, a plaintiff seeking to privately enforce the FDCA *through state law*
would necessarily be seeking to enforce labeling requirements in a manner "not identical" to

27   federal law.  Moreover, this Court has questioned whether *Farm Raised Salmon* remains good
law after *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008).  *See Meaunrit v. Pinnacle Foods Grp.,*

28   *LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *7 (N.D. Cal. May 5, 2010).

1   "A purported state-law claim does not exist where the 'claim is in substance (even if not

2   in form) a claim for violating the FDCA—that is, when the state claim would not exist if the

3   FDCA did not exist.'" *Loreto v. Procter & Gamble Co.*, 737 F. Supp. 2d 909, 919 (S.D. Ohio

4   2010); *see also In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp.

5   2d 1282, 1290-91 (C.D. Cal. 2008) (Gutierrez, J.) (plaintiff may not use other laws as a means to

6   assert a private cause of action that is based on violations of the FDCA); *Perez v. Nidek Co.*,

7   657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) (Moskowitz, J.) ("The Court will not permit Plain-

8   tiff to privately enforce the FDCA and its regulations under the guise of state law claims."); *In re*

9   *Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009

10  U.S. Dist. LEXIS 58900, at *47 (D. N.J. July 10, 2009) (plaintiff may not "merely recite viola-

11  tions of the FDCA, for which there is no private cause of action"); *Verzani v. Costco Wholesale*

12  *Corp.*, No. 09 Civ. 2117 (CM), 2010 U.S. Dist. LEXIS 107699, at *8-9 (S.D.N.Y. Sept. 28, 2010)

13  (plaintiff's "persistent allegations that Costco's labeling of the Shrimp Tray violates the FDCA …

14  indicates that his true purpose is to privately enforce alleged violations of the FDCA, rather than

15  to bring a claim for unfair and deceptive business practices").

16          The Sherman Act is not a license to sidestep the federal bar against private remedies.

17                  **3.      Plaintiff's Attempts to Impose Requirements "Not Identical" to FDA
                            Regulations Are Expressly Preempted.**

18

19          Plaintiff is also seeking to impose labeling requirements that are "not identical" to federal

20  law.  Those claims fail for an additional reason: express preemption.

21          No state may "directly or indirectly establish ... any requirement for the labeling of food

22  that is *not identical to* the requirement of section 403(q) [21 U.S.C. § 343(q)]" (emphasis added).

23  21 U.S.C. § 343-1(a).  *See Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C.

24  2006), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007).  As the Seventh Circuit noted, "[i]t

25  is easy to see why Congress would not want to allow states to impose disclosure requirements of

26  their own on all packaged food products, most of which are sold nationwide.  Manufacturers

27  might have to print 50 different labels, driving consumers who buy food products in more than

28  one state crazy." *Turek*, 662 F.3d at 426.

1    Whether a state law claim is preempted turns on two questions:  Has FDA established

2    requirements applicable to the particular product at issue?  If so, do the requirements sought to be

3    imposed under state law differ from, or are they in addition to, federal requirements?

4    *Degelmann* , 659 F.3d at 841 (UCL and false advertising claims preempted because plaintiffs

5    sought to impose labeling standards for contact solution that were different and additional to FDA

6    guidance); *see also Carrea*, 2011 WL 159380, at *3-4.

7    Here, both *Degelmann* criteria are satisfied.  First, FDA has established requirements

8    applicable to all of the alleged violations that Plaintiff asserts.  In fact, there is no label element

9    that Plaintiff challenges that is *not* addressed by FDA regulation or policy.  (*Cf.* FAC ¶¶ 44-129.)

10   Second, Ms. Maxwell seeks to impose labeling requirements that are both different than

11   *and* in addition to what FDA requires.  For example, 21 U.S.C. § 343(r) governs nutrient content

12   and health claims.  It incorporates the prohibition of private enforcement set forth in Section

13   337(a).  Accordingly, if state law permits private enforcement of nutrient content and health

14   claims, then it is "not identical to" § 343(r) and is thereby preempted.

15   Furthermore, Plaintiff wants a jury and not FDA to decide what appears on food labels.

16   (FAC at 70:28.)  That would further add requirements "not identical" to FDA.  As Judge Wilken

17   has noted, even though "both federal and state law prohibit false or misleading language in

18   labeling, it does not follow that a jury would evaluate Defendant's labels in the same fashion as

19   the USDA."  *Meaunrit*, 2010 WL 1838715, at *7; *see also All One God Faith, Inc.*, 2012 U.S.

20   Dist. LEXIS 111553, at *32 (declining to compare consumer expectations and federal labeling

21   standards).

22   Moreover, the FAC is stuffed with allegations that misinterpret, misapply, or mischarac-

23   terize the legal status of FDA regulations, policies, and advisory opinions.[16]  Consider, for

24   example, Plaintiff's accusation about flavonoids.  Plaintiff asserts that Defendants violated FDA's

25   "nutrient content claim" regulation (21 C.F.R. § 101.54(g)) with respect to "tea products" because

26

27   _____

     [16] These examples are illustrative.  Given Plaintiff's "kitchen sink" approach, it is not
28   possible to rebut each of her errors without vastly exceeding the Court's page limits.

1    the statement—"contains" antioxidants or flavonoids—fails "to disclose that no RDI

2    [Recommended Daily Intake] has been established for flavonoids or the antioxidants in tea."

3    (FAC ¶ 83.)  In fact, Defendants' claims are entirely lawful.  They satisfy FDA's "quantity claim"

4    regulations, which allow quantity claims that do not implicitly characterize the level of an

5    ingredient and are not misleading, such as "100 calories."  21 C.F.R. § 101.13(i)(3).  The front

6    panel of Lipton's Green Tea identifies the quantity of the substance referred to and the name of

7    the substance ("Naturally contains tea flavonoids;" "130 mg tea flavonoids per serving").  (RJN

8    Ex. C.)  Together these claims convey the lawful, truthful and not misleading "quantity claim"

9    that the food contains 130 mg flavonoids per serving.[17]

10          Plaintiff also demands that this Court order Defendants to cease labeling their products

11   with flavoring declarations required by FDA regulations.  *See* 21 C.F.R. § 101.22(i)(1)(iii).

12   Plaintiff alleges that the use of high fructose corn syrup ("HFCS") in "Lipton Brisk Lemon Iced

13   Tea" (RJN Ex. H) renders unlawful the FDA-required declaration that the product contains "other

14   natural flavor(s)" on the misguided theory that HFCS is an "artificial flavor."  (FAC ¶ 96.)

15   However, under FDA regulations, HFCS is not an "artificial flavor" or even a flavor.  *See* 21

16   C.F.R. § 101.22(a)(1) (defining "artificial flavor" as "any substance, the function of which is to

17   impart flavor . . . .").  It is a nutritive sweetener.  *See* 21 C.F.R. § 184.1866(a) (describing HFCS

18   as a "sweet, nutritive saccharide mixture"); 21 C.F.R. § 170.3(o)(21) (defining "nutritive

19   sweetener").  Thus, as Plaintiff misconstrues FDA's requirements for labeling flavored products,

20   her FAC seeks an order requiring labeling inconsistent with that required by FDA.

21          Another example of Plaintiff's "not identical" rule-making is her allegation that

22   Defendants have made unlawful "drug claims" or "health claims."  (FAC ¶¶ 112-130.)  For

23   example, Plaintiff complains about the claim "Regular tea drinking, as part of a healthy diet, may

24

25   _____
[17] The phrase "contains" simply indicates that the product contains a specific quantity of
flavonoids per serving.  The use of a "contains"-type statement as part of a quantity claim is
consistent with FDA's *Guidance for Industry: A Food Labeling Guide*, (revised Oct. 2009) (Q.
26   N22), *available at*
http://www.fda.gov/downloads/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocu
27   ments/FoodLabelingNutrition/FoodLabelingGuide/UCM265446.pdf.

28          .

1   help maintain healthy vascular function." (*Id.* ¶ 120.)  However, this claim is not governed by

2   FDA's "health claim" regulations, as Plaintiff says.  Rather, it is an entirely lawful claim because:

3   - It describes an effect on the structure or function of the body, consistent with 21
4   U.S.C. § 321(g)(1)(C); and

5   - It is truthful and not misleading, as required by 21 U.S.C. § 343(a).

6   Plaintiff complains that, in some cases, Unilever's website claims refer to disease, but

7   these claims are perfectly lawful because, when read as a whole, the website presents balanced

8   scientific information on how tea affects the structure or function of the body.  The overall

9   context of the website is consistent with tea's use as a food, and the claims do not rise to the level

10  of drug claims under 21 U.S.C. § 321(g)(1)(B) or "health claims" for foods under 21 U.S.C.

11  § 343(r)(1)(B).  (In fact, these points were explained to FDA by Unilever in its September 2010

12  response to FDA's warning letter, and FDA took no further action.)[18]

13  To the extent that Plaintiff's allegations erroneously seek orders requiring labeling

14  different than that required or permitted under the FDCA, they are preempted.  Section 343-1(a)

15  forecloses any "State requirement [that] directly or indirectly imposes obligations or contains

16  provisions concerning the composition or labeling of food" that are "not imposed by or contained

17  in the applicable provision" or "[d]iffer from those specifically imposed by or contained in the

18  applicable provision."  21 C.F.R. § 100.1(c)(4).  Numerous federal courts, including courts in this

19  district, have so held in the food labeling context.[19]  So have California courts: "[W]hen a state

---

20  [18] Plaintiff also alleges that "Defendants lack adequate scientific evidence that the claimed
21  antioxidant nutrients participate in physiological, biochemical, or cellular processes that
    inactivate free radicals or prevents free radical-initiated chemical reactions after they are eaten
22  and absorbed from the gastrointestinal tract."  (FAC ¶ 69.)  This language is based on FDA's
    requirements for nutrient content claims for antioxidants, 21 C.F.R. § 101.54(g), but this
23  regulation does not apply.  As discussed above, the claims made for the product are not
    antioxidant nutrient content claims, but rather are "quantity claims" permitted by 21 C.F.R.
24  § 101.13(i)(3).

25  [19] *See Reid v. Johnson & Johnson*, No. 3:11-cv-1310-L-BLM, 2012 U.S. Dist. LEXIS
    133408, at *19-30 (S.D. Cal. Sept. 18, 2012) (finding preemption regarding cholesterol, trans fat,
26  and plant stanol esters claims); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119-20
    (C.D. Cal. 2010) (Marshall, J.) (finding preemption because otherwise plaintiff "would
27  necessarily impose a state-law obligation for trans fat disclosure that is not required by federal
    law"); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121-23 (N.D. Cal. 2010)
28  (Seeborg, J.) (UCL and other state law claims that sought to impose labeling requirements that

(Footnote continues on next page.)

law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted." *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002).

In sum, all of Plaintiff's claims are barred. Whether "identical to" FDA requirements or not, there is no private right of action under Section 337(a). And as to those claims in which Plaintiff seeks to impose "not identical" requirements, those are expressly preempted under Section 343-1(a). Either way, the Court should dismiss.

## C.   Plaintiff Has Not Alleged a Plausible Legal Injury, Reliance, or Deception.

Even if Plaintiff could show Article III "injury in fact" and survive preemption, all of her claims would run aground on implausibility and failure to plead with particularity.

### 1.   Plaintiff's Claims Are Facially Implausible.

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* 550 U.S. 544, 545 (2007).

---

(Footnote continued from previous page.)

were not identical to FDA regulations regarding use of the terms "0g Trans Fat" and "good source" of calcium and fiber were expressly preempted); *Mills v. Giant of Md.*, 441 F. Supp. 2d 104 (D.D.C. 2006) (claim that defendant failed to place a lactose intolerance warning on its milk was preempted by FDA regulations); *Red v. Kroger Co.*, No. 10-01025-DMG-MAN, 2010 U.S. Dist. LEXIS 115238, at *21 (C.D. Cal. Sept. 2, 2010) (Gee, J.) finding preemption of state law claims alleging failure to disclose partially hydrogenated vegetable oil on food labels because plaintiff "has not identified … a situation in which resolution of Plaintiff' claims could result in requirements that are 'identical to' FDA regulations"); *In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 537 (S.D.N.Y. 2008) (finding FDA's regulation of labeling requirements for purified water preempted plaintiff' state law claims); *Shepard v. DineEquity, Inc.*, No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245, at *15-17 (D. Kan. Sept. 25, 2009) (finding preemption of plaintiff's claims related to nutrition content statements by Applebee's and Weight Watchers); *Kuenzig v. Kraft Foods, Inc.*, No. 8:11–cv–838–T–24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) (finding Food and Safety Inspection Service's nutrition labeling regulations preempted plaintiff's state law claims in connection with "percent fat free" claims in defendants' product labels).

1    First, the law is against Plaintiff.  In *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699

2    (D.N.J. 2011), plaintiff alleged that "Diet Coke Plus" was misleading because the word "Plus"

3    implied the product was "healthy" under FDA regulations.  The *Mason* court begged to differ:

> At its core, the complaint is an attempt to capitalize on an apparent
> and somewhat arcane violation of FDA food labeling regulations.
> But not every regulatory violation amounts to an act of consumer
> fraud. ***It is simply not plausible that consumers would be aware of
> FDA regulations regarding 'nutrient content' and restrictions on
> the enhancement of snack foods.***

8    *Id.* at 705 n.4 (emphasis added).  Other courts have dismissed similar claims alleging that viola-

9    tions of FDA's good manufacturing practices caused injury.  *Polk v. KV Pharm. Co.*, No. 4:09-

10   CV-00588 SNLJ, 2011 U.S. Dist. LEXIS 144313, at *14-15 (D. Mo. Dec. 15, 2011); *see also*

11   *Chavez v. Nestle USA, Inc.*, No. CV 09-91920GW(CWx), 2011 U.S. Dist. LEXIS 58733, at *13-

12   15 (C.D. Cal. May 2, 2011) (Wu, J.)  Plaintiff's claims are no different.  (*Cf.* FAC ¶ 202.)

13   Second, Plaintiff has failed to plead a cognizable legal injury.  Ms. Maxwell says she

14   "relied on Defendant's package labeling, packaging, and website" claims and "would not have

15   purchased [the products]" if she had known that the products were "not capable of being legally

16   sold or held" or were "legally worthless."  But "*legally* worthless" is just her opinion.  Plaintiff

17   offers no facts to show she suffered cognizable *economic* injury.  Claiming to be misled by a

18   failure to comply with a technical regulation that Plaintiff never alleges she even knew about pre-

19   purchase flunks *Iqbal*.  *Cf.* 556 U.S. at 679.

20   Third, Ms. Maxwell has failed to plead plausible reliance.  Let us consider what she is

21   saying, for example, about having been misled by Defendants' statements about flavonoids.

22   To be misled, she (and every class member) would have had to:  (i) be familiar with FDA

23   regulations regarding use of phrases like "excellent source" and "good source," but unfamiliar

24   with FDA regulations regarding "quantity claims;" (ii) believe that the use of the term "contains,"

25   without more, was the legal equivalent of claiming the products were a "*good* source" or

26   "*excellent* source" of flavonoids; and (iii) conclude from this that the products contain more

27   flavonoids than the claim at issue actually states they do (i.e., 130 mg per serving).

28

1    The argument is illogical because it assumes that Ms. Maxwell was so steeped in FDA

2    regulations that she thought that the product contained a level of flavonoids specified by certain

3    FDA regulations, rather than the exact quantity of flavonoids that was stated on the label of the

4    product.  If Plaintiff read the label as carefully as she implies, then she would not have failed to

5    see exactly how much flavonoids were in the product—and so her suggestion that she was

6    somehow misled because the product did not conform exactly to FDA regulations (on the theory

7    that FDA has not set an RDI for flavonoids) rings hollow.  Indeed, class counsel told the New

8    York Times that "we researched [FDA] regulations and labels for two years before filing our first

9    case."  (*See* p. 2 n.1.)   If it took nine law firms two years of legal research to figure out Plaintiff's

10   claims, how does she suppose a "reasonable consumer" could attain that level of understanding of

11   FDA labeling rules as to have been duped by these alleged technical FDA infractions?

12   Judge Walter criticized a similar argument, refusing to read "a single out-of-context

13   phrase found in one component of [defendant's] label" in such a cramped manner as to render the

14   label misleading.  The court further found that "to the extent there is any ambiguity, it is clarified

15   by the detailed information contained in the ingredient list."  *Hairston v. S. Beach Beverage Co.*,

16   No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (Walter, J.);

17   *accord*, *Dvora*, 2011 WL 1897349, at *7 (Wu, J.); *see also Williamson v. Apple, Inc.*, No. 5:11-

18   cv-00377 EJD, 2012 U.S. Dist. LEXIS 125368, at *16 (N.D. Cal. Sept. 4, 2012) (Davila, J.)

19   (reasonable consumer would not interpret a commercial showing the iPhone without a cover as a

20   representation about its durability); *Reid v. Johnson & Johnson*, No. 3:11-cv-1310-L-BLM, 2012

21   U.S. Dist. LEXIS 133408, at *19-30 (S.D. Cal. Sept. 18, 2012) (Lorenz, J.) ("not possible for the

22   reasonable consumer to be deceived by 'No Trans Fat'" because the ingredient list stated

23   "partially hydrogenated soybean oil").

24   The same broken logic hobbles Ms. Maxwell's supposed reliance on statements about

25   health claims, preservative claims, etc.  Plaintiff's theory presupposes a class member who, to be

26   deceived, would have had to approach the beverage aisle of a grocery store clutching a copy of

27   Title 21 of the Code of Federal Regulations and armed with encyclopedic knowledge of FDA

28   regulations, believe that the labels' statements meant what she read in the C.F.R. and not what she

1   read on the label, and decide to buy Defendants' products based on this mistaken belief.  (In fact,

2   as we have noted, Plaintiff's reading of FDA regulations is often flawed, so her theory also

3   presupposes class members who do not reasonably read the regulations.)  Reliance "has always

4   been understood to mean reliance on a statement for its *truth and accuracy*."  *Kwikset Corp. v.*

5   *Super. Ct.*, 51 Cal. 4th 310, 327 n.10 (2011) (emphasis added).

6          Worse, Ms. Maxwell insists that *all* class members shared her beliefs.  (FAC ¶ 156.)  But

7   false advertising "focuses on a reasonable consumer who is a member of the target population."

8   *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009).  Plaintiff must show that "members

9   of the public are likely to be deceived."  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

10  That requires more than a mere possibility that the advertisement might conceivably be misunder-

11  stood by some few consumers who view it unreasonably.  Rather, a significant portion of the

12  general consuming public or of targeted consumers, acting reasonably in the circumstances, must

13  have been misled.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also*

14  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).  Plaintiff's imagined consumer is

15  not a "reasonable consumer."  A reasonable consumer would understand, for example, that a

16  statement that a product contains 130 milligrams of tea flavonoids per serving simply means that

17  the product, in fact, contains 130 milligrams of tea flavonoids per serving (and not that it contains

18  any specific RDI for antioxidants).

19         Here, as in *Mason v. Coca-Cola*, "[i]t is simply not plausible that consumers would be

20  aware of FDA regulations" of the sort the FAC describes.  Plaintiff herself does not claim to have

21  known, for example, about the RDI requirement for antioxidants, or whether citric acid is or isn't

22  "natural."  She only offers conclusory statements, but never says what she believed "natural" to

23  mean and why the products failed to meet those expectations. (FAC ¶ 98.)  These allegations are

24  indistinguishable from *Wright v. General Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148

25  (S.D. Cal. Sept. 30, 2009) (Lorenz, J.), where the plaintiff sued General Mills for advertising

26  products with high-fructose corn syrup as "100% Natural."  It was not enough to plead that

27  "Plaintiff and other members of the Class [] purchase[d], purchase[d] more of, or pa[id] more for,

28  these Nature Valley products."  *Id.*, at *5; *see also Rosen v. Unilever United States, Inc.*, No. C

09-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3, 2010) (Ware, J.) ("Plaintiff's allegation that partially hydrogenated oil is not nutritious is devoid of any allegations of facts to support that allegation.").

Finally, there is a timing disconnect.  Few consumers would have thought about FDA labeling requirements prior to purchase.  These are things that a lawyer might discover after weeks in a law library.  But that is counsel's knowledge, not a consumer's, and cannot be presumed to be implanted *post hoc* in the mind of a "reasonable consumer" prior to purchase.

## 2.    Plaintiff Has Not Pled Her Case with the Requisite Particularity.

Plaintiff does not meet the more stringent requirements of Rule 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), as well as the circumstances indicating fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiff flunks this test.

Who:  Facts regarding Plaintiff's specific understanding and reliance are absent from the Complaint.  She often fails to state what *she* understood the allegedly misleading claims to mean.  (FAC ¶¶ 150-152.)  She simply offers boilerplate language that she purchased the products, read the labels, and relied on the labeling claims.  (*Id.*)

What:  Plaintiff fails to allege which specific products and ingredients are at issue for each type of claim and what statements she relied on.  Instead she often refers generally to "Lipton Iced Tea products" (*id.* ¶ 95), and "various Lipton and Brisk teas" (*Id.* ¶ 105.)  But Plaintiff must allege reliance based on specific representations on specific products.  *See Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2012 U.S. Dist. LEXIS 97012, at *34 (N.D. Cal. July 12, 2012) ("Plaintiff never alleged reliance on any specific representation or advertising").

Plaintiff also fails to allege "injury in fact" with sufficient particularity.  She claims she would not have purchased the products or paid a premium for them "had she known they were not capable of being legally sold or held."  (FAC ¶¶ 65, 75, 81, 88, 100, 111, 129, 179, 189, 199, 208, 217, 250, 261.)  But she offers no facts.  How much of a premium?  As compared to what?  Nor does she explain factually how the *legal* status of a product could deprive her of the benefit of her

1    bargain.  The best she can muster is that "a reasonable person would attach importance to whether

2    Defendants' products are legally salable, and capable of legal possession." (*Id.* ¶ 158.)  But

3    cognizable—read, objective—economic loss is one thing; being subjectively disappointed in a

4    label is another.  The former is actionable; the latter is not.  *Cf.  Boysen v. Walgreen Co.*, No. C

5    11-06262 SI, 2012 U.S. Dist. LEXIS 100528, at *21-22 (N.D. Cal. July 19, 2012) (plaintiff failed

6    to allege products were unfit for consumption).

7          Where and When:  Plaintiff fails to allege where and when she bought the products.

8          How:  Plaintiff fails to allege how she relied on the labeling claims.  She conclusively

9    states she "relied on" the labeling and "would not have purchased these products had she known"

10   they were mislabeled.  (*See* FAC ¶ 63.)  She argues the products are misleading because they fail

11   to comply with FDA regulations, but she never asserts reliance beyond rote repetition of the

12   regulations.  (*See id.* ¶ 86.)  These bare assertions are insufficient.  *See Sateriale v. R.J. Reynolds*

13   *Tobacco Co.*, No. 11-55057, 2012 U.S. App. LEXIS 14394, at *33 (9th Cir. July 13, 2012);

14   *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1056 (N.D. Cal. 2009) (Illston, J.).

15          **D.      Plaintiff's Claims All Fail for Other, Claim-Specific Reasons.**

16                 **1.      Plaintiff's UCL, CLRA, and FAL Claims Fail to State a Claim.**

17          If Plaintiff is able to bypass all of these infirmities, she runs into other hurdles.

18          First, Plaintiff lacks standing to assert a claim under the UCL and the FAL.  She has not

19   alleged facts showing that she "suffered an injury in fact" and "lost money or property" as a result

20   of unfair competition.  As noted, she suffered no cognizable economic injury.  *See Birdsong v.*

21   *Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (no injury from the mere purchase of an iPod that

22   might subject a user to a risk of hearing loss); *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107,

23   1112 (S.D. Cal. 2011) (Huff, J.) (no reliance); *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009

24   U.S. Dist. LEXIS 32282, at *18 (N.D. Cal. Apr. 15, 2009) (Patel, J.) (no injury).  She similarly

25   lacks standing under the CLRA because she has not sufficiently alleged that she has suffered any

26   damage.  *See Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 641 (2009).  For the same reasons

27   Plaintiff's allegations of economic injury fail under Article III, they also fail under these statutes.

28

1    <u>Second</u>, Plaintiff has failed to plead actual reliance and causation, as described above.  *Cf.*

2    *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (the "as a result of" requirement "imposes an

3    actual reliance requirement on plaintiff prosecuting a private enforcement action under the UCL's

4    fraud prong.")  Plaintiff offers only a generic, legal conclusion.  (*See, e.g,* FAC ¶ 63.)

5    <u>Third</u>, Plaintiff's claims under the unlawful and unfairness prongs fail because they cannot

6    be based on alleged FDCA violations.  FDA maintains exclusive enforcement authority, and the

7    FDCA precludes any private right of action.  *See* 21 U.S.C. § 337(a); *Perez v. Nidek Co.*, 657 F.

8    Supp. 2d 1156, 1166 (S.D. Cal. 2009) (Moskowitz, J.); *Pom Wonderful*, 679 F.3d at 1175-76.

9    ## 2.    Plaintiff's Breach of Warranty Claims Should Be Dismissed.

10    Plaintiff has not stated a claim under the Song-Beverly Consumer Warranty Act, Cal. Civ.

11    Code § 1790 et seq. or the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (MMWA).

12    <u>First</u>, what Ms. Maxwell challenges are product descriptions, not warranties.  The

13    statements do not "undertake to preserve or maintain the utility or performance" of the products,

14    as required by Song-Beverly, Cal. Civ. Code § 1791.2(a)(1), and they are not promises of a

15    defect-free product or a level of performance over a specific time period, as required by the

16    MMWA, 15 U.S.C. § 2301(6); *see Hairston*, 2012 WL 1893818, at *6 ("all natural with

17    vitamins" is a description, not promise); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012

18    U.S. Dist. LEXIS 102284, at *5 (N.D. Cal. July 23, 2012) (Illston, J.) ("all natural" is not a

19    warranty); *Skelton v. GM Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981).

20    <u>Second</u>, the MMWA is inapplicable to warranties governed by federal law.  *Hairston*,

21    2012 WL 1893818, at *5; *Kanter* , 99 Cal. App. 4th at 797 (MMWA inapplicable because the

22    FDCA governed the labeling at issue).  It also applies only to products that cost more than five

23    dollars.  15 U.S.C. § 2302(e).  Plaintiff fails to allege this.

24    <u>Third</u>, Song-Beverly expressly excludes "consumables," Cal. Civ. Code § 1794(a), (d),

25    and Plaintiff admits the products are "consumables."  (FAC ¶ 245.)

26    ## 3.    "Unjust Enrichment" is Not a Cause of Action in California.

27    Unjust enrichment is not a cause of action.  *See Myers-Armstrong v. Actavis Totowa, LLC*,

28    382 F. App'x 545, 548 (9th Cir. 2010); *Williamson*, 2012 U.S. Dist. LEXIS 125368, at *27-28.

1  Judges Koh, Sabraw, White, and Hamilton agree.  *See Low*, 2012 U.S. Dist. LEXIS 97012, at

2  *46-47 (Koh, J.) ("California does not recognize a stand-alone cause of action for unjust

3  enrichment");  *Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S. Dist. LEXIS 10926, at *14-15 (S.D.

4  Cal. Feb. 9, 2010) (Sabraw, J.); *Smith v. Ebay Corp.*, No. C 10-03825 JSW, 2012 U.S. Dist.

5  LEXIS 1211, at *27-29 (N.D. Cal. Jan. 5, 2012) (White, J.); *Minims Apothecary, LLC v.*

6  *InformedRx, Inc.*, No. C 11-6612 PJH, 2012 U.S. Dist. LEXIS 41162, at *2 (N.D. Cal. Mar. 26,

7  2012) (Hamilton, J.) (same).

8  ## V.   CONCLUSION

9        For all the foregoing reasons, Defendants respectfully request that the Court dismiss the

10  Amended Complaint with prejudice or, in the alternative, grant the motion to strike.

11  Dated:  October 12, 2012                    WILLIAM L. STERN
                                                CLAUDIA M. VETESI
12                                              LISA A. WONGCHENKO
                                                MORRISON & FOERSTER LLP
13

14                                              By:   /s/ *William L. Stern*
                                                      William L. Stern
15

16                                              Attorneys for Defendants
                                                UNILEVER UNITED STATES, INC.
17                                              and PEPSI/LIPTON TEA
                                                PARTNERSHIP

18

19

20

21

22

23

24

25

26

27

28