GIBSON, DUNN & CRUTCHER LLP
DANIEL W. NELSON, appearance *pro hac vice*
dnelson@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:    202.955.8500
Facsimile:    202.467.0539

TIMOTHY LOOSE, SBN 241037
tloose@gibsondunn.com
333 S. Grand Avenue
Los Angeles, CA  90071
Telephone:    213.229.7000
Facsimile:    213.229.6746

Attorneys for Defendant
PEPSICO, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY MAXWELL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., PEPSICO, INC., and PEPSI LIPTON TEA PARTNERSHIP,<br><br>Defendants. | CASE NO. 5:12-cv-01736 EJD<br><br>**DEFENDANT PEPSICO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Hearing Date:    December 7, 2012<br>Hearing Time:    9 a.m.<br>Location:    Courtroom 4<br>Judge:    Hon. Edward J. Davila<br><br>Action Filed:    April 6, 2012<br>FAC Filed:    July 30, 2012<br><br>Trial Date:    None Set |

1

**TABLE OF CONTENTS**

2

Page

3

I. INTRODUCTION ..................................................................................................... 2

4

II. FACTUAL BACKGROUND ................................................................................... 4

5

III. THE LEGAL STANDARDS GOVERNING THIS MOTION ................................ 4

6

IV. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST PEPSICO ........................ 5

7

A.     Plaintiff Lacks Standing To Sue Regarding Products She Never Purchased............... 5

8

9

B.     Plaintiff Fails To Set Forth Plausible Factual Allegations That The Product She Allegedly Purchased Was Misbranded ............................................................ 6

10

C.     Plaintiff Fails To Set Forth Particularized Allegations That She Was Misled ........... 10

11

D.     Plaintiff's Warranty Claims Fail Because An Ingredient Statement Is Not A Written Warranty ................................................................. 12

12

E.     Unjust Enrichment Is Not A Valid Cause Of Action Under California Law.............. 14

13

V. PLAINTIFF CANNOT MAINTAIN A CLAIM AGAINST PEPSICO BASED ON A THEORY OF ALTER EGO LIABILITY ................................................................. 14

14

VI. CONCLUSION .................................................................................................... 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

**Cases**

4

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................................... 3, 5, 7

5

*Bardin v. DaimlerChrysler Corp.,*
    136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634 (2006) ...................................... 12

6

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ........................................................................... 5, 9

7

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ............................................................................ 5

8

*Briseno v. ConAgra Foods, Inc.,*
    No. 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750 (C.D. Cal. Nov. 23, 2011) ....................... 10

9

10

*Carney v. Verizon Wireless Telecomc'ns., Inc.,*
    No. 09-1854, 2010 WL 1947635 (S.D. Cal. May 13, 2010) ............................................ 9

11

*Carrea v. Dreyer's Grand Ice Cream,*
    No. 10-01044, 2011 U.S. Dist. LEXIS 6371,  (N.D. Cal. Jan. 10, 2011)
    *aff'd,* 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5, 2012) .............................................. 6

12

13

*Cronson v. Clark,*
    810 F.2d 662 (7th Cir. 1987) .............................................................................. 9

14

*Dos Pueblos Ranch & Improv. Co. v. Ellis,*
    8 Cal. 2d 617 (1937) ...................................................................................... 15

15

*Durell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010) ............................................................................ 9

16

*Edwards v. Marin Park, Inc.,*
    356 F.3d 1058 (9th Cir. 2004) ............................................................................ 12

17

18

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir 1995) ............................................................................... 11

19

*Hairston v. South Beach Bev. Co.,*
    No. 12-cv-1429 JFW, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) ...................... 13

20

21

*Hill v. Roll Int'l Corp.,*
    195 Cal. App. 4th 1295, 128 Cal. Rptr. 3d 109 (2011) ................................................. 14

22

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,*
    MDL 1703, 2006 U.S. Dist. LEXIS 100903 (N.D. Ill. May 17, 2006) ......................... 13

23

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ..................................................................................... 9

24

*In re Toyota Motor Corp. Unintended Acceleration Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................... 14

25

26

*Inst. of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.,*
    116 Cal. App. 3d 111 (1981) .............................................................................. 15

27

*Johns v. Bayer Corp.,*
    No. 09-1935, 2010 U.S. Dist. LEXIS 10926,  (S.D. Cal. Feb. 9, 2010) ............................... 6

28

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ....................................................................... 5, 8, 10, 12

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011) ........................................................ 6, 9

*Laster v. T-Mobile USA, Inc.*,
No. 05-1167, 2009 WL 4842801 (S.D. Cal. Dec. 14, 2009) ........................................ 9

*Leek v. Cooper*,
194 Cal. App. 4th 399 (2011) ...................................................................................... 15

*McBride v. Boughton*,
123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (2004) ................................................... 14

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634, 88 Cal. Rptr. 3d 859 (2009) ............................................................... 6

*Mid-Century Ins. Co. v. Gardner*,
9 Cal. App. 4th 1205 (1992) ........................................................................................ 15

*Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*,
578 F. Supp. 2d 1242 (E.D. Cal. 2008) ....................................................................... 14

*Sonora Diamond Corp. v. Super. Ct.*,
83 Cal. App. 4th 523 (2000) ................................................................................... 14, 15

*Starr v. Baca*,
652 F.3d 1202(9th Cir. 2011) ........................................................................................ 5

*Tait v. BSH Home Appliances Corp.*,
No. 10-711, 2011 WL 1832941 (C.D. Cal. May 12, 2011) .......................................... 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................................................................................... 5

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
99 Cal. App. 4th 228 (2002) ........................................................................................ 16

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765, 120 S. Ct. 1858, 146 L. Ed. 836 (2000) ................................................. 5

*Warth v. Seldin*,
422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ................................................ 9

*Waste Mgmt. of N. Am., Inc. v. Weinberger*,
862 F.2d 1393 (9th Cir. 1988) ....................................................................................... 9

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................................. 5, 10, 12

**Statutes**

15 U.S.C. § 2301 *et seq.* ................................................................................................. 4

15 U.S.C. § 2301(6) ...................................................................................................... 13

21 U.S.C. § 331(b) .......................................................................................................... 8

21 U.S.C. § 371(a) .......................................................................................................... 8

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... 4

Cal. Bus. & Prof. Code § 17204 ..................................................................................... 6

Cal. Bus. & Prof. Code § 17500 *et seq.* ......................................................................... 4

Cal. Bus. & Prof. Code § 17535 ..................................................................................... 6

Cal. Civ. Code § 1750 *et seq.* ......................................................................................... 4

Cal. Civ. Code § 1780(a) ................................................................................................ 6

Gibson, Dunn &
Crutcher LLP

Cal. Civ. Code § 1790 *et seq.* ..................................................................................... 4

Cal. Civ. Code § 1791.2(a) ......................................................................................... 13

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 5, 8, 10, 12

Gibson, Dunn &
Crutcher LLP

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Amended Complaint          Case No. 5:12-cv-01736

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on December 7, 2012, at 9 a.m., in Courtroom 4 of the above-

3    captioned court, located at 280 South First Street, San Jose, California 95113, or as soon thereafter as

4    may be heard, Defendant PepsiCo, Inc. ("Pepsi") will, and hereby does, move this Court for an order

5    dismissing all of the claims and causes of action against Pepsi contained in the First Amended

6    Complaint ("Complaint" or "FAC") filed in this action by Plaintiff Amy Maxwell.

7    Plaintiff's Complaint should be dismissed for failing to state a plausible claim for relief. *See*

8    Fed. R. Civ. P. 12(b)(6). Specifically, the FAC alleges that Pepsi carbonated beverages are

9    misbranded because they contain phosphoric acid, which Plaintiff alleges is an "artificial flavor

10   and/or preservative" that must contain a parenthetical notation such as (preservative) or (to preserve

11   freshness) or (artificial flavor) after the ingredient listing on the ingredients panel. Yet the FAC

12   advances no facts to support this conclusion—indeed, the purportedly offending product labeling is

13   not even attached to the FAC or described in the factual allegations. Nor does the FAC plead any

14   facts about Plaintiff's purchasing experience that would indicate when or where Plaintiff purchased

15   Pepsi, much less demonstrate that Plaintiff was deceived by the alleged absence of parenthetical

16   labeling after phosphoric acid is listed on the ingredients panel. These allegations fail to meet the

17   pleading with particularity requirements of Federal Rule of Civil Procedure 9(b) and thus require

18   dismissal.

19   This Motion is based on this Notice, the following Memorandum of Points and Authorities,

20   all matters of which judicial notice may be taken, the papers and pleadings on file herein, and on such

21   additional papers and arguments as may be presented at or before the hearing of this matter.

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Amy Maxwell ("Plaintiff") argues in her First Amended Complaint ("Complaint" or "FAC") that Lipton Tea products and PepsiCo, Inc. ("Pepsi" or "PepsiCo") carbonated beverages are "misbranded."  The Lipton Tea products are the subject of a separate motion to dismiss that has been filed by Unilever United States ("Unilever") and the Pepsi-Lipton Partnership.  Pepsi submits this memorandum of points and authorities to demonstrate why the threadbare claims against Pepsi must be dismissed.

## I.  INTRODUCTION

When Plaintiff initiated this action, she sought to challenge antioxidant, "nutrient content," and "natural" statements on the labels of certain Lipton Tea products.  There were no allegations in Plaintiff's initial complaint concerning carbonated beverages; instead, it appeared that Pepsi was named as a Defendant due to its interest in a separate legal entity, the Pepsi-Lipton Partnership.  Because the Lipton products at issue in the original complaint are owned by Unilever or by the Pepsi-Lipton Partnership, Pepsi's counsel informed Plaintiff's counsel that Pepsi was erroneously sued, and that the Partnership—which was not named in the initial complaint—was the proper party.  Plaintiff's counsel stated that they would be amending the complaint, and would omit Pepsi from the amended pleading.

Instead of dropping Pepsi from the suit, Plaintiff's amended complaint purports to assert apparent *alter ego* claims against Pepsi based on the Pepsi-Lipton Partnership products, as well as wholly new claims as to all of Pepsi's carbonated beverages.  In fact, Plaintiff seeks to represent any California consumer who purchased "any carbonated beverage manufactured, distributed, or bottled under the authority of" Pepsi (in addition to any California consumer who purchased a Lipton Tea product).  (FAC ¶ 160.)  But while Plaintiff attempts to call into question every sale of Pepsi carbonated beverages in this State, all that she offers in support of her sweeping claims are threadbare, episodic, and conclusory allegations that fall well short of stating a claim upon which relief can be granted.

Out of the 262 paragraphs and 55 pages in Plaintiff's FAC, there are only two vague references to Plaintiff's experience with Pepsi's products.  First, Plaintiff states that at some

Gibson, Dunn &
Crutcher LLP

undefined point in time at an undisclosed location, she bought "Pepsi carbonated beverages such as Pepsi." (FAC ¶ 149.) The second reference is that "many of Defendant PepsiCo's beverages, including the Pepsi bought by the Plaintiff," contain phosphoric acid, but "fail to disclose the fact that the phosphoric acid is being used as a preservative in those products by including a parenthetical such as (preservative) or (to retard spoilage) or (artificial flavor) after the term phosphoric acid in the ingredient statement." (*Id.* ¶ 105.) The rest of the FAC is devoted to Plaintiff's exposition on the food labeling laws regarding "nutrient content claims," "antioxidant nutrient content claims," "nutritional value claims," "'natural' claims," and "health claims"—none of which is alleged to have anything to do with Pepsi's carbonated beverages. (*See, e.g.*, FAC ¶¶ 53, 66, 82, 89 &112.)

Despite its length, all that the FAC alleges with respect to Plaintiff's experience with Pepsi's products is that Plaintiff bought a Pepsi at some point in her life. That is precisely the type of threadbare allegation that the courts have dismissed time and time again. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Notably absent are any allegations of when or where Plaintiff purchased the Pepsi, what the label looked like and what it stated, what statements on the label Plaintiff actually saw, when she saw them, or how those statements impacted her purchasing decision. And while the crux of Plaintiff's bald claim against Pepsi is that Pepsi's label does not disclose that it contains phosphoric acid being "used as a preservative" or "an artificial flavor," the FAC does not attach (or even describe) the allegedly incorrect and injurious labeling. Nor does Plaintiff allege any facts to support her self-serving and conclusory assertion that phosphoric acid is being used as an artificial flavor or preservative. Even had Plaintiff done so, the FAC still would fail because it does not plead any facts stating how Plaintiff was deceived or somehow injured by the Pepsi that she purchased. The Supreme Court has long held that "'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed,'" *Twombly*, 550 U.S. at 558, specifically because "the threat of . . . the potentially enormous expense of discovery" has the potential to "push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.* at 559.

Plaintiff must do more to state a claim than allege that she purchased a Pepsi and juxtapose that naked allegation with conclusory assertions about labeling and ingredients, especially when the allegedly offensive labeling is neither attached nor even described in the pleading.  Her failure to do so requires that the First Amended Complaint be dismissed.

## II.    FACTUAL BACKGROUND

The FAC contains scant allegations regarding Plaintiff's purchase of a Pepsi carbonated beverage, asserting only that she "bought . . . Pepsi carbonated beverages such as Pepsi."  (FAC ¶ 149.)  Plaintiff does not even specifically identify which particular beverages she purchased, when or how often she purchased them, or at what stores and in what region of California she purchased them.  Nor does the Complaint allege any facts regarding the labels of the "Pepsi" that Plaintiff allegedly purchased.  Instead, the Complaint simply alleges that "the Pepsi bought by the Plaintiff" contained "phosphoric acid" (*id.* ¶ 105)—an ingredient that the Complaint asserts is used in the product as a preservative or artificial flavor and must be followed in the ingredient statement with a parenthetical notation "such as (preservative) or (to retard spoilage) or (artificial flavor)."  (*Id.*)  Plaintiff asserts that without this parenthetical notation, any products containing phosphoric acid are "misbranded" and "legally worthless."  (*Id.* ¶ 111.)

Plaintiff seeks to represent a class of consumers across this State unified only by the fact that they may have purchased a Pepsi carbonated beverage or Lipton product at some time during the past four years.  (FAC at p. 1.)  She asserts claims under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*, the "UCL"), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*, the "FAL"), California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*, the "CLRA"), the Song-Beverly Act (Cal. Civ. Code § 1790 *et seq.*), the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*), and for restitution based on unjust enrichment/quasi contract.

## III.    THE LEGAL STANDARDS GOVERNING THIS MOTION

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868,

874 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Although the Court must accept factual allegations as true for purposes of a motion to dismiss, this tenet is "inapplicable to legal conclusions." *Id.*  After stripping away the "conclusory statements" in the complaint, the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations omitted).  In making this "context-specific" determination, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 679.  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible such "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When a plaintiff alleges a course of fraudulent conduct, as is the case here, the Complaint must "state with particularity the circumstances constituting fraud" to comply with Rule 9(b) of the Federal Rules of Civil Procedure.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (applying Rule 9(b)'s particularity requirement to UCL and CLRA claims); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122–23 (C.D. Cal. 2010) (same; FAL, UCL, and CLRA claims).  To fulfill this heightened pleading standard, the allegations must be "specific enough to give defendants notice of the particular misconduct," including "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  The purpose of Rule 9(b) is to provide defendants with notice of "the specific fraudulent conduct against which they must defend." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST PEPSICO

### A.    Plaintiff Lacks Standing To Sue Regarding Products She Never Purchased

Article III of the United States Constitution requires plaintiffs to establish an "actual" and "concrete" injury in fact that is particularized to them.  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 146 L. Ed. 836 (2000); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (no Article III standing where plaintiffs failed to allege injury that was "concrete and particularized *as to themselves*").  Similarly, the UCL, FAL, and CLRA also

require a showing of injury and causation, *see* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a), and private plaintiffs must have entered into a transaction with the defendant in order to have standing to pursue these claims.  *See*, *e.g.*, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 317, 120 Cal. Rptr. 3d 741 (2011) ("[T]hose who have not engaged in any business-dealings with" defendants lack standing for UCL/FAL claims); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641, 88 Cal. Rptr. 3d 859 (2009) (same for CLRA claims).

Although Plaintiff purports to assert claims based on a wide array of Pepsi carbonated beverages (*see* FAC ¶ 105), the only particular product she alleges purchasing is Pepsi.  (*Id.*) Because Plaintiff does not allege that she purchased a carbonated beverage other than Pepsi, she cannot pursue any claims based on other products.  *See*, *e.g.*, *Carrea v. Dreyer's Grand Ice Cream*, No. 10-01044, 2011 U.S. Dist. LEXIS 6371, at *7–8 (N.D. Cal. Jan. 10, 2011) (dismissing UCL, FAL, and CLRA claims as to products that plaintiff never purchased), *aff'd*, 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5, 2012); *Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (holding that plaintiff "[could ]not expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon").

Of course, this is not to say that Plaintiff has stated a claim with respect to Pepsi merely because she alleges purchasing a Pepsi at some unidentified point in her lifetime.  As demonstrated in the following sections, her failure to identify anything about the circumstances of her purchase, or her supposed injury from purchasing a world-class beverage, also requires that her claims with respect to Pepsi be dismissed.

**B.    Plaintiff Fails To Set Forth Plausible Factual Allegations That The Product She Allegedly Purchased Was Misbranded**

Plaintiff's claim against Pepsi's carbonated beverages is based on an alleged failure to disclose the presence of "chemical preservatives, artificial colors and artificial flavors as mandated by identical California and federal law."  (FAC ¶ 101.)  The basis for Plaintiff's theory is provided in a single paragraph of the 262-paragraph FAC:  according to Plaintiff, Defendants' products are "misbranded" because they "contain phosphoric acid which is used in [the beverages] as an artificial

1    flavor and/or as an acidulant which is a type of chemical preservative designed to retard spoilage,"

2    and "their labels fail to . . . include a parenthetical such as (preservative) or (to retard spoilage) or

3    (artificial flavor) after the term phosphoric acid in the ingredient statement."  (FAC ¶ 105.)  Plaintiff,

4    however, utterly fails to allege any facts to support her conclusory assertion.  For example, Plaintiff

5    does not describe what flavor phosphoric acid imparts to food products, or how it is that phosphoric

6    acid imparts any flavor to food products at all.  Nor does the FAC allege any facts explaining why

7    phosphoric acid is sometimes a "flavor," but at other times a "preservative," and still at other times

8    apparently serves as both a flavor and a preservative.  All the FAC offers is the unadorned conclusion

9    that phosphoric acid is used "as an artificial flavor ***and/or*** an acidulant" in various food products.  (*Id.*

10   (emphasis added).)  Those conclusions are not entitled to the presumption of truth on a motion to

11   dismiss, and they should be disregarded entirely.  *Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. at 555

12   (accepting allegations as true for purposes of a motion to dismiss is a tenet "inapplicable to legal

13   conclusions").

14          Plaintiff's conclusory assertions regarding phosphoric acid are even more lacking as to

15   Pepsi's products.  The FAC contains a single conclusory sentence regarding Pepsi and phosphoric

16   acid:  "Similarly, many of Defendant PepsiCo's beverages, including the Pepsi bought by Plaintiff,

17   also contain phosphoric acid being used as an artificial flavor and/or acidulant but fail to disclose that

18   fact."  (FAC ¶ 105.)  The FAC contains no facts to support this assertion.  As an initial matter, the

19   only PepsiCo beverage even referenced by name is Pepsi.  As to the "Pepsi bought by Plaintiff," the

20   FAC fails to state when, where, or why she purchased it, much less what its label or ingredients

21   statement said.  Like the generic allegation concerning phosphoric acid, Plaintiff fails to allege any

22   facts to indicate what "flavor" phosphoric acid is used to impart in Pepsi or whether phosphoric acid

23   is functioning as a flavor, a preservative, or both in Pepsi.  Her equivocal statement that phosphoric

24   acid is functioning as either a preservative or a flavoring (or both) further illustrates that her pleading

25   rests not on factual allegations, but on arguments and conclusions that are not entitled to the

26   presumption of truth.[1]

27   _____

28      [1]  Plaintiff's next sentence in paragraph 105 is even more nebulous and conclusory:  Plaintiff claims
         that "Defendants do the same thing with the citric acid and other chemical preservatives and

Plaintiff's argument that phosphoric acid is being used in Pepsi and other carbonated beverages as "an artificial flavor and/or acidulant" is not only bereft of any supporting factual allegations, it also is implausible.  As the FAC recognizes, many beverages—including several that are not manufactured by Pepsi—contain phosphoric acid.  (FAC ¶ 105.)  Yet Plaintiff has not identified a single instance in which the FDA has warned a soft drink manufacturer—or any other food manufacturer, for that matter—that it must include a parenthetical notation after phosphoric acid to state that it functions as a preservative or artificial flavor.  Presumably, Plaintiff would have included such letters if any existed, as her complaint attaches several warning letters that do not even involve any of the products at issue or require the kind of parenthetical labeling Plaintiff champions.  (*See, e.g.*, FAC ¶ 58 (quoting FDA warning letter to Jonathan Sprouts, Inc. regarding nutrient content claims regarding phytochemicals and saponin in alfalfa sprouts), ¶ 94 & Plaintiff's Ex. 6 (citing FDA warning letters sent to Hirzel Canning Company regarding the improper omission of calcium chloride citric acid from the ingredients list on canned tomatoes, but notably *not* requiring parenthetical labeling of any kind).)  Given the FDA's exclusive authority to promulgate regulations regarding the labeling of food and its status as the primary enforcer of such regulations,[2] and the prominence of carbonated beverages for decades, the fact that the FDA has not suggested that the presence of phosphoric acid in carbonated beverages requires parenthetical labeling underscores the implausibility of Plaintiff's allegations.

Nor does Plaintiff plead her alleged injury in fact with adequate factual allegations.  Specifically, she does not allege how she suffered any harm from an ingredients label that is accurate but supposedly is lacking parenthetical clauses that would provide details about the function of the

---

artificial flavors in their products," without identifying *which* defendant does what "same thing" in these unidentified "products," and without specifying what ingredients constitute the "other chemical preservatives and artificial flavors" Plaintiff references.  These empty allegations, directed at no defendant in particular and lacking any specificity as to which products they encompass, plainly fail to "give defendants notice of the particular misconduct" with "'the who, what, when, where, and how' of the misconduct charged[,]" as required by Rule 9(b).  *Kearns*, 567 F.3d at 1124.

[2]   *See* 21 U.S.C. § 371(a); 21 U.S.C. § 331(b) (prohibiting the "misbranding" of food); *id*. § 337(a) (mandating that except in limited circumstances, "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); *id*. § 343-1 (expressly preempting state law regulation of most food labeling); *id*. § 393(b)(2)(A).

ingredients.  (FAC ¶ 105.)  Plaintiff merely asserts that she paid an "unwarranted premium for these products" (*id.* ¶ 111), but she does not allege what that premium was, or identify which other carbonated beverage she would have purchased.  She then inconsistently suggests that her injury is not the premium paid, but rather that she "would not have purchased the products" had she been aware "that the Misbranded Food Products she purchased contained undisclosed chemical preservatives."  (*Id.* ¶ 110.)  Once again, however, Plaintiff's nebulous allegations about "products" make it difficult to determine whether she is even referring to Pepsi.  Plaintiff's allegation that she would not have purchased such "Misbranded Food Products" is also fundamentally inconsistent with her limited claim about Pepsi, which is not that the product contains "undisclosed" ingredients, but rather that the disclosed ingredients are not properly labeled with parenthetical notations.  While Plaintiff asserts that this parenthetical labeling is supposedly required by law, she cannot establish Article III standing by simply alleging a technical statutory violation.  *See*, *e.g.*, *Waste Mgmt. of N. Am.*, *Inc. v. Weinberger*, 862 F.2d 1393, 1397–98 (9th Cir. 1988); *Cronson v. Clark*, 810 F.2d 662, 664 (7th Cir. 1987); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("[T]he plaintiff . . . must allege a distinct and palpable injury ***to himself*** . . . ." (emphasis added)); *Birdsong v. Apple*, *Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2009) (no Article III standing where plaintiffs failed to allege injury that was "concrete and particularized ***as to themselves***" (emphasis added)).

Plaintiff's conclusory allegations also do not establish sufficient injury in fact to state a UCL, FAL, or CLRA claim.  *See*, *e.g.*, *Kwikset*, 51 Cal. 4th at 324 (noting that private party standing under the UCL and FAL is "substantially narrower" than Article III requirements).[3]

---

[3]  While an Unfair Competition claim may be predicated on an allegedly unlawful act, in order to establish standing, the plaintiff still must plead facts demonstrating that he or she suffered injury *as a result* of that act—something which Plaintiff fails to do here.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *Carney v. Verizon Wireless Telecomc'ns.*, *Inc.*, No. 09-1854, 2010 WL 1947635, at *3 (S.D. Cal. May 13, 2010) ("[R]egardless of the label Plaintiff applies to Defendants' conduct ('unfair,' 'unlawful,' or 'fraudulent'), she must plead and prove reliance to prevail on her UCL claim."); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010); *Laster v. T-Mobile USA*, *Inc.*, No. 05-1167, 2009 WL 4842801, at *5 n.1 (S.D. Cal. Dec. 14, 2009) ("[T]here is no reason to conclude that an 'unfair' UCL claim predicated upon false advertising and misrepresentation would not be subject to Tobacco II's actual reliance requirement.").

In sum, Plaintiff's entire theory of "misbranding" depends on phosphoric acid being used as a preservative or artificial flavor in Pepsi.  But the FAC's only support for that theory is the unwarranted, unsupported, and implausible assumption that phosphoric acid is used in foods as an "artificial flavor and/or as an acidulant which is a type of chemical preservative."  (FAC ¶ 105.)  Plaintiff must do more in order to state a claim—especially if she seeks to have this Court deem huge swaths of carbonated beverages "misbranded" and "legally worthless" simply because they allegedly label phosphoric acid by its usual name on the ingredients label, as has been the case for decades.

**C.     Plaintiff Fails To Set Forth Particularized Allegations That She Was Misled**

Plaintiff's UCL and CLRA claims must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b) because they are based on the allegation that "Defendant's products" contained "false and misleading labeling statements."  (FAC ¶ 109.)  *See Kearns*, 567 F.3d at 1124.  Plaintiff's conclusory assertion that she purchased a Pepsi at some unspecified time, in an unspecified package, at an unspecified location falls well short of the Rule 9(b) pleading standard and requires dismissal of the UCL and CLRA counts.  *See, e.g.*, *Yumul v. Smart Balance*, *Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (explaining that an allegation that a plaintiff purchased a product "repeatedly," yet which "does not allege with any greater specificity the dates on which the purchases were made" nor the "retailer or retailers" where the purchases were made, fails to provide the requisite specificity); *Briseno v. ConAgra Foods, Inc.*, No. 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750, at *37–38 (C.D. Cal. Nov. 23, 2011) (failure to "allege . . . whether the statements remained the same throughout the class period, or, if they did not, on which label(s) . . . or statement(s) [plaintiff] relied" does not satisfy Rule 9(b)).

In *Kearns*, the Ninth Circuit rejected the plaintiff's allegations under the UCL and CLRA for failure to identify what the advertisements stated, when the plaintiff was exposed to them, and the sales materials upon which the plaintiff relied.  567 F.3d at 1126.  Similarly, an allegation that a plaintiff purchased a product "repeatedly" does not provide the specificity required.  *Yumul*, 733 F. Supp. 2d at 1124.  As in *Kearns* and *Yumul*, Plaintiff here fails to allege her claims with the requisite particularity.  The FAC does not even describe which Defendant's product caused her injury, as she instead opts for sweeping categorizations that attribute conduct indiscriminately to all Defendants and

all products.  For example, Plaintiff asserts that consumers like her were "misled into purchasing Defendants' products with false and misleading labeling statements and ingredient descriptions." (FAC ¶ 109.)  There are no allegations as to **what** particular product Plaintiff purchased, **where** she purchased the products, **how** much she paid (or the prices of comparable beverages), **when** (or how frequently) she bought Pepsi carbonated beverages, or **why** she purchased Pepsi carbonated beverages instead of any other beverages.  While the Complaint alleges that Plaintiff "saw the Defendants' label representations and relied on them" (FAC ¶ 107), the Complaint is not clear as to *which* Defendant's label she saw, on which product, or what particular statements she read and relied upon in making her purchases.  (*Id.*)  This is particularly problematic because the Complaint indiscriminately refers to all "Defendants" even when Pepsi products are not involved.  Examples are replete, but to provide but one, paragraph 151 alleges that "Plaintiff relied on Defendants' . . . nutrient content claims," even though Plaintiff does not allege that there are any "nutrient content claims" on Pepsi.  (*See id.* ¶ 151.)

Further, the basis for Plaintiff's reliance appears to be her own unique assumptions about the characteristics of the Pepsi that she bought, rather than any statement on the product label.  Specifically, while Plaintiff claims that she bought "these products"—again, Pepsi is left to guess which of the several tea beverages and carbonated beverages is being referenced here—on the "belief that these products did not contain chemical preservatives or artificial ingredients" (FAC ¶ 107), she does not identify any statement by Pepsi that reasonably would have led her to that conclusion.  She does not allege that the labels on the Pepsi carbonated beverage made any claims regarding the presence of preservatives or artificial ingredients.  The only apparent basis for her belief is her self-directed conclusion that phosphoric acid and citric acid are preservatives, and should be identified as such with parenthetical notations.  As described above, that is a self-serving, conclusory, and implausible assertion.  And there is little reason to believe that the "reasonable consumer" would share Plaintiff's particular point of view on this point in any event.  The likelihood of confusion is not to be evaluated by the odds that an advertising message might confuse someone, somewhere.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995).

1    The Complaint thus leaves completely unanswered whether Plaintiff actually saw and relied

2    on all of the challenged statements on all of the products that Plaintiff claims are at issue, and if not

3    all of them, which ones and how many.  Instead of providing the required level of detail, the

4    Complaint is laced with bald assertions such as:  Defendants' "labeling was false and misleading."

5    (FAC ¶ 43.)  These conclusory allegations are legally insufficient to state a claim for fraud.  Without

6    the "who, what, when, where, and how," the FAC must be dismissed.  *Edwards v. Marin Park, Inc.*,

7    356 F.3d 1058, 1066 (9th Cir. 2004) (affirming dismissal of fraud claims because plaintiff failed to

8    specify content of fraudulent representation); *see also Bardin v. DaimlerChrysler Corp*., 136 Cal.

9    App. 4th 1255, 1274–75, 39 Cal. Rptr. 3d 634 (2006) (holding that allegation that "members of the

10   public were likely to have been deceived" "merely concludes the public would likely be deceived,

11   without pleading any facts showing the basis for that conclusion").

12           Plaintiff also alleges that she "paid an unwarranted premium for these products" (FAC ¶ 111),

13   but there is again no indication as to what "products" are being referenced, why she bought Pepsi

14   carbonated beverages in the first place, what alternative products she would have purchased, or how

15   much she would have paid for them (*id*.).  Nor does she allege how much she paid for any one Pepsi

16   beverage or how much she spent on Pepsi "since 2008 and throughout the Class Period."  (*Id*. ¶ 149.)

17   The failure to support these assertions with particularized facts requires dismissal under Rule 9(b).

18   *Kearns*, 567 F.3d at 1126; *Yumul*, 733 F. Supp. 2d at 1124.

19   **D.     Plaintiff's Warranty Claims Fail Because An Ingredient Statement Is Not A Written
             Warranty**

20           As an initial matter, it is not clear whether Plaintiff is attempting to assert breach of warranty

21   claims against Pepsi or not.  The warranty allegations are directed to "all natural," and "nutrient and

22   health content claims," none of which is alleged to have appeared on Pepsi's products.  (FAC ¶¶ 246,

23   257.)  Nonetheless, because the Complaint is vaguely addressed to the conduct of "Defendants," and

24   to the labeling of "these products," Pepsi will address the deficiencies with the warranty claims.

25           Plaintiff's claims for breach of warranty fail for a very simple reason:  she has not alleged

26   sufficient facts to establish that statements on the Pepsi labels created a "written warranty" within the

27   meaning of the applicable laws.

28

Gibson, Dunn &
Crutcher LLP

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Amended Complaint          Case No. 5:12-cv-01736

The Magnuson-Moss Warranty Act narrowly defines a "written warranty" as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship *and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product *to refund, repair, replace, or take other remedial action with respect to such product* in the event that such product fails to meet the specifications set forth in the undertaking . . . .

15 U.S.C. § 2301(6) (emphases added).

Similarly, the Song-Beverly Act defines a warranty as:

(1) A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance; or

(2) In the event of any sample or model, that the whole of the goods conforms to such sample or model.

Cal. Civ. Code § 1791.2(a).

Plaintiff does not allege any label statement on Pepsi that could constitute a written guarantee of a defect-free product, or of a level of performance over a specific time period.  After all, the only thing that Plaintiff identifies is that the undefined set of Pepsi products contains phosphoric acid without a parenthetical descriptor; if anything, this is a "product description" rather than a promise that the beverage is defect-free.  *See, e.g., Hairston v. South Beach Bev. Co.*, No. 12-cv-1429 JFW, 2012 U.S. Dist. LEXIS 74279, at *18–19 (C.D. Cal. May 18, 2012) ("The challenged statements — 'all natural with vitamins' and the names of various Lifewater flavors — are 'product descriptions' rather than promises that Lifewater is defect-free, or guarantees of specific performance levels," and because the label "does not promise refund, repair, or replacement if the product fails to meet specifications"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL 1703, 2006 U.S. Dist. LEXIS 100903, at *13 (N.D. Ill. May 17, 2006) (dismissing Magnuson-Moss Warranty Act claim because "Made in USA" is a "product description," not a promise of performance).

**E.      Unjust Enrichment Is Not A Valid Cause Of Action Under California Law**

Plaintiff's "claim" for unjust enrichment must be dismissed because California law does not recognize this purported cause of action:  "[U]njust enrichment is not a cause of action . . . or even a remedy," but rather a general principle underlying various legal doctrines and remedies.  *McBride v. Boughton*, 123 Cal. App. 4th 379, 387, 20 Cal. Rptr. 3d 115 (2004); *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307, 128 Cal. Rptr. 3d 109 (2011) ("Unjust enrichment is not a cause of action."); *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 578 F. Supp. 2d 1242, 1250 n.13 (E.D. Cal. 2008) ("there is no cause of action in California for unjust enrichment"); *Tait v. BSH Home Appliances Corp.*, No. 10-711, 2011 WL 1832941, at *5 (C.D. Cal. May 12, 2011) (noting some disagreement but explaining that "the more recent and well-reasoned cases hold that 'unjust enrichment does not describe a theory of recovery, but an effect'" (quoting *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010))).

**V.      PLAINTIFF CANNOT MAINTAIN A CLAIM AGAINST PEPSICO BASED ON A THEORY OF ALTER EGO LIABILITY**

As demonstrated above, there is no basis upon which Plaintiff can pursue a claim against Pepsi based on any of its own products.  Nor is there any basis for holding Pepsi liable based on tea products owned by the Pepsi-Lipton Partnership.  The only allegation that Plaintiff offers to link Pepsi to products of the Pepsi-Lipton Partnership is that "[o]n the label of certain ready to drink Lipton Tea products bought by the Plaintiff it is represented that the products are bottled under the authority of PepsiCo."  (FAC ¶ 19.)  That allegation notably does not identify which products are bottled "under the authority" of Pepsi, nor does it explain how any such authority could give rise to alter ego liability against Pepsi.  Plaintiff also alleges that the partnership operates as a subsidiary of Pepsi (FAC ¶ 20); while that is false as a matter of fact, even if assumed to be true as a matter of pleading, the mere existence of a parent-subsidiary relationship is an insufficient basis for invoking alter ego liability.

That is because "[a]lter ego is an ***extreme remedy, sparingly used***," *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 539 (2000) (emphasis added), and "[i]t is the ***plaintiff's burden to overcome the presumption of the separate existence of the corporate entity***," *Mid-Century Ins. Co.*

1   *v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992) (emphasis added).  Accordingly, Plaintiff must

2   demonstrate that she has satisfied two stringent conditions under California law "before the alter ego

3   doctrine will be invoked."  *See Sonora Diamond*, 83 Cal. App. 4th at 538.  "First, there must be such

4   a unity of interest and ownership between the corporation and its equitable owner that the separate

5   personalities of the corporation and the shareholder do not in reality exist."  *Id*.  In other words, there

6   must be some "specific manipulative conduct" that would relegate the equitable owner "to the status

7   of merely an instrumentality, agency, conduit or adjunct."  *Inst. of Veterinary Pathology*, *Inc. v. Cal.*

8   *Health Labs.*, *Inc*., 116 Cal. App. 3d 111, 119–20 (1981).  "Second, there must be an inequitable

9   result if the acts in question are treated as those of the corporation alone."  *Sonora Diamond*, 83 Cal.

10  App. 4th at 538.  Plaintiff fails to allege either of these requisite elements.

11      On the first element—unity of interest and ownership—Plaintiff acknowledges that there is

12  not a unity of interest and ownership sufficient to disregard corporate formalities, as Pepsi is only a

13  partner in the Pepsi-Lipton Partnership, owning half of the shares, with Unilever holding the other

14  half.  (FAC ¶ 20.)  However, that degree of ownership is not sufficient to invoke the extreme remedy

15  of alter ego liability, especially when the California Supreme Court has long recognized that because

16  the mere fact that "all of the capital stock of a corporation is owned or controlled by one or more

17  persons, does not, and should not, destroy its separate existence; were it otherwise, few private

18  corporations could preserve their distinct identity, which would mean the complete destruction of the

19  primary object of their organization."  *Dos Pueblos Ranch & Improv. Co. v. Ellis*, 8 Cal. 2d 617, 621

20  (1937); *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011) (allegation that individual was sole owner

21  of corporation and made all business decisions was insufficient to invoke alter ego liability).

22      Nor has Plaintiff pleaded facts to support the second element of "alter ego" liability—that an

23  unjust result would attain if Plaintiff were not allowed to sue PepsiCo for the labeling of the Pepsi-

24  Lipton Partnership products.  Plaintiff's Complaint does not identify any injustice that would result

25  from such a situation, and the mere allegation that "certain ready to drink Lipton tea products bought

26  by the Plaintiff" are bottled under the authority of PepsiCo does not suffice because (1) it is not clear

27  which products those are or whether Plaintiff even purchased those products, and (2) the bottling of

28  the products is irrelevant to Plaintiff's claims of "misbranding" and inappropriate labeling anyhow.

*See VirtualMagic Asia*, *Inc. v. Fil-Cartoons*, *Inc.*, 99 Cal. App. 4th 228, 245 (2002) ("Alter ego will not be applied absent evidence that an injustice would result").

Because Plaintiff's allegation that some undefined set of products is "bottled under the authority" of Pepsi falls far short of the type of allegations required to invoke the "extreme" and "sparingly used" remedy of alter ego liability, Plaintiff's attempt to invoke an alter ego theory cannot save her pleading from dismissal.

## VI.  CONCLUSION

With respect to the claims asserted against Pepsi, Plaintiff's lengthy pleading can essentially be reduced to a single allegation—that Plaintiff purchased Pepsi at some point in her life.  She does not allege any facts about that purchase, or any facts about the label, the ingredients statement, or the contents of the product.  Instead, she offers only cursory, implausible conclusions and legal arguments that are not entitled to the presumption of truth.  Plaintiff's FAC thus fails to set forth the well-pleaded and particularized facts that are required to state a claim, and the claims against Pepsi should be dismissed.

DATED:  October 12, 2012

GIBSON, DUNN & CRUTCHER LLP
DANIEL W. NELSON
TIMOTHY LOOSE


By:      */s/ Timothy Loose*

Attorneys for Defendant PepsiCo, Inc.

Gibson, Dunn &
Crutcher LLP

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Amended Complaint          Case No. 5:12-cv-01736