1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  Telephone:  (408) 429-6506
   Fax:  (408) 369-0752
4  pgore@prattattorneys.com

5  *Attorney for Plaintiff*

6

7                  UNITED STATES DISTRICT COURT

8               NORTHERN DISTRICT OF CALIFORNIA

9                      SAN JOSE DIVISION

10

11  AMY MAXWELL, individually and on behalf        Case No. CV 12-01736-EJD
    of all others similarly situated,
12                                                 **PLAINTIFF'S MEMORANDUM IN**
            Plaintiff,                             **OPPOSITION TO DEFENDANTS'**
13                                                 **UNILEVER UNITED STATES, INC.'S**
    v.                                             **AND PEPSI LIPTON TEA**
14                                                 **PARTNERSHIP'S MOTION TO**
    UNILEVER UNITED STATES, INC.,                  **DISMISS THE AMENDED**
15  PEPSICO, INC. and PEPSI LIPTON TEA             **COMPLAINT OR, IN THE**
    PARTNERSHIP                                    **ALTERNATIVE, MOTION TO STRIKE**
16
            Defendants.
17
                                                   Hearing Date:  December 7, 2012
18                                                 Time:          9:00 a.m.
                                                   Judge:         Hon. Edward J. Davila
19                                                 Action Filed:  April 6, 2012

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF THE ISSUES TO BE DECIDED .................................................. vii

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

SUMMARY OF THE ARGUMENT AND INTRODUCTION ................................... 1

FACTUAL ALLEGATIONS .................................................................................. 2

ARGUMENT ......................................................................................................... 3

I.    Standard of Review ...................................................................................... 3

II.   Plaintiff's Claims Are Not Preempted ........................................................ 3

    A.    There Is a Strong Presumption Against Preemption ......................... 3

    B.    Plaintiff May Bring Suit to Enforce *California* Food-Labeling
          Requirements That Are Identical to FDCA Requirements .................. 4

    C.    Plaintiff's State Law Claims Do Not Require the Court to Interpret
          the FDCA ......................................................................................... 9

    D.    Plaintiff Can Maintain Claims Under the Sherman Law ................... 10

III.  Plaintiff Satisfies Article III's "Case Or Controversy" Requirement ............... 13

    A.    Plaintiff Alleges Injury-In-Fact ........................................................ 13

    B.    Plaintiff Adequately Alleges Legal Injury, Reliance, and Deception ......... 16

        1.    Legal Injury ............................................................................ 16

        2.    Reliance and Deception .......................................................... 18

IV.   Plaintiff's Amended Complaint Complies With Rule 9(b) .............................. 19

V.    Plaintiff Has Properly Pleaded Claims Under The UCL, FAL and CLRA ......... 21

    A.    The Statutory Provisions ................................................................... 21

    B.    Defendants Cites Cases That Are Distinguishable ............................ 23

VI.   Plaintiff Song-Beverly  Magnuson-Moss Claims Are Valid ........................... 23

VII.  Plaintiff Has Properly Pleaded an Unjust Enrichment Claim .......................... 24

VIII. The Court Should Not Strike Any Averments in Plaintiff's Amended Complaint ........... 25

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*AFCM, Inc. v. Elite Global Farming and Logistics, Inc.*,
　2012 WL 1309168 (N.D. Cal. 2012)..................................................................... 25

*Aho v. Americredit Fin. Servs.*,
　2011 U.S. Dist. LEXIS 80426 (S.D. Cal. 2011) ................................................... 20

*All One God Faith, Inc. v. Hain Celestial Group, Inc.*,
　2012 U.S. Dist. LEXIS 111553 (N.D. Cal. 2012)................................................... 7

*Altria Group, Inc. v. Good*,
　555 U.S. 70 (2008) ................................................................................................... 4

*Ashcroft v. Iqbal*,
　129 S.Ct. 1937 (2009) ......................................................................................... 3, 16

*Astiana v. Ben & Jerry's Homemade, Inc.*,
　2011 WL 2111796 (N.D. Cal. May 26, 2011) .............................................. *passim*

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
　2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) ........................... 11, 25

*Baas v. Dollar Tree Stores, Inc.*,
　2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007)..................................... 20

*Bank of the West v. Superior Court*,
　2 Cal. 4th 1254 (1992) .......................................................................................... 22

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007)........................................................................................... 3, 16

*Birdsong v. Apple, Inc.*,
　590 F.3d 955 (9th Cir. 2009)............................................................................. 16,23

*Boysen v. Walgreen Co.*,
　2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ................................... 16

*Briseno v. Conagra Foods, Inc.*,
　No. 2:11-cv-05379 MMM-AGR, Slip. Op. at 21 (C.D. Cal. Nov. 23, 2011) ................... 19

*Brooks v. ComUnity Lending, Inc.*,
　2010 U.S. Dist. LEXIS 67116 (N.D. Cal. Jul. 6, 2010) ....................................... 20

*Brown v. Hain Celestial Group*,
　2012 U.S. Dist. LEXIS 108561(N.D. Cal. Aug. 1, 2012)........................................ 6

*Bruno v. Quten Research Inst., LLC*,
　280 F.R.D. 524 (C.D. Cal. 2011) ......................................................................... 25

*Chacanaca v. Quaker Oats Co.*,
　752 F. Supp. 2d 1111 (N.D. Cal. 2010) .................................................................. 5

*Chavez v. Blue Sky Natural Bev. Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) .......................................................................... 5, 10, 13

*Chavez v. Blue Sky Natural Bev. Co.,*
    340 Fed. Appx. 359 (9th Cir. 2009) ...................................................................... 7, 13, 17

*Chavez v. Nestle USA, Inc.,*
    2011 U.S. Dist. LEXIS 58733 (C.D. Cal. May 2, 2011) ...................................... 7

*Comm. on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal. 3d 197 (1983) ...................................................................... 21

*Council of Ins. Agents & Brokers v. Molasky-Arman,*
    522 F.3d 925 (9th Cir. 2008) ...................................................................... 14

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.,*
    2012 WL 3881599 (E.D. Cal. Sept. 6, 2012) ...................................................... 6, 7

*Delacruz v. Cytosport, Inc.,*
    2012 WL 2563857 (N.D. Cal. June 28, 2012) .......................................................... 6, 7, 10

*Employers Ins. of Wausau v. Granite State Ins. Co.,*
    330 F.3d 1214 (9th Cir. 2003) .......................................................................... 17

*Forcellati v. Hyland's, Inc.,*
    2012 U.S. Dist. LEXIS 91393 (C.D. Cal. June 1, 2012) ...................................... 25

*Frye v. L'Oreal USA, Inc.,*
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ...................................................................... 15

*Henderson v. Gruma Corp.,*
    2011 WL 136188 (C.D. Cal. April 11, 2011 .......................................................... 19

*Herrington v. Johnson & Johnson Consumer Cos.,*
    2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) ...................................... 15

*Hitt v. Arizona Beverage Co., LLC,*
    2009 WL 449190 (S.D. Cal. Feb. 4, 2009) .......................................................... 5

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,*
    2006 U.S. Dist. LEXIS 95500 (N.D. Cal. Aug. 18, 2006) .................................... 14

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.,*
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) .......................................................... 11

*In re Farm Raised Salmon Cases,*
    42 Cal. 4th 1077 (2008) ...................................................................... passim

*In re Ferrero Litig.,*
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) .......................................................... 3, 23

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.,*
    831 F. Supp. 2d 507 (D. Mass. 2011) .......................................................... 15

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
    2009 WL 2043604 (D.N.J. July 10, 2009) .......................................................................... 12

*In re Sony Grand Wega,*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) .............................................................................. 24

*In re Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145 (2010) ........................................................................... 15, 17, 19

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ....................................................................................................... 21

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) .......................................................................................... 6, 14, 17

*Langdon v. Credit Mgmt., LP,*
    2010 U.S. Dist. LEXIS 16138 (N.D. Cal. Feb. 24, 2010) .................................................. 16

*Linear Technology v. Applied Materials, Inc.,*
    152 Cal. App. 4th 115 (2007) ............................................................................................ 19

*Lockwood v. Conagra Foods, Inc.,*
    597 F. Supp. 2d 1028 (N.D. Cal. 2009) ......................................................................... 5, 10

*Loreto v. Procter & Gamble Co.,*
    737 F. Supp. 2d 909 (S.D. Ohio 2010) .............................................................................. 11

*Mangini v. R.J. Reynolds Tobacco Co.,*
    7 Cal. 4th 1057 (1994) ....................................................................................................... 22

*Mason v. Coca-Cola Co.,*
    774 F. Supp. 2d 699 (D.N.J. 2011) .................................................................................... 16

*McBride v. Boughton,*
    123 Cal. App. 4th 379 (2004) ............................................................................................ 24

*Medrazo v. Honda of North Hollywood,*
    2012 Cal. App. LEXIS 2316 (Cal. App. March 21, 2012) ................................................. 19

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ............................................................................................. 16

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,*
    104 Cal. App. 4th 508 (2002) ............................................................................................ 21

*Perez v. Nidek Co.,*
    657 F. Supp. 2d 1156 (S.D. Cal. 2009) ............................................................................. 11

*Polk v. KV Pharm. Co.,*
    2011 U.S. Dist. LEXIS 144313 (D. Mo. Dec. 15, 2011) ................................................... 16

*Pom Wonderful LLC v. Coca-Cola Co.,*
    679 F.3d 1170 (9th Cir. 2012) .................................................................................. 6, 7, 12

*Reyes v. McDonald's Corp.,*

2006 U.S. Dist. LEXIS 81684 (N.D. Ill. 2006)..................................................................... 5

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,*
    902 F.2d 22 (3rd Cir. 1990) .................................................................................... 11

*Sateriale v. R.J. Reynolds Tobacco Co.,*
    2012 U.S. App. LEXIS 14394 ................................................................................ 20

*Saunders v. Superior Court,*
    27 Cal. App. 4th 832 (1994) ................................................................................... 21

*Shin v. BMW of N. Am.,*
    2009 WL 2163509 (C.D. Cal. July 16, 2009) ......................................................... 21

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011)................................................................................ 17

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007).................................................................................. 19

*Thomas v. Imbrolio,*
    2012 Cal. App. Unpub. LEXIS 3111 (Cal. Ct. App. 2nd Dist., April 25, 2012) .............. 17

*Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ........................................................................................... 19

*U.S. v. El-O-Pathic Pharmacy,*
    192 F.2d 62 (9th Cir. 1951)..................................................................................... 22

*United States v. Gonzalez-Alvarez,*
    277 F.3d 73 (8th Cir. 2002).................................................................................... 17

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)................................................................................ 21

*Vicuna v. Alexia Foods, Inc.,*
    2012 WL 1497507 (N.D. Cal. April 27, 2012) .............................................. 2, 20, 25

*Von Kaenel v. Skinnygirl Cocktails, LLC,*
    No. 2:11-cv-07305, Dkt. No. 66, March 19, 2012 Order (C.D. Cal)................................ 21

*Von Koenig v. Snapple Beverage Corp.,*
    713 F. Supp. 2d 1066 (E.D. Cal. 2010).................................................................. 19

*Whitson v. Bumbo,*
    2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ....................................... 23

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008)......................................................... 3, 18, 20, 22

*Wyeth v. Levine,*
    555 U.S. 555 (2009)........................................................................................ 4, 10

**Statutes and Regulations**

15 USC § 2310 (d) ........................................................................................ 24

15 USC § 2301 .............................................................................................. 23

21 CFR § 101.54(g) ................................................................................... 9, 12

21 CFR § 101.54(g)(1) .................................................................................... 9

21 CFR § 101.54(g)(2) .................................................................................... 9

21 CFR § 101.54(g)(3) .................................................................................. 10

21 CFR § 101.54(g)(4) ............................................................................ 10, 12

21 USC § 301 .................................................................................................. 1

21 USC § 343(a) .............................................................................................. 2

21 USC § 352(f)(1) ........................................................................................ 13

Cal. Bus. & Prof. Code § 17200 ......................................................... 11, 19, 21

Cal. Bus. & Prof. Code § 17203 .................................................................... 22

Cal. Bus. & Prof. Code § 17500 ............................................................... 21, 22

Cal. Civ. Code § 1790 ................................................................................... 23

Cal. Civ. Code § 1791.2 ................................................................................ 23

Cal. Civ. Code § 1793.35 .............................................................................. 24

Cal. Health & Safety Code § 109875 .............................................................. 1

Cal. Health & Safety Code § 110660 .............................................................. 2

Cal. Health & Safety Code § 110760 ............................................................ 13

**Other Authorities**

§ 5.166, BUS. & PROF. C. § 17200 PRACTICE ............................................ 19

William Stern and Janelle J. Sahouria, "The Rise of the 'Private Surgeon General,'"
*The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California*, Vol. 19, No. 2 (Fall 2010). ....................................................... 11

**Rules**

Fed. R. Civ. P. 8(e)(2) .................................................................................. 25

# STATEMENT OF THE ISSUES TO BE DECIDED

**Preemption:**

1. Does a preemption provision that expressly preempts only state requirements "that [are] not identical to" the federal requirements imply that Congress also intended to preempt state requirements that *are* identical to the federal requirements?

**Article III/Standing:**

2. Were the Supreme Court of California and the Ninth Circuit mistaken when they ruled that a plaintiff adequately pleads "injury in fact" when she alleges that, as a result of the false advertising, she purchased a product that she otherwise would not have purchased and paid a premium that she otherwise would not have paid?

3. Can Plaintiff have standing to represent a class for products she herself purchased and a group of similarly labeled products that she did not purchase, so long as it is alleged that there is sufficient similarity between the labels of the products purchased and not purchased, and that the challenged claims on the labels of the two groups of products are identical in all material aspects?

**Plausibility (*Iqbal/Twombly*):**

4. When a product label is misleading under FDA regulations and California law, can a court say, as a matter of law, that it is not plausible that a consumer would be misled by and detrimentally rely on the misleading label?

5. Is Plaintiff required to plead her claims with even more particularity than that required by Rule 9(b)?

6. When a misbranded product cannot be legally sold or held and it is a strict liability crime to do either, is it plausible that Plaintiff and members of the class who purchased such a misbranded product for valuable consideration have been injured by the unlawful sale to them of goods that were illegal to sell to them and illegal for them to hold or resell?

7. Is it plausible that said injury was attributable to the unlawful acts of Defendants?

**Individual Causes of Action:**

8. Do Plaintiff's allegations that, as a result of misleading advertising and labels, she purchased products that she would not otherwise have purchased and paid more than she otherwise would have paid, fail to state a claim under California's false advertising and consumer protection laws?

9. Is a claim for "Restitution Based on Unjust Enrichment/Quasi Contract" subject to dismissal for failure to state a claim on the theory that California does not recognize an independent cause of action for unjust enrichment?

**Striking Plaintiff's Allegations:**

10. Should the Court strike allegations regarding misbranded products that are sufficiently similar to the products purchased by Plaintiff?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**SUMMARY OF THE ARGUMENT AND INTRODUCTION**

Plaintiff, Amy Maxwell, opposes the Motion to Dismiss by Defendants, Unilever United States, Inc. and Pepsi Lipton Tea Partnership. (hereinafter "Unilever" or "Defendants").

Plaintiff's case has two facets:

First, the "*misbranding*" part.  Plaintiff alleges that Defendants package, label and market "misbranded" tea products.  These acts are unlawful and unfair and, standing alone without any allegations of deception, give rise to various claims for relief including relief under the unlawful and unfair prongs of California's Unfair Competition Law and the Consumers Legal Remedies Act.  Plaintiff describes how Defendants' products are misbranded, alleging unlawful and unfair conduct.  Plaintiff's Amended Complaint ("AC") describes in detail Defendants' violations of specific sections of California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law") which adopts the federal Food Drug & Cosmetic Act, 21 USC § 301 *et seq.* ("FDCA") in defining food as "misbranded" if its labeling is false or misleading or if it does not contain certain information on its label.  The law is clear: Misbranded food cannot be legally manufactured, advertised, distributed, sold or held, and, in fact, Defendants do not argue otherwise.  Misbranded food as no economic value and is worthless *as a matter of law.*

Second, the "*deceptive*" part.  Plaintiff alleges that Defendants' packaging and labels are misleading, deceptive, fraudulent and unlawful.  Plaintiff's AC comprehensively alleges the falsity, deception and unlawfulness of Defendants' package labels, product placement and website claims.  Plaintiff alleges that she reasonably relied on Defendants' misrepresentations, and was thereby deceived, in deciding to purchase Defendants' products.

Facing Plaintiff's allegations, Defendants' motion recycles arguments that have been rejected so often in the Northern District that they are now discredited.  On November 9, 2012 this Court denied a similar motion in *Khasin v. The Hershey Co.*, Case No. 12-cv-01862, Dkt. No. 45 (N. D. Cal. Nov. 9, 2012)(Ex. 1).  That case contained the very issues discussed in this case including those related to preemption, particularity, and unjust enrichment. Last year, Defendants'

1    counsel made, and lost, the same arguments concerning plausibility, standing, abstention,

2    preemption, particularity, unjust enrichment, injunctive relief and class allegations in *Astiana v.*

3    *Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*").

4    In April, 2012 Judge Hamilton disposed of these same arguments.    *Vicuna v. Alexia Foods, Inc.*,

5    2012 WL 1497507 (N.D. Cal. April 27, 2012).

6        To be clear, Plaintiff does not seek to enforce **federal** regulations in this Court; instead

7    Plaintiff seeks to enforce California law, as alleged in the AC.    Plaintiff references FDA

8    regulations because California law adopts and incorporates the text of those regulations.    For

9    these reasons explained herein, this Court should deny Defendants' motion in its entirety.

10                            **FACTUAL ALLEGATIONS**

11        Plaintiff's AC painstakingly details Defendants' systematic practice of placing unlawful

12   and misleading labels on its tea products to increase sales.    Plaintiff incorporates herein the

13   extensive facts alleged within the AC.

14        Food manufacturers like Defendants are required to comply with federal and state laws

15   that govern the labeling of food products.    Defendants know about these laws. First and foremost

16   among these laws is the FDCA and its labeling regulations. The California legislature adopted the

17   requirements of the FDCA in the Sherman Law.    Under both the Sherman Law and FDCA §

18   403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does

19   not contain certain information on its label or in its labeling.    California Health & Safety Code §

20   110660; 21 USC § 343(a).    Under the FDCA, the term "false" has its usual meaning of

21   "untruthful," while the term "misleading" is a term of art.    Misbranding reaches not only false

22   claims, but also those claims that might be technically true, but still misleading.    If any single

23   representation in the labeling is misleading, the entire food is misbranded, and no other statement

24   in the labeling can cure a misleading statement.

25        Defendants' unlawful conduct includes, but is not limited to, the following:

26   • Misbranding its tea products by making unlawful nutrient content claims regarding
         "excellent source" or "good source" of antioxidant nutrients  by the use of terms
27       such as "packed with," "rich source," "natural source," "contains," "provides,"
         "found in" when, in fact, the tea products do not meet the minimum nutrient level
28       threshold to make such claims. (AC ¶¶ 53-65);

- Misbranding its tea products by making unlawful antioxidant claims when, in fact its tea products do not contain any antioxidant with recognized antioxidant activity with an established recommended daily intake (RDI). (AC ¶¶ 66-81);

- Misbranding its tea products by making unlawful nutritional value claims. (AC ¶¶ 82-88);

- Unlawfully representing food products to be "all natural" or "natural" when they contain significant quantities of chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients. (AC ¶¶ 89-100);

- Failing to disclose the presence of chemical preservatives, artificial flavorings or artificial added colors as required by law. (AC ¶¶ 101-111); and

- Unlawfully stating on its website that Defendants' products treat diseases. (AC ¶¶ 112- 130).  For example, Defendants' website made claims that its tea products could reduce the risk of heart disease, lower cholesterol, reduce infection and prevent cancer. (AC ¶¶ 3-4 and120-121).

Against this extensive factual backdrop, Defendants' argument that Plaintiff cannot state a plausible claim fails.

## ARGUMENT

### I.    Standard of Review

In considering a motion to dismiss, all allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility analysis is "context-specific," and courts are advised to draw upon "judicial experience and common sense" in applying it.  *Iqbal*, 129 S.Ct. at 1950.  However, assessing plausibility does not involve analysis of the merits. *Twombly*, 550 U.S. at 556-57.  "[I]t is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

### II.    Plaintiff's Claims Are Not Preempted

#### A.    There Is a Strong Presumption Against Preemption

Defendants argue this case should be dismissed on preemption grounds.  Defendants face

1  a steep climb from the start, however, because there is a strong "presumption against pre-

2  emption" recognized by the United States Supreme Court in *Wyeth v. Levine*, 555 U.S. 555, 565

3  n.3 (2009).  Further, the "historic police powers of the States [are] not to be superseded by the

4  Federal Act unless that was the clear and manifest purpose of Congress."  *Altria Group, Inc. v.*

5  *Good*, 555 U.S. 70, 77 (2008).   In cases like this, courts have clearly held that laws regulating

6  "the proper marketing of food, including the prevention of deceptive sales practices, are . . .

7  within states' historic police powers."  *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088

8  (2008).  Defendants cannot overcome this high burden.

9        **B.**    **Plaintiff May Bring Suit to Enforce *California* Food-Labeling Requirements That Are Identical to FDCA Requirements**

10

11        Defendants first argue that Plaintiff may not "privately enforce" Food and Drug

12  Administration ("FDA") regulations. (Def.'s Br. at 9-13).  Defendants are wrong.   As stated

13  repeatedly throughout this memorandum, Plaintiff is not seeking to enforce FDA regulations.

14  Plaintiff only seeks to enforce California laws that impose a standard of conduct that is identical

15  to that imposed by the FDCA.   Plaintiff does not bring a claim under the FDCA, but rather for

16  violations of these identical California laws – which provide a cause of action.   Therefore,

17  Plaintiff is not seeking to "enforce" the FDCA.   Again, Plaintiff's claims are based on the

18  California Sherman Law which adopts the FDCA provisions as its own.[1]   As the California

19  Supreme Court has conclusively stated:

20          The words of section 343-1 clearly and unmistakably evince Congress's intent to
21          authorize states to establish laws that are "identical to" federal law. ***That is precisely***
22  ***what California did in enacting the Sherman Law***…Additionally, the Sherman Law
incorporates all of the food labeling regulations promulgated by the
FDA…Accordingly, the state requirements at issue here are explicitly permitted by
23          section 343-1.   *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1090 (citations
omitted)  (emphasis added).[2]

---

24

25  [1] Cal. Health & Safety Code § 110100 (a) states "all food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."

26  [2] The FDA and the Department of Justice agree.  In the DOJ's *amicus* brief to the U.S. Supreme Court in the *In Re*
27  *Farm Raised Salmon Cases*, the DOJ plainly stated "California's food-labeling requirements are, therefore, substantively identical to the requirements of the FDCA." DOJ *Amicus* Br. at 3 (attached hereto as Exhibit 2).  The DOJ went further and unquestionably declared "the California Supreme Court's ruling that the FDCA does not
28  preempt respondent's state-law suit is correct," *Id*. at 8, and "actions to enforce state laws that impose requirements identical to those under the FDCA are not actions to enforce the FDCA itself." *Id*. at 12.

Like the Defendants in *In Re Farm Raised Salmon Cases*, "[t]he crux of Defendants'
preemption argument is that Plaintiff's private state claims are precluded because they improperly
seek to enforce the FDCA in violation of section 337(a). ***Defendants' starting assumption is
incorrect***." *In Re Farm Raised Salmon Cases*, 42 Cal. 4th at 1096 (emphasis added).  State
statutes, if identical to the FDCA, are permitted.   Indeed, Defendants cannot and has not
suggested otherwise.  See *Hershey*, Order, at 7 (Plaintiff has not brought suit to enforce the
federal state; rather, Plaintiff's action is based on parallel state laws that mirror the relevant
sections of the FDCA and the NLEA"); *Ben & Jerry's,* 2011 WL 2111796, at *9 ("The purpose
of the [National Labeling and Education Act] . . . is not to preclude all state regulation of
nutritional labeling, but to 'prevent State and local governments from adopting inconsistent
requirements with respect to the labeling of nutrients.'") (*quoting* H. Rep. No. 101–538, at 10
(1990)); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 372 (N.D. Cal. 2010) ("*Chavez I*")
("[T]he mere fact that Plaintiff's state law claims threaten private liability that does not exist
under the FDCA is not sufficient to bring those claims within the preemptive scope of Section
403A [21 USC § 343-1(a)(1)]"); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032
(N.D. Cal. 2009) (finding no preemption of consumers' claims related to state food labeling
requirements and stating, "The NLEA amended the FDCA to include an express preemption
provision that *allows* state regulations that are identical to federal law.") (emphasis in original);
*Hitt v. Arizona Beverage Co.*, *LLC*, 2009 WL 449190, at *4 (S.D. Cal. Feb. 4, 2009) ("In a note
to section 343–1, Congress stated that '[t]he [NLEA] shall not be construed to preempt any
provision of State law, unless such provision is expressly preempted under [1 USC § 343-
1(a)].'"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) ("Where
a requirement imposed by state law effectively parallels or mirrors the relevant sections of the
NLEA, courts have repeatedly refused to find preemption . . . . The FDA itself appears to endorse
this approach."); *Reyes v. McDonald's Corp.*, 2006 U.S. Dist. LEXIS 81684, at *19 (N.D. Ill.
2006) ("[T]here is no express provision in the text of the NLEA that indicates that a state
common law action seeking to enforce the exact terms of the NLEA is preempted. There is also
no requirement . . . that a state expressly adopt the exact language of the NLEA in order to allow

1    a cause of action to proceed.").

2          Finding no case law to support their argument, Defendants misrepresent the holding in

3    *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012). Defendants argue that

4    *Pom Wonderful* "forecloses a private party from bringing indirectly a claim to enforce alleged

5    violations of FDA labeling regulations." (Def.'s Br. at 9). This simply is not *Pom Wonderful's*

6    holding.

7          In *Pom Wonderful*, the court held that a plaintiff could not bring **federal** Lanham Act

8    claims for a deceptive juice label where the label presumptively complied with FDCA

9    regulations. *Pom Wonderful*, 679 F.3d at 1178 (emphasis added). However, the court remanded

10   the state law claims for further determination in light of the California Supreme Court's decision

11   in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). *Id.* at 1179. The holding was

12   therefore limited to the federal claim.

13         This Court has acknowledged the limited holding in *Pom Wonderful* has no application

14   here. Hershey Order at 8. In *Delacruz v. Cytosport, Inc*., 2012 WL 2563857, *7 n.3 (N.D. Cal.

15   June 28, 2012) this Court held that "[t]he Ninth Circuit's preemption ruling was limited to a

16   finding that the FDCA preempted *Pom's* claims under the [federal] Lanham Act."

17         Another California federal court has concurred. In *CytoSport, Inc. v. Vital

18   Pharmaceuticals, Inc.*, the Eastern District of California held allegations nearly identical to this

19   case sufficient to defeat a motion to dismiss. The court held:

20           VPX also brings two state law claims which reference the FDA regulations to show
             that CytoSport's use of the term "Milk" is inconsistent with FDA regulations. ***These***

21           ***claims are not barred by the ruling in Pom because the FDA specifically permits***
             ***states to create labeling requirements that are identical to the FDA's and establish***

22           ***independent causes of actions for those claims***.

23   *CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 2012 WL 3881599, at *6-7 (E.D. Cal. Sept. 6,

24   2012) (citations omitted) (emphasis added). In *Brown v. Hain Celestial Group*, 2012 U. S. Dist

25   LEXIS 108561 (N. D. Cal. Aug. 1, 2012), the court denied a motion to dismiss based on

26   preemption arguments and allowed California state claims to proceed. *Id*. at 32-47. Notably,

27   Defendants fail to mention *Delacruz* or *CytoSport, Inc.* or *Brown* in their brief.

28         This is precisely the case here. California has requirements in the Sherman Law identical

1    to that of the FDA and allows causes of action for those claims.  As held in *In re Farm Raised*

2    *Salmon Cases*, this is perfectly appropriate under state law.  *Pom Wonderful*, therefore, does not

3    help Defendants.[3]

4          Moreover, Defendants only halfheartedly argue that the Sherman Law and the FDCA are

5    not actually identical.  Defendants have the burden to overcome the "presumption against

6    preemption" by demonstrating that state law claims impose labeling requirements that are not

7    identical to federal law requirements. *Chavez v. Blue Sky Natural Bev. Co.*, 340 Fed. Appx. 359,

8    369 (9th Cir. 2009) ("*Chavez II*").  Defendants fail to do so.

9          First, Defendants suggest that because Plaintiff asked for a jury trial that the statutes are

10   not the same.  This argument has no merit for all of the reasons described previously.  Plaintiff is

11   allowed to bring state claims.  Those claims allows for a jury.  The fact that a jury is the fact

12   finder under California law does not mean that the statutes are not identical – as the California

13   Supreme Court has ruled.

14         Second, Defendants argue that its phrases "naturally contains" or "source of" antioxidants

15   or flavonoids are really not nutrient content claims because they do not characterize the level of

16   antioxidants.  (Def.'s Br. at 15-16).  This is not true.  The FDA has expressly stated that this exact

17   "source of" claim is a nutrient content claim.     On March 24, 2011, the FDA sent Jonathan

18   Sprouts, Inc. a warning letter regarding a "source" type claim like the one used by Defendants. In

19   that letter the FDA stated:

20         Your Organic Clover Sprouts product label bears the claim "Phytoestrogen Source[.]"
21         Your webpage entitled "Sprouts, The Miracle Food! - Rich in Vitamins, Minerals and
           Phytochemicals" bears the claim "Alfalfa sprouts are one of our finest food ***sources of***
22         *. . . saponin*. ***These claims are nutrient content claims subject to section 403(r)(1)(A)***
           ***of the Act because they characterize the level of nutrients of a type required to be in***
           ***nutrition labeling (phytoestrogen and saponin) in your products by use of the term***
23         ***"source."*** Under section 403(r)(2)(A) of the Act, nutrient content claims may be made

24

---

25   [3] Defendants also cite *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, 2012 U.S. Dist. LEXIS 111553 (N.D.
     Cal. 2012) and *Chavez v. Nestle USA, Inc.*, 2011 U.S. Dist. LEXIS 58733 (C.D. Cal. May 2, 2011).  Both cases are

26   distinguishable and do not support dismissal of this case.  In *Hain Celestial Group, Inc.*, the court merely followed
     the holding in *Pom Wonderful* and stated that only a federal Lanham Act claim could not be brought.    In *Nestle*

27   *USA, Inc.*, the plaintiff alleged that the defendants "lacked substantiation" for its claim that "Juicy Juice promotes
     'brain development' (whatever that means) in children." *Id.* at *13 (parenthetical in original).  The plaintiff did not

28   allege, however, "what about that claim is deceptive beside the fact that it is supposedly unsubstantiated." *Id.* The
     court held that "lack of substantiation" is not a cognizable theory under the UCL or FAL. *Id.* at *14-17.  Here,
     Plaintiff does not rely on a "lack of substantiation" theory, and *Nestle USA, Inc.* is therefore irrelevant.

only if the characterization of the level made in the claim uses terms which are defined by regulation. However, FDA has not defined the characterization "source" by regulation. Therefore, this characterization may not be used in nutrient content claims.

(AC ¶ 58) (emphasis added).   Additionally, Plaintiff alleges that other claims on Defendants' labels are unlawful and misleading.   As discussed above, Plaintiff alleges that Defendants also make unlawful and misleading "excellent source" and "good source" nutrient content claims. Defendants omit these allegations in their brief and fail to address claims made on their labels **before** the FDA warning letter and the subsequent changes on the labels as the result thereof.

Similarly, Defendants' defense of their use of the phrase "all natural" on products that contain artificial ingredients is hollow and in direct contradiction to California Health and Safety Code § 110740 prohibiting the use of such ingredients unless adequately disclosed. (AC ¶¶ 90-96.). Defendants ignore undisputed violations involving things like added color and try to limit argument to whether some forms of citric acid might be natural.  However, FDA warning letters indicate that when citric acid is used as a chemical preservative or as an unexpected added ingredient in foods like tea, representation of naturalness  are prohibited (AC ¶ 94 AC Ex. 5-6).

Third, Defendants attempt to tiptoe around the unlawful health claims made on their website which led to the August 23, 2010 warning letter referenced in the AC (¶¶ 119) by referencing only the language presently on their website. Plaintiff alleges that the present website continues to make unlawful health claims which go far beyond a structure function claim, but additionally alleges that the health claims to which the FDA objected and which Defendants removed from their website were made within four years of the filing of this action and are also at issue.   Paragraphs 112-130 of the AC describe how health claims made on Defendants' website are considered to be part of  the label just as if these words had been written on the packages. Plaintiff quotes Defendants' website at length.  (*See* AC ¶ 120).  In addition to the examples discussed above, Defendants' former website included claims that tea could reduce risk of heart disease, lower cholesterol, reduce infection and prevent cancer.  Such statements are the health claims at issue. FDA warning letters and the regulations they cite confirm these are health claims.

As shown, Defendants fail to meet their burden to show the statutes are not identical.

**C.    Plaintiff's State Law Claims Do Not Require the Court to Interpret the FDCA**

The Court does not need "to interpret ambiguous FDA regulations," as Defendants argues, to decide the merits of Plaintiff's claims. (Def.'s Br. at 4-5). Defendants' argument is incorrect and the California Supreme Court has expressly stated as such. *See In re Farm Raised Salmon Cases*, 175 P.3d at 1182 ("[Plaintiffs' claims arise out of violations of the Sherman Law, not out of the FDCA itself."). Proving that Defendants have violated the FDCA is not an element of Plaintiff's California claims. Plaintiff has brought state law claims to redress harm caused by Defendants' unlawful and misleading labels.

Simply put, Defendants have failed to demonstrate that their food labels are permitted by the FDCA and Sherman Law. Instead, Defendants disingenuously argue that antioxidants in tea have "widely recognized health benefits." (Def.'s Br. at 6). This is false. The FDA has ***not*** recognized the health benefits of tea and, in fact, has rejected a petition for a qualified health claim submitted on the subject of Green Tea and Reduced Risk of Cardiovascular Disease. *See* US Food & Drug Administration Docket # 2005Q-0297. The FDA warning letters attached to the AC also demonstrate that website references to the therapeutic benefits of consuming tea are not allowed.[4]

Moreover, FDA and California law clearly condemn the use of the term "antioxidant" on a product label except under specific circumstances. Nutrient content claims using the term "antioxidant" must comply with, among other requirements, the requirements listed in 21 CFR § 101.54(g). These requirements state, in part, that for a product to bear such a claim, a reference daily intake (RDI) must have been established for each of the nutrients that are the subject of the claim, 21 CFR § 101.54(g)(1), and these nutrients must have recognized antioxidant activity. *See* 21 CFR § 101.54(g)(2). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR § 101.54(b), (c), or (e). *See* 21 CFR §

---

[4] Defendants' claims in this regard are particularly outrageous given that 1) Defendants' own expert concluded that after more than 50 studies "no evidence has been provided to establish that having antioxidant activity/content and/or antioxidant properties is a beneficial physiological effect." (AC ¶72) and 2) the USDA withdrew the antioxidant data the Defendants utilized on their labels and in their claims because they were being "routinely misused by food and dietary supplement manufacturing companies" and because there was "no evidence" of any beneficial effects from the antioxidant properties of food (AC ¶73).

1   101.54(g)(3).  Such a claim must also include the names of the nutrients that are the subject of the

2   claim.   *See* 21 CFR § 101.54(g)(4).   Defendants' tea products do not contain any

3   nutrient/ingredient with FDA recognized antioxidant activity and, therefore, any general reference

4   on the product label regarding "antioxidants" misbrands the product. This conclusion is set out in

5   FDA warning letters sent to other tea companies on this very point. (AC ¶¶ 5, 65-68).

6       Courts routinely apply such objective criteria derived from FDA sources. *See Delacruz*,

7   2012 WL 2563857.  Whether such claims are misleading is a fact question for the jury that does

8   not require interpretation of FDA policy.  *Lockwood,* 597 F. Supp. 2d at 1028.

9       Defendants seek to obscure the black and white nature of their violations by ignoring the

10  claims singled out by the Plaintiff and trying to focus on other aspects of their labels that are not

11  the focus of the claims at hand. Thus, for example, the Defendants disingenuously seek to

12  minimize the unlawful nutrient and antioxidant claims 1) focused on by the FDA in their warning

13  letter to Defendant Unilever and 2) focused on by Plaintiff in the AC at ¶¶53-88, by trying by

14  argue that they are "quantity" type claims where the label says "contains 130 mgs of

15  antioxidants" instead of a unlawful nutrient content claim that says "contains antioxidants."  The

16  problem is that the FDA challenged and Plaintiff complained about a number of unlawful nutrient

17  content claims that lacked any statement of quantity, a fact Defendants fail to address.

18      Additionally, the fact that the FDA has not taken any further enforcement action against

19  Defendants following the warning letter does not weigh in favor of preemption.  (Def.'s Brief at

20  11-12).  The Supreme Court has recognized that the "FDA has limited resources" and common

21  law tort actions are a "complementary form of . . . regulation."  *Wyeth,* 555 U.S. at 578 (holding

22  common law claim for failure to warn on drug label was not preempted); *see also Chavez I*, 268

23  F.R.D. at 373 (holding that Congress "recognized that state-law remedies further consumer

24  protection by motivating manufacturers" to truthfully label food (internal quotations omitted)).

25      **D.    Plaintiff Can Maintain Claims Under the Sherman Law**

26      Defendants next argue that Plaintiff cannot use the Sherman Law to enforce FDA

27  regulations.  That's fine.  Plaintiff is not trying to.  Again, Plaintiff is using a California statute,

28  the Sherman Law, to enforce California law requirements that are identical to FDA regulations,

and there is no question that Plaintiff may do so. *See In Re Farm Raised Salmon Cases*, 42 Cal. 4th at 1096 ("Plaintiffs do not seek to enforce the FDCA; rather, their deceptive marketing claims are predicated on violations of obligations imposed by the Sherman Law, something that state law undisputedly allows."). Because Plaintiff is seeking redress for injuries resulting from Defendants' false and misleading labels that violate state law, Plaintiff's claims are not preempted.

Additionally, Plaintiff alleges claims pursuant to the unlawful prong of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and California Health & Safety Code § 110100(a). Such claims are also not preempted. In *Astiana v. Dreyer's Grand Ice Cream, Inc*., 2012 U.S. Dist. LEXIS 101371, at *33 (N.D. Cal. July 20, 2012), Judge Chen held:

> [t]herefore, the Court concludes that there is no basis to find preemption of the § 17200 claim, but only to the extent the claim is predicated on an unlawful business practice (not an unfair or fraudulent one) and only to the extent the law being violated is either the FDCA or § 110100(a).

Plaintiff's claims fit squarely within the holding of *Dreyer's Grand Ice Cream, Inc*.

Defendants conclude their argument with the statement, "The Sherman Law is not a license to sidestep the federal bar against private remedies." (Def.'s Br. at 14). Before defense counsel wrote this particular statement, he took the opposite view and wrote:

> The court's decision *In re Farm Raised Salmon Cases* therefore, effectively gives Plaintiffs an end run around Section 337(a) by recognizing a private right of action to enforce the FDCA through parallel state laws.

William Stern and Janelle J. Sahouria, "The Rise of the 'Private Surgeon General,'" *The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California*, Vol. 19, No. 2 (Fall 2010). While Plaintiff takes issue with the pejorative terms "private Surgeon General" and "end run," Plaintiff does agree with defense counsel's concession that California law allows a private right of action to enforce California laws that are identical to FDA labeling regulations.

The cases cited by Defendants are all distinguishable. Defendants cite cases involving pharmaceutical claims by a plaintiff who failed to allege that the plaintiff was actually harmed or misled by the Defendants' misconduct. ( Def.'s Br. at 8, citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 22 (3rd Cir. 1990); *Loreto v. Procter & Gamble Co.*, 737 F.

1  Supp. 2d 909 (S.D. Ohio 2010); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices*

2  *Litig.*, 590 F. Supp. 2d 1282 (C.D. Cal. 2008); *Perez v. Nidek Co.,* 657 F. Supp. 2d 1156 (S.D.

3  Cal. 2009); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL

4  2043604 (D.N.J. July 10, 2009). Unlike those drug cases, here, Plaintiff's AC is filled with

5  allegations that she was harmed and mislead.

6      Defendants attempt to shield their misrepresentations from the Court's scrutiny by

7  claiming that there is no private right of action for "unsubstantiated label claims" and that "for a

8  Court to act when FDA has not… would risk undercutting the FDA's judgments and

9  authority…." (Def.'s Br. at 13).  Unlike Coca-Cola in the *Pom Wonderful* case which Defendants

10  cite on these points, FDA has not approved the Defendants' labeling. In fact, as previously

11  discussed the FDA regulations (and mirror California regulations) clearly restrict the use of the

12  term "antioxidant" on a product label. As stated earlier, Defendants' tea products do not contain

13  any nutrient/ingredient with FDA recognized antioxidant activity.

14      FDA has made it clear through the numerous warning letters and Industry Guidance

15  documents that it *disapproves* of the very nutrient content/antioxidant claims Defendants has

16  made on the labels of its tea products.  For instance, Exhibit 2-4 to the Amended Complaint

17  include FDA warning letters to other tea companies, which were making similar, if not identical,

18  claims on its labels and websites regarding the presence of antioxidants and the health benefits to

19  be derived from consuming tea. As set out in the AC Defendants makes various health related

20  claims on its website of health benefits to be derived from using its products but, as demonstrated

21  in the warning letter to Defendants and the warning letters to the other tea companies, tea

22  products do not have approval from FDA to make the health related claims.

23      Because parallel state laws imposing requirements identical to the FDCA are not

24  preempted, Defendant disingenuously argues that the Plaintiffs seek to impose requirements that

25  are not identical to those of the FDCA. This is false. Plaintiffs do not seek to enforce any state

26  claim that would impose a standard of conduct that is not identical to that imposed by the FDCA.

27  Plaintiffs could not as the Sherman Act adopts the FDCA provisions as its own. Only by

28  distorting Plaintiffs' allegations and misrepresenting the FDCA provisions its claims are

inconsistent can the Defendant even raise this argument.

For example, Defendant's incorrectly argue that Plaintiff is incorrect about the requirements to disclose chemical preservatives, artificial flavorings, and artificial colors imposed by 21 C.F.R. § 101.22 but Plaintiff's claims are consistent with 21 C.F.R. § 101.22 and FDA guidance. (AC ¶¶ 89-111.)[5] Defendants' memorandum ignores the scope of Plaintiffs' claims and misrepresents the fraction it addresses.

### III.    Plaintiff Satisfies Article III's "Case Or Controversy" Requirement

#### A.    Plaintiff Adequately Alleges Injury-In-Fact

Defendant essentially asserts that unless a product is demonstrated to be dangerous, tainted, spoiled or otherwise contaminated there can be no Article III standing. (Def.'s Br. at 18-23). In *Hershey*, this Court rejected this very argument. *Hershey*, Order, at 10-11. Also, in *Chavez v. Blue Sky Natural Bev. Co.*, the plaintiff sued based on the defendants' misrepresentation that its Blue Sky soda was made in New Mexico. The Ninth Circuit ruled that the plaintiff sufficiently pled injury-in-fact based on his allegations that he would not have paid the full price for the Blue Sky product, or may not have purchased the product at all, if he had

---

[5] For example, Defendant's failure to use any descriptive term to disclose the function of chemicals such as phosphoric acid or citric acid meeting the § 101.22 definition of a chemical preservative by Defendants' own descriptions on their web sites violates § 101.22. Defendants seek to minimize the significance of their violation of § 101.22 by arguing that no one could be harmed by the absence of a parenthetical but that ignores the fact that by law the Defendants were required to disclose on their products labels the function of ingredients serving as chemical preservatives, artificial flavorings, and artificial colors. While this could have been accomplished by placing a parenthetical such as (chemical preservative) after particular chemicals used by the Defendant as that would have informed the public of information they were entitled to so they could make informed choices about their food, Defendants failed to do so.  Plaintiff complains that the Defendants concealed material information in violation of the law and caused her to purchase and utilize products she otherwise would not have had she known their true nature. Defendants ignore products where they made no disclosure at all and seek to focus on one product where they made a partial disclosure of some but not all of the chemical preservatives the products contained but such an approach is unavailing as it ignores the fact that in all instances Plaintiff was deprived of the right to choose whether to purchase a product based on no disclosure or incomplete disclosure and its is not implausible that for some products Plaintiff might be unwilling to tolerate any chemical preservatives, artificial flavors and artificial colors while having greater flexibility for other types of products. Nor is it implausible that the presence of multiple chemical preservatives might be less palatable to a consumer than a product that appeared to be less of a chemical stew. Similarly, while Defendants acknowledge that § 101.22 defines artificial flavors as any artificial substance whose function "is to impart flavor" it argues that artificial HFCS is not an artificial flavor even though it imparts sweetness which is one of the recognized tastes and a flavoring agent is defined by 21 C.F.R. § 170.3(12) as a substance "added to impart or help impart a taste or aroma in food." Defendant tries to argue HFCS' only function is a sweetener ignoring the fact that a food additive can play multiple roles as evidenced by Defendants' own description of acidulants which they describe as being both a flavor and a preservative.

1   known that its true place of manufacture was outside New Mexico. *Chavez v. Blue Sky Natural*

2   *Bev. Co*., 340 Fed. Appx. 359, 361 (9th Cir. 2009) ("*Chavez II*").

3   This case is not materially different. As alleged in the AC, Defendants made numerous

4   unlawful claims, and Plaintiff reasonably relied on and was thus misled by the Defendants'

5   unlawful labeling practices and actions into purchasing products she would not have otherwise

6   purchased had she known the truth about those products. Plaintiff had other alternatives and

7   Plaintiff also had cheaper alternatives.  (AC ¶¶ 63, 75, 79, 86, 98, 107, 110, 126, 127, 129, 151,

8   152, 153, 155, and 158).   The AC also alleges that Plaintiff was misled by Defendants' false

9   representations into paying a premium for Defendants' products.  (AC ¶¶ 75, 129).    These

10  allegations are clearly sufficient to plead standing.[6]

11  In *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) the Supreme Court of

12  California explained what is required for a plaintiff to have standing under the California UCL:

13  For each consumer who relies on the truth and accuracy of a label and is deceived by

14  misrepresentations into making a purchase, the economic harm is the same: the consumer has

15  purchased a product that he or she paid more for than he or she otherwise might have been willing

16  to pay if the product had been labeled accurately. This economic harm—the loss of real dollars

17  from a consumer's pocket—is the same whether or not a court might objectively view the

18  products as functionally equivalent. *Id*. at 329.

19  This Court followed *Kwikset* in *Hershey* where it quoted *Kwikset* for the proposition that

20  "A consumer who relies on a product label and challenges a misrepresentation contained therein

21  can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not

22  have bought the product but for the misrepresentation." *Hershey*, Order at 11.   Another case

23  directly on point is *Ben & Jerry's* in which the Defendants filed a motion to dismiss arguing that

---

[6] Plaintiff pleaded that Defendants' misbranded products were "legally worthless" or "worthless as a matter of law" based on statutes such as Cal. Health & Safety Code §§ 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.") and 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food."). While Defendants derides this claim it does not explain how a product which cannot legally be sold, delivered, or held could be worth more than zero.  But whether Defendants will ultimately be liable for the full purchase price or something less is beside the point because all that is required for standing is "an identifiable trifle."  *See Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008)

essentially the same language which Plaintiff used here failed to plead an injury and was insufficient to confer Article III standing.  The Court (the Hon. Phyllis J. Hamilton presiding), disagreed:

> The court finds that the motion must be DENIED. Plaintiff has adequately alleged standing. Assuming all facts alleged in the FACs to be true, the court must accept that at least the named plaintiffs suffered a concrete and particularized injury because they bought ice cream labeled "all natural" which contained some allegedly synthetic substance. The injury alleged is that they were deceived, and paid money they would not otherwise have paid had they known about the potassium carbonate in the cocoa.

2011 WL 2111796, at *12-13.  *See generally, In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 2006 U.S. Dist. LEXIS 95500, at *72 (N.D. Cal. Aug. 18, 2006) ("[Defendants] mistakenly confuses pleading requirements with proof").

Also, the fact that Defendants sold Plaintiff misbranded products that were illegal to sell or possess serves as an independent form of injury.  As recognized by the Court in *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010), a plaintiff is:

> "damaged because he bought products that he would not have bought had he known they were not legal to possess….The "damage" Martinez alleged in this case is that, in reliance on GNC's deceptive conduct, he bought an illegal product he would not have bought had he known it was illegal. He does not seek actual damages, but instead seeks restitution. He correctly argues that he is entitled to show that GNC's alleged deceptive conduct caused the same damage to the class by showing that the alleged misrepresentation was material, even if GNC might be able to show that some class members would have bought the products even if they had known they were unlawful to sell or possess without a prescription …. Thus, the question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is "yes"-- we assume that a reasonable person would not knowingly commit a criminal act).

*Steroid Hormone*, 181 Cal. App. 4th 145 at 157.

Unlike Plaintiff's claims here, the cases relied upon by Defendants are essentially product liability claims with no physical injury, dressed up as false advertising claims, but without the false advertising.[7]  *See Boysen v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) (plaintiff expressly disclaimed any physical harm from the product, and failed to plead that it contained unsafe levels of arsenic or lead); *Herrington v. Johnson & Johnson Consumer*

---

[7] The only Ninth Circuit case Defendants cited as supposedly supporting its position was *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009).  It does not apply to this case.

*Cos.*, 2010 U.S. Dist. LEXIS 90505, at *13-14 (N.D. Cal. Sept. 1, 2010) (Plaintiff did not "plead that the amounts of the substances in Defendants' products have caused harm or create a credible or substantial risk of harm"); *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("The products … do not fail to comply with any federal standards."); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) ("[Plaintiff] does not allege that she would not have purchased lipstick, that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead.").

### B.    Plaintiff Adequately Alleges Legal Injury, Reliance, and Deception

#### 1.    Legal Injury

Defendants argue that Plaintiff's claims are facially implausible because "the law is against" Plaintiff and cites three food and drug cases that are neither controlling nor persuasive. (Def.'s Br. at 19).  As an initial matter, *Iqbal* and *Twombly* are of no help to Defendants.  "When there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.  "*Twombly* should not be read as effecting a sea change in the law of pleadings." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) *see also Langdon v. Credit Mgmt., LP,* 2010 U.S. Dist. LEXIS 16138,  at *9 (N.D. Cal. Feb. 24, 2010) ("In the court's view, these decisions did not alter pleading standards outside these and analogous situations.").

Defendants' reliance on *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011) is misplaced. First and foremost, Mason applied New Jersey law.  Second, in *Mason* the plaintiffs alleged that they purchased Diet Coke Plus because the term "Plus" falsely suggested that the product was "healthy" and "contained nutritional value," when it did not.  *Id.* at 700.  Here, unlike *Mason*, there are specific Sherman Law regulations that control the very nutrient content and health related claims made by Defendants on its tea products and website.  There are also FDA warning letters to other tea companies condemning the very same unlawful nutrient and health related claims that Defendants make on their tea products and on their website.

Rather than vaguely alleging that Defendants' products are not "healthy," Plaintiff describes in detail the ways in which Defendants' products are misbranded in violation of the

1   Sherman Law. (AC ¶¶ 44-130).   Further, Plaintiff alleges that it is unlawful to manufacture,

2   distribute, sell or possess misbranded food. (AC ¶¶ 16, 65, 81, 88, 100, 111, 130, 141, 142, 158,

3   189, 197, 199, 208, 240, 250, and 261). Finally, Plaintiff alleges that she based her decision to

4   purchase Defendants' products, in substantial part, on Defendants' unlawful and misleading

5   representations. (AC ¶¶ 63, 75, 79, 86, 98, 107, 110, 126, 127, 129, 151, 152, 153, 155, and 158).

6   Faced with these allegations under California law, *Mason* is inapposite.

7       *Polk v. KV Pharm. Co.*, 2011 U.S. Dist. LEXIS 144313 (D. Mo. Dec. 15, 2011) also does

8   not help Defendants. (Def.'s Br. at 17).   In *Polk*, the plaintiff alleged that a drug was

9   "adulterated," based on a consent decree between Defendants and the FDA. *Id.* at *7.  The court

10  in *Polk* distinguished other cases in which "Plaintiff specifically alleged misrepresentations of the

11  nature and quality of the product purchased . . . Plaintiff has not alleged the Medication was

12  anything other than what it has always purported to be."   *Id.* at *14.   The court found the

13  plaintiff's allegations insufficient to state a claim under Missouri's Merchandising Practices Act

14  ("MMPA").   *Id.* at *18.  Plaintiff's causes of action are not based on a consent decree between

15  Defendants and the FDA, or on the MMPA. Plaintiff plainly alleges misrepresentations of the

16  nature of the products she purchased.   Moreover, Plaintiff alleges specific violations of

17  California's Sherman Law.

18      Lacking any supporting case law, Defendants' counsel has merely recycled the "no

19  plausible legal injury" which this Court rejected in Hershey (Order at 11-12) and Judge Hamilton

20  previously rejected in *Ben & Jerry's*, 2011 WL 2111796, at *5 ("The injury alleged is that

21  [plaintiffs] were deceived, and paid money they would not otherwise have paid had they known

22  about the potassium carbonate in the cocoa.") and (ii) simply ignored controlling case law

23  concerning allegations of "loss of money or property" and "injury in fact" in labeling cases.  As

24  California's Supreme Court cautioned: " . . . labels matter.  The marketing industry is based on

25  the premise that labels matter, that consumers will choose one product over another similar

26  product based on its label and various tangible and intangible qualities they may come to

27  associate with a particular source . . ." *Kwikset*, 51 Cal. 4th at 328.

28      Plaintiff here did not receive what Defendants told her she was paying for.   Under

*Kwikset*, nothing more is required to allege "loss of money or property" and "injury in fact." *See also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011) ("California has created what amounts to a conclusive presumption that when Defendants put out tainted bait and a person sees it and bites, the Defendants have caused an injury."); *Chavez II,* 340 Fed. Appx. at 361 (allegation that plaintiff lost money as a result of Defendants' deception in that she did not receive what he paid for is sufficient to allege injury-in-fact).[8]

### 2.    Reliance and Deception

#### a.    Reliance

On the factual issue of "plausible reliance" Defendants' counsel again recycles the failed arguments from *Hershey* and *Ben & Jerry's*. But Plaintiff here alleges in detail that she relied on Defendants' Misbranded Food Products including the claims specifically discussed earlier in this brief. (*See e.g.,* 147-59 AC ¶¶147-59). At the pleading stage, nothing more is required. See *Hershey,* Order at 10-13; *Ben & Jerry's*, 2011 WL 2111796, at *12 (denying motion to dismiss where complaint alleged that the named plaintiffs relied on the representations on the label and would not have purchased the product if they had known the label was false). As Judge Hamilton held, "[i]n particular, the issues of reliance and materiality are too fact-dependent to be resolved on [a] 12(b)(6) motion." *Id.* at *32.

#### b.    Deception

Plaintiff has also adequately pleaded deception, but, like reliance, whether Plaintiff and class members have been deceived is a question of fact. Therefore, numerous courts, in cases similar to Plaintiff's, have denied motions to dismiss on this basis. *See Williams*, 552 F.3d at 938-39 (dealing with representations that Defendants' products were made with "fruit juice and other all natural ingredients"); *Ben & Jerry's*, 2011 WL 2111796, at *4 (alkalized cocoa in ice

---

[8] Courts have repeatedly held that misbranded and adulterated food and drugs have no economic value, and are legally worthless. *United States v. Gonzalez-Alvarez,* 277 F.3d 73, 78 (8th Cir. 2002) ("where a product [milk] cannot be sold lawfully it has a value of zero for the purpose of calculating loss"); *Steroid Hormone Product Cases,* 181 Cal. App. 4th at 157 (reasonable person would not purchase a product that could not be legally sold or possessed); *Thomas v. Imbrolio*, 2012 Cal. App. Unpub. LEXIS 3111, at *21-22 (Cal. Ct. App. 2nd Dist., April 25, 2012) . ("The jury simply determined the fair market value of the product was zero, perhaps in light of the testimony of class members who stated they would not have purchased *Avacor* had they known the truth about it. The court also concluded *Avacor* was worthless."). The parties may cite, and the Court may consider, unpublished state court decisions. *Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

cream and frozen yogurt labeled "all natural"); *Briseno v. Conagra Foods, Inc.*, No. 2:11-cv-05379 MMM-AGR, Slip. Op. at 21 (C.D. Cal. Nov. 23, 2011) (genetically modified organisms in Defendants' cooking oil labeled "100% natural"); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1071, 1079-80 (E.D. Cal. 2010) (high fructose corn syrup in beverages labeled "All Natural"); *Henderson v. Gruma Corp.*, 2011 WL 136188, at *11 (C.D. Cal. April 11, 2011 (trans fat in guacamole and bean dip labeled "All Natural"); *Linear Technology v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer.").

Regarding Plaintiff's Section 17200 unlawful business practices claims, Defendants know that lack of deception is no defense.  Defense counsel even authored a treatise in which he states that "[t]here are a number of theories that have been litigated and rejected as defenses to claims alleging 'unlawful' business practices . . . . That no one was actually deceived by the practice is not a defense to a section 17200 "unlawful" business practice claim. Stern, § 5.166, BUS. & PROF. C. § 17200 PRACTICE (The Rutter Group 2012).  *See also*, *Medrazo v. Honda of North Hollywood,* 2012 Cal. App. LEXIS 2316, at *21 (Cal. App. March 21, 2012) ("the Supreme Court also explained that an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory") (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 n.17 (2009)) ("There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application."); *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, at *25-26 (S.D. Cal. 2011); *Steroid Hormone*, 181 Cal. App. 4th 145 at 159.

**IV.    Plaintiff's Amended Complaint Complies With Rule 9(b)**

Rule 9(b) requires only that allegations of fraud be "specific enough to give Defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brooks v. ComUnity Lending, Inc.,* 2010 U.S. Dist. LEXIS 67116, at *27 (N.D. Cal. Jul. 6, 2010) *(quoting Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  Rule 9(b) "must be read in harmony with (Rule) 8's requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree*

1    *Stores, Inc.,* 2007 U.S. Dist. LEXIS 65979, at *5 (N.D. Cal. Aug. 29, 2007).  This court has

2    rejected the undue pleading burden Defendant seeks to require.  Hershey, Order at 12-13.

3         Defendants' brief belies any argument that Defendants are unable to defend against

4    Plaintiff's allegations.   Instead, Defendants' counsel once again recycles the failed Rule 9(b)

5    arguments from *Hershey* and *Ben & Jerry's*. As did plaintiffs in *Hershey* and *Ben & Jerry's*,

6    however, Plaintiff here has pled the "who, what, when, where, and how" of Defendants' alleged

7    deception. In fact, Plaintiffs' 46-page AC pleads far more detail than did plaintiffs in *Ben &*

8    *Jerry's.*

9         The "who" are Defendants Unilever North America, Inc., PepsiCo Inc. and Pepsi Lipton

10   Partnership(AC ¶¶ 2, 8 and 18-20); the "what" are the discrete types of unlawful and deceptive

11   claims by Defendants: (1) "nutrient content" claims (AC ¶¶53-65); (2) "antioxidant" nutrient

12   content claims (AC ¶¶ 66-7581); (3) nutritional value claims (AC ¶¶ 82-88); (4) "natural" claims

13   (AC ¶¶ 89-100); (5) failure to disclose presence of chemical preservatives, artificial colors and

14   artificial flavors (AC ¶¶ 101-111) and "health" claims (AC ¶¶ 112-130); he "when" is "since

15   2008 and throughout the Class Period." (AC ¶¶ first introductory paragraph, 148, 149, and 160);

16   the "where" is Defendants' package labels and product websites. (AC ¶¶ 3-8, 10, 16, 40-43, 51,

17   55, 66, 68, 83-84, 92, 95-96, 117, 120-21, 101-111, 188, 190, 197, 205-06, 214-15); the "how the

18   statements were misleading" is that: (1) Defendants violated the Sherman Law in specific ways,

19   on product, websites and on the labels of its products, as described above and in AC ¶¶ 3-8 and

20   53-130); (2) Plaintiff purchased Defendants' products reasonably relying, in substantial part, on

21   Defendants' misrepresentations; and (3) Plaintiff was thus deceived by Defendants' product

22   labels and product websites.[9] (AC ¶¶ 63, 75, 79, 86, 98, 107, 109-110, 126-27, 129, 151, 152,

23   153, 155, 158, 197).  This is all required. *Hershey, Order* at 12-13.

24        On allegations far less detailed than those here, courts have repeatedly refused to dismiss

25   under Rule 9(b).  *See, e.g., Williams*, 552 F.3d at 939 (reversing District Court; "the statement

26   _____

[9] *Sateriale v. R.J. Reynolds Tobacco Co.*, 2012 U.S. App. LEXIS 14394, at *33 (9th Cir. July 13, 2012), cited by
27   Defendants at p. 22, is unavailing.  Here, Plaintiff plainly alleges that she purchased the products that are the subject
     of the causes of action, and explains the causal connection between Defendants' misrepresentations and her economic
28   injuries.

that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily

be interpreted by consumers as a claim that all the ingredients in the product were natural, which

appears to be false"); *Vicuna,* 2012 WL 1497507, at *2 (J. Hamilton) (allegations that plaintiffs

were deceived by the designation "All Natural" on packages of potato products sufficient under

Rule 9(b)).

It is worth noting that Plaintiff need not plead with particularity her § 17200 unlawful

business practices claims. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 105-06 (9th Cir.

2003) (where fraud is not an essential element of a claim, only allegations of fraudulent conduct

must satisfy the heightened pleading requirements of Rule 9(b)); *Von Kaenel v. Skinnygirl*

*Cocktails, LLC*, No. 2:11-cv-07305, Dkt. No. 66, March 19, 2012 Order (C.D. Cal) (in an "all

natural" case "[f]raud is not an essential element of the [Plaintiff's FAL, UCL, and CLRA's]

causes of action. Thus, heightened pleading is not required and the allegations in the complaint

are sufficient.").  *See also*, *Shin v. BMW of N. Am.*, 2009 WL 2163509, at *4 (C.D. Cal. July 16,

2009) (holding Rule 9(b) heightened pleading requirements only apply to allegations that describe

fraudulent conduct.  Other elements of the plaintiff's UCL and CLRA claims are held to the

normal pleading standards).

**V.    Plaintiff Has Properly Pleaded Claims Under The UCL, FAL and CLRA**

**A.    The Statutory Provisions**

The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200,

prohibits three types of wrongful business practices: any (1) unlawful, (2) unfair, or (3) fraudulent

business practice or act. "[I]n essence, an action based on Cal. Bus. & Prof. Code §17200 to

redress an unlawful business practice 'borrows' violations of other laws and treats these

violations, when committed pursuant to a business activity, as unlawful practices independently

actionable under Bus. & Prof. Code §17200 and subject to the distinct remedies provided

thereunder." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515

(2002).  The violation of almost any federal, state, or local law may serve as the basis for a UCL

claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994).  The False Advertising Law

("FAL") prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof.

Code § 17500 "'Any violation of the false advertising law necessarily violates' the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)  (quoting *Comm. on Children's Television, Inc. v. General Foods Corp.,* 35 Cal. 3d 197, 210 (1983) California's Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Bus. & Prof. Code § 1750.

California's statutory law of unfair competition authorizes actions for injunctive relief by certain state and local officers and persons acting for the interests of themselves or the general public." *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057, 1061 (1994), *cert. denied,* 513 U.S. 1016, 130 L. Ed. 2d 493, 115 S. Ct. 577 (1994). California law "authorizes courts to make such orders as 'may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by such unfair competition.'" *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992) (quoting Cal. Bus. & Prof. Code § 17203).  Cal. Bus. & Prof. Code § 17500 contains a false advertising provision that prohibits dissemination of any statement concerning items for sale "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Actions brought pursuant to the UCL are generally examined under the "reasonable consumer" standard, whereby claimants must simply "show that 'members of the public are likely to be deceived.'" *Williams*, 552 F.3d at 938.

Defendants' argument that Plaintiff's UCL standard would impose a different standard than the FDCA is false. First, the UCL standard for misleading is less onerous than the federal standard which not only protects reasonable consumers but also, "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *U.S. v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951) As such, anything that violates the UCL standard would also violate the stricter FDCA standard (and its identical state food labeling standard). Moreover, this argument ignores the fact a product could be misbranded utilizing the identical state and federal labeling standard, and its sale to a consumer would then be illegal and violate the unlawful prong of the UCL without the issue of reliance or consumer reasonableness ever arising.

### B.    Defendants Cites Cases That Are Distinguishable

The three cases cited by Defendants are distinguishable. In *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009), the court held that alleged damages suffered after the purchase of an iPod device that might subject a user to a risk of hearing loss was too conjectural and hypothetical to withstand a motion to dismiss. The plaintiff in *Birdsong* pleaded a theoretical injury that may or may not happen in the distant future.  Plaintiff in this case, and members of the proposed class, have already suffered cognizable damages that may be easily measured:   the purchase price of Defendants' misbranded products, for which Plaintiff paid a premium.

Similarly distinguishable are the cases *In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) and *Whitson v. Bumbo*, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009).  In *In re Ferrero*, the plaintiff's UCL and FAL claims were based upon misleading internet advertising of the Defendants regarding Nutella products, yet the plaintiff failed to plead that the plaintiff ever viewed or relied upon the internet advertising.  *In re Ferrero,* 794 F. Supp. 2d at 1112.  In *Whitson v. Bumbo,* a case involving an allegedly defective baby seat, the plaintiff made no allegation that any child ever used the baby seat she purchased, that any child fell from the baby seat, or that plaintiff actually saw or relied upon any images showing babies sitting on elevated surfaces in Bumbo seats. *See Whitson,* 2009 U.S. Dist. LEXIS 32282, at *5. The serious pleading failures of *Whitson* have absolutely no bearing on Plaintiff's AC in this action.

### VI.    Plaintiff's Song-Beverly Magnuson-Moss Claims Are Valid

Plaintiff has alleged sufficient facts to maintain claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* and the Magnuson-Moss Warranty Act, 15 USC § 2301 *et seq.* Plaintiff alleges that Defendants, through its misbranded package labels, creates express warranties by making affirmations of fact, which are untrue, and promising falsely that its products comply with food label regulations under federal and California Law. (AC ¶¶ 242-252). Plaintiff also alleges that Defendants violated the Magnuson-Moss Act by making express warranties regarding nutrient and health content claims that are untrue. (AC ¶¶ 253-262).

The Song-Beverly Consumer Warranty Act provides a right of action where the Defendants have created express warranties as defined by Cal. Civ. Code § 1791.2. Plaintiff has

1     provided an extensive factual basis demonstrating that Defendants' labels created express

2     warranties, and Defendants violated those warranties.  The AC alleges that the food products at

3     issue are consumables. Further, the AC alleges that Defendants created express warranties by

4     making affirmations of fact about the nature and quality of its food products. Therefore, under the

5     provisions of Cal. Civ. Code § 1793.35 which unlike other sections of the Act apply to

6     consumables, Plaintiff's claims fall within the provisions of the Song-Beverly Act.  To establish

7     violations of § 1793.35, it is be necessary to establish that the factual circumstances of the food

8     purchases made by Plaintiff give rise to liability. However, success or failure on the merits is not

9     at issue at this stage of the litigation.

10         The Magnuson-Moss Warranty Act provides that a consumer may assert a civil cause of

11    action to enforce the terms of an implied or express warranty. Breach of an obligation imposed by

12    state law will support a claim under the Magnuson-Moss Act. *In re Sony Grand Wega*, 758 F.

13    Supp. 2d 1077, 1101 (S.D. Cal. 2010) ("The Magnuson-Moss Act provides a federal cause of

14    action for state law express and implied warranty claims."). *There is no 100 plaintiff requirement*

15    *due to diversity jurisdiction.  See Chavis v. Fidelity Warranty Services, Inc.,* 415 F.Supp.2d 620,

16    622-24 (D.S.C. 2006). (courts have subject matter jurisdiction over Magnuson-Moss Act claims if

17    the court has jurisdiction under CAFA- even if the allegations do not meet the Magnuson-Moss

18    Act jurisdictional requirements under Section 2310(d)(1)(B)).

19         Defendants argue that a Magnuson-Moss claim cannot be sustained when the making or

20    content of the written warranty is governed by federal law.  Defendants' argument fails because

21    the written warranties in this case are governed by both federal and California law. California law

22    provides substantive rights and remedies to Plaintiff, and AC seeks relief based on California law.

23    **VII.     Plaintiff Has Properly Pleaded an Unjust Enrichment Claim**

24         Rejecting Defendant's argument this Court has recognized a cause of action for unjust

25    enrichment. *Hershey*, Order at 14; *AFCM, Inc. v. Elite Global Farming and Logistics, Inc.*, 2012

26    WL 1309168, at *6 (N.D. Cal. 2012). Recently, in *Vicuna v. Alexia Foods, Inc.,* Judge Hamilton

27    allowed an unjust enrichment claim to go forward on the grounds that it was essentially a claim

28    for restitution based on quasi-contract.  In reaching this decision, Judge Hamilton relied upon

1    *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).  In *McBride*, the court stated a plaintiff

2    may choose not to sue in tort and instead seek restitution on a quasi-contract theory. *Id.* at 388.

3    Plaintiff in this case has alleged the elements of the claim.  (AC ¶¶ 238-241)  Plaintiff in this case

4    has alleged that Defendants were enriched, *i.e.*, received a benefit, by means of unlawful,

5    fraudulent and misleading labeling. (AC ¶ 239).[10]

6    **VIII.   The Court Should Not Strike Any Averments in Plaintiff's Amended Complaint**

7          Defendants assert that the Court should strike various statements in the Amended

8    Complaint that Defendants characterize as "irrelevant." (Def.'s Br. at 8).  First and foremost,

9    Plaintiff purchased many of Defendants' Misbranded Food Products since 2008 but only gave a

10   non-exhaustive list of 10 specific products, (AC ¶ 149), and pleaded, "Thus the violations and

11   misrepresentations are similar across product labels and product lines." (AC ¶ 16).  Contrary to

12   this argument, Plaintiff in fact does have standing to represent a class even on products she

13   herself did not purchase, so long as there is sufficient similarity between the products purchased

14   and products not purchased.  *See, e.g., Ben & Jerry's*, 2011 WL 2111796, at *5.  Here there is a

15   sufficient similarity between all of Defendants' tea products.  Second, Plaintiff alleged that she

16   saw the claims at issue including those on websites and relied upon them. (*See e.g.*, AC ¶150-

17   159).  Furthermore, as the court noted in *Dryer's Grand Ice Cream*, "any concerns… about

18   material differences are better addressed at the class certification stage rather than at the 12(b)(6)

19   stage." *Dryer's Grand Ice Cream*, 2012 U.S. Dist. LEXIS 101371, at *37. This court adopted the

20   same approach in *Hershey*. *Hershey* Order at 15.

21                                    **CONCLUSION**

22          For all the foregoing reasons, Plaintiff respectfully requests that the Court deny

23   Defendants' motion.

24

25

26

27   ──────────────
     [10] Plaintiff may plead a restitution claim in the alternative, pursuant to Fed. R. Civ. P. 8(e)(2), even where such a
     claim is inconsistent and incompatible with a related claim for breach of contract or a claim in tort. *Vicuna*, 2012

28   WL 1497507, at *3

1    Dated:  November 13, 2012.

2                                           Respectfully submitted,

3

4                                            /s/ *Ben F. Pierce Gore*
                                            Ben F. Pierce Gore (SBN 128515)
5                                           PRATT & ASSOCIATES
                                            1871 The Alameda, Suite 425
6                                           San Jose, CA 95126
                                            (408) 429-6506
7                                           pgore@prattattorneys.com

8                          **CERTIFICATE OF SERVICE**

9           I hereby certify that I have this day filed and served through the Court's ECF system a

10   true and correct copy of the foregoing.

11                                           /s/ *Ben F. Pierce Gore*
                                            Ben F. Pierce Gore (SBN 128515)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28