GIBSON, DUNN & CRUTCHER LLP
DANIEL W. NELSON, appearance *pro hac vice*
dnelson@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:    202.955.8500
Facsimile:    202.467.0539

TIMOTHY LOOSE, SBN 241037
tloose@gibsondunn.com
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone:    213.229.7000
Facsimile:    213.229.6746

Attorneys for Defendant
PEPSICO, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY MAXWELL, individually, and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>UNILEVER UNITED STATES, INC., PEPSICO, INC., and PEPSI LIPTON TEA PARTNERSHIP,<br><br>             Defendants. | CASE NO. 5:12-cv-01736 EJD<br><br>**DEFENDANT PEPSICO, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Hearing Date:    December 7, 2012<br>Hearing Time:   9 a.m.<br>Location:           Courtroom 4<br>Judge:               Hon. Edward J. Davila<br><br>Action Filed:     April 6, 2012<br>FAC Filed:        July 30, 2012<br><br>Trial Date:        None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF BASED ON PEPSI CARBONATED BEVERAGES ........................................................................................ 2

    A. Plaintiff Fails To Adequately Plead Standing To Sue Regarding Dissimilar Products She Never Purchased And Does Not Even Identify ...................................... 2

    B. Plaintiff's Threadbare, Conclusory Pleading Fails To Set Forth Plausible Factual Allegations That The Pepsi She Allegedly Purchased Was Misbranded ...................... 4

    C. Plaintiff Fails To Set Forth Any Facts Supporting Her Claim That She Was Misled By Pepsi's Label, Much Less The Particularized Allegations Required Under Rule 9(b) ............................................................................................................. 8

    D. Plaintiff's Warranty Claims Are Inapplicable To Pepsi Carbonated Beverages ........ 11

        1. Plaintiff's Federal Warranty Claim Fails Because An Ingredient Statement Is Not A Written Warranty .................................................................. 11

        2. Plaintiff's State Warranty Claim Fails Because It Alleges No Written Warranty, And The Song-Beverly Act Expressly Exempts Consumables Such As Soft Drinks ............................................................................................. 12

    E. Unjust Enrichment Is Not A Valid Cause Of Action Under California Law .............. 12

III. PEPSICO IS NOT A PROPER DEFENDANT FOR CLAIMS RELATED TO THE PEPSI-LIPTON PARTNERSHIP'S TEA BEVERAGES ................................................... 13

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................................................... 7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) ............ 3, 4, 11

*Atkinson v. Elk Corp.*,
   109 Cal. App. 4th 739 (2003) ................................................................................................... 12

*Baca v. Crown*,
   No. CV 09-1283-PHX-SRB, 2010 U.S. Dist. LEXIS 84724 (D. Ariz. Jan. 8,
   2010) ........................................................................................................................................... 6

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634 (2006) .............................................................. 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................................... 7

*Bernardi v. JPMorgan Chase Bank, N.A.*,
   No. 5:11-cv-04212 EJD, 2012 U.S. Dist. LEXIS 85666 (N.D. Cal. June 20,
   2012) ......................................................................................................................................... 13

*Brazill v. California Northstate College Of Pharmacy, LLC*,
   No. CIV. 2:12–1218 WBS GGH, 2012 U.S. Dist. LEXIS 152935 (E.D. Cal. Oct.
   24, 2012) .................................................................................................................................... 6

*Briseño v. ConAgra Foods, Inc.*,
   No. CV 11-05379-MMM (AGRx), 2011 U.S. Dist. LEXIS 154750 (C.D. Cal.
   Nov. 23, 2011) ........................................................................................................................... 9

*Carrea v. Dreyer's Grand Ice Cream*,
   C 10-02044 JSW, 2011 U.S. Dist. LEXIS 6371 ((N.D. Cal. Jan. 10, 2011) .............................. 2

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................................. 13

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*,
   42 F.3d 1541 (9th Cir. 1994) .................................................................................................. 8, 9

*Donahue v. Apple, Inc.*,
   No. 11-cv-05337 RMW, 2012 U.S. Dist. LEXIS 65860 (N.D. Cal. May 10,
   2012) ......................................................................................................................................... 13

*Dvora v. Gen. Mills, Inc.*,
   No. CV 11-1074-GW (PLAx), 2011 U.S. Dist. LEXIS 55513 (C.D. Cal.
   May 16, 2011) .......................................................................................................................... 10

*Dysthe v. Basic Research LLC*,
   No. CV 09-8013 AG (SSx), 2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13,
   2011) ........................................................................................................................................... 3

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ................................................................................................. 10

*Emery v. VISA Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) .................................................................................................... 15

*Fla. Evergreen Foliage v. E.I. Dupont De Nemours and Co.*,
    336 F. Supp. 2d 1239 (S.D. Fla. 2004) .................................................................................. 7

*Gandrup v. GMAC Mortgage, LLC*,
    No. 5:11-cv-00659 EJD, 2012 U.S. Dist. LEXIS 128625 (N.D. Cal. Sept. 10,
    2012) ................................................................................................................................ 12

*Hairston v. South Beach Bev. Co.*,
    No. 12-cv-1429 JFW (DTBx), 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18,
    2012) ................................................................................................................................ 11

*Johns v. Bayer Corp.*,
    No. 09-cv-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9,
    2010 ................................................................................................................................... 2

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................................ 8, 9

*Khasin v. Hershey Co.*,
    No. 5:12-CV-01862 EJD, 2012 U.S. Dist. LEXIS 161300 (N.D. Cal. Nov. 9,
    2012) ..................................................................................................................... 3, 8, 9, 12

*Knight v. Std. Ins. Co.*,
    No. CIV. 07-1691 WBS EFB, 2008 U.S. Dist. LEXIS 8742 (E.D. Cal. Feb. 6,
    2008) .................................................................................................................................. 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................................... 13

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ...................................................................................................... 10

*Lansmont Corp. v. SPX Corp.*,
    No. 5:10-cv-05860 EJD (HRL), 2011 U.S. Dist. LEXIS 65611 (N.D. Cal.
    June 20, 2011) .................................................................................................................. 13

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .............................................................................................. 6

*Littlehale v. The Hain Celestial Group, Inc.*,
    No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530 (N.D. Cal. July 2, 2012) ................ 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) .................................................. 4

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779, 131 Cal. Rptr. 2d 347 (2003) ...................................................... 12

*Myers-Armstrong v. Actavis Totowa, LLC*,
    382 F. App'x 545 (9th Cir. 2010) ..................................................................................... 13

*Nichols v. Greenpoint Mortg. Funding, Inc.*,
    No. SA CV 08-750 DOC (MLGx), 2008 U.S. Dist. LEXIS 87644 (C.D. Cal.
    Aug. 19, 2008) .................................................................................................................. 15

*PCO, Inc. v. Christiansen, Miller, Fink, Jacobs, Glaser & Weil LLP*,
    150 Cal. App. 4th 384 (2007) ........................................................................................... 15

*Perfect 10, Inc. v. VISA Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................................ 15

*Schneider v. California Dep't of Corrections*,
    151 F.3d 1194 (9th Cir. 1998) ........................................................................................ 3, 6

*Smith v. Ford Motor Co.*,
    462 F. App'x 660 (9th Cir. 2011) ............................................................................................ 12

*Tait v. BSH Home Appliances Corp.*,
    No. SACV 10-711 DOC (ANx), 2011 U.S. Dist. LEXIS 54456 (C.D. Cal. May
    12, 2011) ................................................................................................................................ 13

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) .................................................................................................... 7

*Vicuña v. Alexia Foods, Inc.*,
    No. C 11-6119 PJH, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ....................... 10

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................................................. 10

*Williamson v. Apple, Inc.*,
    No. 5:11-cv-00377 EJD, 2012 U.S. Dist. LEXIS 125368 (N.D. Cal. Sept. 4,
    2012) ...................................................................................................................................... 12

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................................................... 9

**Statutes**

Cal. Civ. Code § 1791(d) .............................................................................................................. 12

Cal. Civ. Code § 1791.2(a) ............................................................................................................ 12

Cal. Civ. Code § 1794(a) ............................................................................................................... 12

**Regulations**

21 C.F.R. § 101.22 .......................................................................................................................... 4

21 C.F.R. §§ 172.105–172.190 ....................................................................................................... 5

21 C.F.R. § 172.515 .................................................................................................................... 5, 7

21 C.F.R. § 182.60 ...................................................................................................................... 5, 7

**Other Authorities**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1297 (1990) ..................................... 8

U.S. Food and Drug Administration, Food Additive Status List,
    http://www.fda.gov/Food/FoodIngredientsPackaging/FoodAdditives/FoodAdditi
    veListings/ucm091048.htm ..................................................................................................... 5

# I. INTRODUCTION

Defendant PepsiCo, Inc. ("Pepsi") filed a Motion to Dismiss the Amended Complaint ("Complaint" or "FAC") explaining in detail why Plaintiff's vague, cursory allegations concerning Pepsi's carbonated beverages must be dismissed. Plaintiff's Opposition ("Opposition" or "Opp.") largely ignores the arguments concerning Pepsi's carbonated beverages, essentially conceding that the allegations pled in the Complaint are insufficient to state a claim against Pepsi based on its carbonated beverages.

Instead, Plaintiff's Opposition goes to great lengths to argue why she has stated a claim related to "nutrient and antioxidant content," "all natural," and "health" claims—none of which has any application whatsoever to Pepsi's carbonated beverages. Indeed, the summary of Pepsi's allegedly "unlawful conduct" set out in the Factual Allegations section of Plaintiff's Opposition demonstrates the absence of sufficient factual allegations regarding carbonated beverages: the six bullet points on page four all refer to alleged labeling infractions for tea products and Plaintiff's related antioxidant, "good source," "all natural," "health," and nutritional claims—none of which regards Pepsi's carbonated beverages. Similarly, Plaintiff asserts that she was misled and injured in this case because she "desired to buy healthy food products" (Opp. at 10), but she never connects this claimed harm to her alleged purchase of Pepsi cola or any other carbonated beverage. Plaintiff cannot bootstrap assertions made about other products in order to manufacture a claim against Pepsi's carbonated soft drinks. Nor can she support her claims against Pepsi's carbonated beverages with references to statements that were made on Lipton's website or that are made on Lipton tea products.

Once Plaintiff's complaint is stripped of the references to other products, all that remains with respect to Pepsi's carbonated beverages are two vague references regarding Plaintiff's alleged experience with a can of Pepsi cola at some unknown point in time (or perhaps a bottle or fountain drink—the Complaint does not say which). As explained in Pepsi's opening brief, such threadbare assertions do not suffice to state a claim under Federal Rule of Civil Procedure 8(a), much less to meet the stringent pleading requirements of Rule 9(b). Accordingly, Plaintiff's claims against Pepsi based on carbonated beverages must be dismissed.

With respect to the Pepsi-Lipton Partnership's tea products, Plaintiff fails to rebut the fact

that: (1) her Complaint contained no allegations linking Pepsi to the *labeling* of the tea products; (2) the Complaint does not adequately allege that Pepsi is a "joint venturer"; and (3) vicarious liability may not give rise to liability for Plaintiff's UCL claims. Thus, Plaintiff's claims against Pepsi based on the tea products likewise must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF BASED ON PEPSI CARBONATED BEVERAGES

Of the more than 1,400 lines in the FAC, less than 10 are specifically directed to discussion of Plaintiff's claims with respect to the labeling of Pepsi; the remainder of the FAC is devoted to discussion of health, nutrient content, antioxidant, and "all natural" claims that have nothing to do with Pepsi or any Pepsi carbonated beverages. Review of these scant, cursory allegations as to Pepsi demonstrates that Plaintiff has failed to adequately allege even the most basic elements of her claims.

### A. Plaintiff Fails To Adequately Plead Standing To Sue Regarding Dissimilar Products She Never Purchased And Does Not Even Identify

Despite purporting to assert claims against Pepsi for "any carbonated beverage manufactured, distributed, or bottled under the authority of the Defendants," (FAC at 1), the most detail Plaintiff has alleged with respect to her purchase of such products is that she "bought . . . Pepsi carbonated beverages such as Pepsi." (FAC ¶ 149.)[1] But Plaintiff "cannot expand the scope of h[er] claims to include a product [s]he did not purchase" because Article III and "[t]he statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations." *Johns v. Bayer Corp.*, No. 09-cv-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010); *Carrea v. Dreyer's Grand Ice Cream*, C 10-02044 JSW, 2011 U.S. Dist. LEXIS 6371, at *7−8 (N.D. Cal. Jan. 10, 2011) (no standing to pursue UCL, FAL, and CLRA claims as to products plaintiff never purchased), *aff'd on other grounds*, 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5, 2012).[2]

---

[1] While Plaintiff opaquely alleges she "purchased Defendants' Misbranded Food Products in California during" the class period, she never specifies which, *if any*, of Pepsi's carbonated beverages she purchased in California during that time. (*Id.* ¶ 17; *see also* ¶ 149.) Instead, she relies on implications and unconnected allegations.

[2] While Plaintiff suggests this Court should defer considering this issue to the class certification stage because authorities are split, she necessarily concedes that some courts, faced with factually supported allegations regarding the products plaintiffs seek to challenge, have indeed resolved the

Plaintiff contends that she has standing to sue for products she never purchased provided there is "sufficient similarity between the products purchased and products not purchased." (Opp. at 5 [citing, e.g., *Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, 2012 U.S. Dist. LEXIS 161300 (N.D. Cal. Nov. 9, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)].) To this end, Plaintiff argues that she has "standing to represent a class for products she herself purchased and a group of similarly labeled products that she did not purchase" (Opp. at iv), purportedly because she alleged (without factual support) that "violations and misrepresentations are similar across product labels and product lines" (Opp. at 5 [quoting FAC ¶ 16]), and because "the challenged claims on the labels of the two groups of products are identical in all material aspects" (Opp. at vi).

This is simply not true. Once again, Plaintiff's Complaint is devoid of factual allegations to support her argument. Her Opposition makes the bald assertion that "there is a sufficient similarity between all of Pepsico's products" (Opp. at 5), but the FAC contains no factual allegations regarding any similarity of product contents or labels between the Pepsi allegedly purchased by Plaintiff and any of Pepsi's other carbonated beverages. Similarly, contrary to her assertion that the alleged violations and misrepresentations are "similar across product labels and product lines" (*id.*), paragraph 16 of the FAC—her sole factual allegation on this point—*only* discusses the alleged similarity of nutrient content and antioxidant claims on Defendants' products, and those claims *only* pertain to the Lipton *tea products*. Thus, Plaintiff's unsupported assertion of similarity between product lines fails to allege any similarity between the Pepsi allegedly purchased by Plaintiff and other Pepsi *carbonated beverages* not purchased by Plaintiff.[3]

Moreover, unlike the plaintiffs in *Khasin* and *Astiana*, Plaintiff has alleged literally *no facts* regarding the Pepsi carbonated beverages she did not purchase.[4] Indeed, she does not even indicate

---

question as a matter of standing. *See, e.g., id.*; *Dysthe v. Basic Research LLC*, No. CV 09-8013 AG (SSx), 2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13, 2011). (*See also* Opp. at 5.)

[3] Of course, Plaintiff may not use the Opposition to supply the FAC's missing factual allegations. *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

[4] In *Khasin*, plaintiff's claims were directed to identified lines of Hershey chocolate, and alleged specific facts about at least four specific products at issue. Complaint, No. 5:12-CV-01862 EJD, Docket No. 27. And in *Astiana*, the plaintiff asserted claims based on ice creams in the

which of the dozens of other carbonated soft drinks in the many Pepsi carbonated beverage lines she seeks to challenge, despite the fact that these beverages vary considerably in product formula, primary ingredients, and product line.[5]  Thus, through inadequate and what appears to be deliberately vague pleading, Plaintiff has rendered Defendant and the Court wholly unable to meaningfully assess the similarity of the challenged products or their labels, or even to understand the breadth of the suit she seeks to bring.  Plaintiff's artful pleading should not force Pepsi to bear the financial and procedural burden of proceeding to the class certification stage to secure dismissal of claims as to unidentified products Plaintiff never purchased.  This is simply not enough to meet Plaintiff's burden to adequately allege standing.  *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (allocating burden to prove standing to those invoking federal jurisdiction).

**B.    Plaintiff's Threadbare, Conclusory Pleading Fails To Set Forth Plausible Factual Allegations That The Pepsi She Allegedly Purchased Was Misbranded**

Plaintiff's entire misbranding claim directed to Pepsi's carbonated beverages is premised on her unsupported assertion that the beverages are "misbranded" because they "contain phosphoric acid which is used in [the beverages] as an artificial flavor and/or as an acidulant which is a type of chemical preservative designed to retard spoilage," and "their labels fail to . . . include[e] a parenthetical such as (preservative) or (to retard spoilage) or (artificial flavor) after the term phosphoric acid in the ingredient statement."  (FAC ¶ 105.)  However, as Pepsi explained, Plaintiff does not allege any facts explaining the artificial flavor that phosphoric acid allegedly imparts or how it is that phosphoric acid is sometimes used as a "flavor," but at other times a "preservative," and still at other times as both an artificial flavor and a chemical preservative *within the meaning of the FDA's regulations*.  (Mot. at 7.)  All of these points are simply ignored by Plaintiff's Opposition.

Plaintiff instead cites to various FDA regulation sections which *generally* require parenthetical labeling of chemical preservatives and artificial flavors.  (FAC ¶ 103 [citing 21 C.F.R. § 101.22]; Opp. at 6–7 [same]).  But she does not identify any FDA regulations classifying

---

Dreyer's/Edy's and Haagen-Dazs product lines, which the court had occasion to know comprised "largely the same ingredients[.]"  2012 U.S. Dist. LEXIS 101371, at *38.

[5]    Some contain fruit juice concentrate, and the dozens of beverages vary in the sweeteners, specifically labeled preservatives, and other ingredients used to produce each unique beverage.

phosphoric acid as a flavoring agent or a chemical preservative, or otherwise expressly requiring that it be labeled with parenthetical descriptors like those Plaintiff claims are required.[6] Indeed, neither the FAC nor the Opposition identifies even one regulation or alleged fact supporting Plaintiff's bare assertion that phosphoric acid is used as an artificial flavor or preservative in Pepsi within the FDA's intended meanings of those terms. (*See* FAC ¶ 103–105; *see also* Mot. at 7–8.)

Notably, though Plaintiff attached *twelve* additional FDA warning letters discussing various preservatives and flavors as exhibits to her Opposition brief, (see Opp. at Ex. B), she has been unable to point to a *single* warning letter requiring a manufacturer to label phosphoric acid with a parenthetical descriptor, despite the fact that beverage manufacturers nationwide have included phosphoric acid in carbonated and noncarbonated beverages for decades. As with the absence of any FDA regulations categorizing phosphoric acid as a preservative or chemical, the absence of any such warning letters is no coincidence—the FDA's web archives contain no enforcement or warning letters requiring parenthetical labeling of phosphoric acid.

Plaintiff's citation to FDA letters discussing food additives not at issue here cannot save her claim; these letters illustrate that the FDA enforces its regulation requiring parenthetical labeling of chemical preservatives or artificial flavors, but they do not support the FAC's bald assertion that phosphoric acid is used as a chemical preservative and/or an artificial flavor in Pepsi within the meaning of the FDA's regulations. In short, all the FAC and Plaintiff's exhibits offer are (1) general support for the notion that chemical preservatives and artificial flavors within the meaning of the FDA's regulations must be labeled parenthetically (a point Pepsi does not contest), and (2) Plaintiff's

---

[6] This is because no such regulations exist. The FDA's food labeling regulations *nowhere* refer to phosphoric acid as a "flavor" or "preservative." They also do not identify "acidulants" as artificial flavors or preservatives. And phosphoric acid does not appear on FDA's lists of "[s]ynthetic flavoring substances" for use in food, 21 C.F.R. §§ 172.515, 182.60, or its list of "[f]ood preservatives." 21 C.F.R. §§ 172.105–172.190. Nor does the Federal Register contain any references to phosphoric acid as a flavoring or a preservative. Moreover, the FDA's Food Additive Status List, which identifies food additives governed by the food regulations in Title 21 and labels their "[k]ind, effect or use," does *not* designate phosphoric acid as a chemical preservative. *See* U.S. Food and Drug Administration, Food Additive Status List, http://www.fda.gov/Food/FoodIngredientsPackaging/FoodAdditives/FoodAdditiveListings/ucm091048.htm (designating phosphoric acid as a "MISC" or "[m]iscellaneous" additive, not a chemical preservative, stabilizer, flavoring agent, or any other type of additive).

unsupported assertions regarding the function of phosphoric acid in Pepsi (which lack any factual enhancement in the FAC and which Pepsi disputes). This is not enough to survive dismissal.[7]

In a last ditch effort to argue "facts" to save her labeling claims, Plaintiff requests that the Court take judicial notice of statements made on Pepsi's consumer beverage facts web site regarding phosphoric acid. (Opp. at 7 & n.2.) As an initial matter, this material should not be considered in deciding Pepsi's motion. The Ninth Circuit has made clear that "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider*, 151 F.3d at 1197 n.1. The web site was never submitted with, referenced in, or relied upon in any way by, the FAC, so it was not incorporated by reference or necessary to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Indeed, another court in this Circuit has held that "no new allegations may be added [to the FAC] by way of requests for judicial notice[.]" *Baca v. Crown*, No. CV 09-1283-PHX-SRB, 2010 U.S. Dist. LEXIS 84724, at *8 (D. Ariz. Jan. 8, 2010).

Moreover, the proffered web site is not properly subject to judicial notice as a public record. *Brazill v. California Northstate College Of Pharmacy, LLC*, No. CIV. 2:12–1218 WBS GGH, 2012 U.S. Dist. LEXIS 152935, at *12–13 n.3 (E.D. Cal. Oct. 24, 2012) ("Webpages belonging to private corporations 'describing their own business, generally are not the sorts of 'sources[]' . . . that our judicial notice rule contemplates.'"); *Knight v. Std. Ins. Co.*, No. CIV. 07-1691 WBS EFB, 2008 U.S. Dist. LEXIS 8742, at *6–7, n.2 (E.D. Cal. Feb. 6, 2008) (noting that relying upon judicial notice of a party's marketing web page in deciding a motion to dismiss "poses heightened concerns because

---

[7] Plaintiff *still* fails to clarify in her Opposition brief whether her misbranding claim premised on citric acid is also directed at Pepsi carbonated beverages, or whether that claim is solely directed to the tea beverages under the Pepsi-Lipton Partnership. It appears that she may cabin her citric acid claims to the Pepsi-Lipton Partnership tea beverages. (*See* Mot. at 7–8 n.1; Opp. at 8–9 [discussing the citric acid "used in the Lipton products at issue here"].) To the extent Plaintiff also claims that her citric acid claims encompass Pepsi carbonated beverages, they are clearly insufficient to survive dismissal: the FAC contains no factual allegations supporting the bald claim that citric acid is used as a preservative or flavor in Pepsi within the meaning of FDA's regulations. Moreover, Plaintiff has identified no FDA regulations defining citric acid as a chemical preservative or flavor. The single enforcement letter Plaintiff cites—which she may not use to supplement her inadequate FAC—deals with the use of citric acid in a fruit cup, Opp. at 9 (Pineapple Bites), and Plaintiff has not alleged that citric acid is used for the same purpose on fruit pieces as it is used in Pepsi carbonated beverages.

1  anyone can say anything on a webpage, and the posting of a 'fact' on a webpage does not necessarily
2  make it true"); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d Cir. 2007) ("[Because] a
3  company's website is a marketing tool . . . courts should be wary of finding judicially noticeable facts
4  amongst all the fluff [on a webpage].").[8] Pepsi's beverage facts web site is not designed to use the
5  FDA's terms of art to describe in precise detail how certain ingredients function in each and every
6  one of the many bottled beverages listed under the seven beverage categories included on PepsiCo's
7  beverage facts site.  As discussed above (*supra* n.6), the FDA's food labeling regulations nowhere
8  refer to phosphoric acid as a "flavor" or "preservative."  And phosphoric acid does not appear on
9  FDA's lists of "[s]ynthetic flavoring substances" for use in food, 21 C.F.R. §§ 172.515, 182.60, or its
10 list of "[f]ood preservatives."  Thus, even if considered, Pepsi's website reference to "some soft
11 drinks" is not the type of statement that can support arguments related to compliance with FDA
12 labeling requirements—particularly here, where Plaintiff has failed to plead facts supporting her
13 claims about Pepsi's carbonated beverages.

14       Because Plaintiff has failed to set forth any factual allegations or regulatory provisions
15 supporting her bare, conclusory claim that phosphoric acid is used in Pepsi as a chemical preservative
16 or an artificial flavor within the meaning the FDA ascribes to those terms, her misbranding claim
17 must fail.  Contrary to Plaintiff's argument, unsupported conclusions about the function of
18 phosphoric acid in Pepsi are not "well-pleaded factual allegations" that satisfy Rule 8. (*See* Opp. at
19 8.) "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further
20 factual enhancement'" like those offered here cannot survive dismissal under the *Twombly/Iqbal*
21 pleading standard requiring plausible factual support.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct.
22 1937, 173 L. Ed. 2d 868, 874 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.
23 Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also id.* at 680–81 (allegations that General Ashcroft "was
24 the 'principal architect' of [an] invidious policy" of discrimination amounted to nothing more than a

---

[8] Furthermore, Plaintiff's citation to *Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 336 F. Supp. 2d 1239 (S.D. Fla. 2004), Opp. at 7, n.2, is inapposite and unpersuasive.  In that case, the court took judicial notice of the hardly disputable fact that a certain person was defendant's former CEO, which—unlike this case—plaintiff had *pleaded in the complaint*. *Id.* at 1262 n.21.

"formulaic recitation of the elements" of the cause of action not entitled to the presumption of truth).

### C. Plaintiff Fails To Set Forth Any Facts Supporting Her Claim That She Was Misled By Pepsi's Label, Much Less The Particularized Allegations Required Under Rule 9(b)

Plaintiff attempts to minimize her burden to plead with particularity as required under Federal Rule of Civil Procedure 9(b), arguing that her bare, unsupported allegations that she purchased a Pepsi beverage at some unidentified point, at some undisclosed location, suffice. (Opp. at 18–21.) She apparently conflates the burden ordinary plaintiffs bear under Rule 8 with the more stringent burden she bears under Rule 9(b). As the Ninth Circuit has observed, "Rule 9(b) clearly imposes an *additional* obligation on plaintiffs: the statement of the claim must also aver with particularity the circumstances constituting the fraud." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1547 (9th Cir. 1994) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1297, at 615 (1990)). This is because "Rule 9(b) would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is *already required* by Rule 8(a)." *Id.* (emphasis added).[9] Rather, Rule 9(b)'s rigorous bar is meant to keep plaintiffs from using unparticularized claims to launch discovery fishing expeditions, to protect defendants' reputations, and "to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *cf. Khasin*, 2012 U.S. Dist. LEXIS 161300, at *22 ("averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct").

Plaintiff claims that her allegations with respect to Pepsi are parallel to those this Court found sufficed in *Khasin*. However, in that case, the plaintiff had particularly alleged seven specific statements at issue, where they could be found, the fact that the product had been purchased "since 2008 and throughout the Class Period," and the fact that Plaintiff had purchased the products at issue in California. *Khasin*, 2012 U.S. Dist. LEXIS 161300, at *22; *Khasin*, Complaint, No. 5:12-CV-01862 EJD, Docket No. 27, at ¶ 202.

---

[9] And of course, where, as here, Plaintiff's claims allege a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim . . ., the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . *as a whole* must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125 (emphasis added).

1    Here, by contrast, all Plaintiff alleges with respect to Pepsi's labels and reliance is that she
2    "bought . . . Pepsi carbonated beverages such as Pepsi," she "saw the Defendants' label
3    representations and relied on them in the reasonable expectation that such representations were true,"
4    and she "based her purchasing decisions in part on beliefs that these products did not contain
5    chemical preservatives or artificial ingredients." (FAC ¶ 107–108.) Contrary to assertions in her
6    Opposition, Opp. at 20, Plaintiff does not even clearly allege that Pepsi was one of the products she
7    purchased within the class period or within California, and she certainly does not allege any facts
8    with respect to whether the labels on Pepsi or any other Pepsi carbonated beverages remained the
9    same throughout the class period. The only labels she does identify do not pertain to Pepsi, but to
10   Lipton Tea Products. This is not enough to meet the standards set forth by the Ninth Circuit in
11   *Kearns* and it does not even meet the minimum bar this court identified in *Khasin*. *See, e.g.*, *Kearns*,
12   567 F.3d at 1125–26 (failure to allege *when* plaintiff saw the representations failed to meet Rule
13   9(b)); *Khasin*, 2012 U.S. Dist. LEXIS 161300, at *22; *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d
14   1117, 1124 (C.D. Cal. 2010) (an allegation that a plaintiff purchased a product "repeatedly," yet
15   which "does not allege with any greater specificity" the dates of purchase or the "retailer or retailers"
16   where the purchases were made, fails to provide requisite specificity); *Briseño v. ConAgra Foods,*
17   *Inc.*, No. CV 11-05379-MMM (AGRx), 2011 U.S. Dist. LEXIS 154750, at *37–38 (C.D. Cal. Nov.
18   23, 2011) (failure to "allege . . . whether the statements remained the same throughout the class
19   period, or, if they did not, on which label(s) . . . or statement(s) [plaintiff] relied" does not satisfy
20   Rule 9(b)).
21   In addition, "a plaintiff must set forth *more* than the neutral facts necessary to identify the
22   transaction. [She] must set forth . . . an explanation as to why the statement or omission complained
23   of was false or misleading." *GlenFed, Inc.*, 42 F.3d at 1548 (emphasis in original). Although
24   Plaintiff claims that she "has painstakingly set out in 53 pages" particularized allegations, Opp. at 13,
25   a review of the FAC demonstrates that those 53 pages contain only (inadequately pleaded) smoke and
26   mirrors directed to the "All Natural" and nutrient content claims that are not even alleged to have
27   appeared on the can (or bottle, or soda fountain cup) of Pepsi that Plaintiff allegedly purchased. (*See,*
28   *e.g.*, FAC ¶¶ 96–98; 124–127; 151–155).) Plaintiff's FAC baldly asserts that "Defendants falsely

represented on its label that the products were free of artificial ingredients & preservatives," but does not identify a *single* affirmative statement on Pepsi's label to that effect. (FAC ¶ 108.) Nor does she identify any other representations on Pepsi's label that were untrue, despite having nebulously alleged that she "relied on [Defendants'] label representations in the reasonable expectation that [they] were true," (FAC ¶ 107).[10] And although Plaintiff claims that reasonable consumers would expect manufacturers to make all disclosures required by law, she nowhere alleges that she or any reasonable consumer actually did or would have expected Pepsi's label to include parenthetical statements describing phosphoric or citric acid. (FAC ¶ 106.) Thus, she does not explain how she or any reasonable consumer could have *actually* or *reasonably* been misled. Again, these conclusory, unsupported allegations are legally insufficient to state a claim for fraud. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 n.10 (2011) (plaintiff "must demonstrate **actual reliance** on the allegedly deceptive or misleading statements") (emphasis added).

Without the "who, what, when, where, and how," the FAC must be dismissed. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (affirming dismissal of fraud claims because plaintiff failed to meet Rule 9(b)'s particularity requirement); *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274–75, 39 Cal. Rptr. 3d 634 (2006) (holding that allegation that "members of the public were likely to have been deceived" "merely concludes the public would likely be deceived, without pleading any facts showing the basis for that conclusion"). Contrary to Plaintiff's assertions, Opp. at 20–21, district courts freely dismiss claims where, as here, no reasonable consumer would have relied or been misled in the manner plaintiff alleged. *See, e.g.*, *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW (PLAx), 2011 U.S. Dist. LEXIS 55513, at *21 (C.D. Cal. May 16, 2011) (dismissing claims for failure to adequately allege likely deception; where there was no express representation that the product actually contained real fruit, "no reasonable consumer would construe the 'Fruit Flavored Clusters' pictured on the product package as consisting of

---

[10] Accordingly, *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) and *Vicuña v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012), cited in Plaintiff's Opposition at 20, and similar cases are materially distinguishable—in those cases, unlike here, defendants' *affirmative* statements as to the character of the products formed the basis for the plaintiffs' reliance.

blueberries and/or pomegranates").

### D. Plaintiff's Warranty Claims Are Inapplicable To Pepsi Carbonated Beverages

In its motion to dismiss, Pepsi noted that it was unclear whether Plaintiff meant for her warranty claims under the Magnuson-Moss Warranty Act and Song-Beverly Act to apply to Pepsi carbonated beverages, since her allegations were solely directed to "all natural," and "nutrient and health content claims"—none of which were alleged to have appeared on Pepsi's products. (Mot. at 12 [citing FAC ¶¶ 246, 257].) Plaintiff's Opposition does not clarify her intention; instead, it vaguely asserts that her express warranty claims are predicated on express "affirmations of fact" regarding nutrient content and health, and explicit "promis[es]" of compliance with the law. (Opp. at 21–22.) But the only Pepsi label statement Plaintiff identified is the federally-mandated ingredient list, which truthfully details Pepsi's components. This is not enough under either federal or state law.

#### 1. Plaintiff's Federal Warranty Claim Fails Because An Ingredient Statement Is Not A Written Warranty

Plaintiff does not allege that Pepsi included any additional language on the label promising a defect-free product or a level of performance over time. The bare statement of Pepsi's ingredients is nothing more than a "product description," which courts have repeatedly held is not a written warranty subjecting manufacturers to liability under the Magnuson-Moss Warranty Act. *See, e.g.*, *Astiana v. Dreyer's Grand Ice Cream*, No. C-11-2910 EMC, No. C-11-3164 EMC, 2012 U.S. Dist. LEXIS 101371, at *8–11 (N.D. Cal. July 20, 2012) (dismissing warranty claim because statement that ice cream was "all natural" was a product description rather than a promise that product was free of defects, and there was no authority for the argument that a food containing artificial or synthetic ingredients was "defective"); *Littlehale v. The Hain Celestial Group, Inc.*, No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530, at *2–3 (N.D. Cal. July 2, 2012) (dismissing warranty claim because "'Pure Natural' and 'All Natural' are . . . mere product descriptions"); *Hairston v. South Beach Bev. Co.*, No. 12-cv-1429 JFW (DTBx), 2012 U.S. Dist. LEXIS 74279, at *18–19 (C.D. Cal. May 18, 2012) (same; "'all natural with vitamins' and the names of [beverage] flavors . . . are 'product descriptions' rather than promises that Lifewater is defect-free, or guarantees of specific performance levels").

### 2. Plaintiff's State Warranty Claim Fails Because It Alleges No Written Warranty, And The Song-Beverly Act Expressly Exempts Consumables Such As Soft Drinks

Because Plaintiff relies on only the truthful ingredient statement on Pepsi to support her claims, Plaintiff also failed to allege any written statement through which Pepsi's label "undert[ook] to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code § 1791.2(a). Accordingly, her Song-Beverly Act claim must also fail. Moreover, the Song-Beverly Act is wholly inapplicable to Pepsi carbonated beverages, because—as this Court outlined in the *Khasin* order—only plaintiffs who are "buyer[s] of consumer goods" may recover under the cause of action created under the Act, and "consumables" such as the food products at issue here are *expressly excluded* from the definition of "consumer goods" within the meaning of the Act. Cal. Civ. Code, §§ 1791(d), 1794(a); *Khasin*, 2012 U.S. Dist. LEXIS 161300, at *23 (finding chocolate bars were consumables "exempted" under the Act); *see also Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 749 (2003).[11]

### E. Unjust Enrichment Is Not A Valid Cause Of Action Under California Law

Plaintiff contends that because she seeks *restitution*, she may proceed with a claim for "unjust enrichment." (Opp. at 22−23). However, notwithstanding this Court's order in *Khasin*, both this Court and the Ninth Circuit have recently sided with the authority *rejecting* this sort of "claim": "'Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself.'" *Williamson v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 U.S. Dist. LEXIS 125368, at *27−28 (N.D. Cal. Sept. 4, 2012) (dismissing with prejudice "unjust enrichment" claims in putative consumer class action complaint) (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003)); *see also Gandrup v. GMAC Mortgage, LLC*, No. 5:11-cv-00659 EJD, 2012 U.S. Dist. LEXIS 128625, at *13−14 (N.D. Cal. Sept. 10, 2012); *accord Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011) (affirming dismissal of claim for unjust enrichment because that "is not an independent cause of action in California"); *Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010) ("In California, '[t]here is no cause of action for unjust enrichment.'"). (*See also* Mot. at 14 (collecting cases).) Plaintiff's

---

[11]  Contrary to Plaintiff's argument, Opp. at 22, California Civil Code § 1793.35 does not create a cause of action—it merely outlines the time and procedure for returning purchased consumables.

quasi-contract claim is nothing more than an unjust enrichment claim not recognized under California law, and it "is therefore subject [to] dismissal for this reason alone." *Bernardi v. JPMorgan Chase Bank, N.A.*, No. 5:11-cv-04212 EJD, 2012 U.S. Dist. LEXIS 85666, at *8 (N.D. Cal. June 20, 2012).

Additionally, this Court has recognized that "'[a]lthough Rule 8 of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract.'" *Lansmont Corp. v. SPX Corp.*, No. 5:10-cv-05860 EJD (HRL), 2011 U.S. Dist. LEXIS 65611, at *14 (N.D. Cal. June 20, 2011) (citation omitted). Because Plaintiff has attempted to plead a cause of action based on the existence of an express warranty—"which is equivalent to alleging the existence of a written contract," *Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC (ANx), 2011 U.S. Dist. LEXIS 54456, at *16–17 (C.D. Cal. May 12, 2011)—she may not assert an unjust enrichment claim based upon the same issues. *Id.* (disallowing unjust enrichment claim where plaintiff alleged a written warranty).[12]

Even treating Plaintiff's unjust enrichment claim as one for restitution alternative to her contract claims, the claim must fail because—as demonstrated above—Plaintiff did not adequately plead her predicate tort or warranty claims. *See Donahue v. Apple, Inc.*, No. 11-cv-05337 RMW, 2012 U.S. Dist. LEXIS 65860, at *50–51 (N.D. Cal. May 10, 2012) (dismissing unjust enrichment claim where predicate misrepresentation claims asserted under UCL were inadequately pleaded).

### III. PEPSICO IS NOT A PROPER DEFENDANT FOR CLAIMS RELATED TO THE PEPSI-LIPTON PARTNERSHIP'S TEA BEVERAGES

Much like the complaint, the Opposition continues to ignore meaningful distinctions between the products that Plaintiff has chosen to sue over. As previously mentioned, Plaintiff's lawsuit involves two different types of products: Lipton tea beverages, which are sold by the Pepsi-Lipton Partnership, and Pepsi-branded carbonated soft drinks, which are sold by PepsiCo. Contrary to

---

[12] Moreover, because recovery under Plaintiff's UCL claim seeks restitution and injunctive relief, Plaintiff's purported claim for "unjust enrichment" is superfluous. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) ("under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution'" (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 179 (1999))). And, as this Court has previously noted, unjust enrichment claims which are "superfluous by definition" should be dismissed. *Lansmont Corp.*, 2011 U.S. Dist. LEXIS 65611, at *15.

Plaintiff's assertion, Pepsi does not argue that it is an improper party with respect to the claims asserted against it regarding carbonated beverages (namely, the Pepsi cola Plaintiff allegedly purchased). Rather, Pepsi asserts that it is not a proper party with respect to Plaintiff's claims regarding the tea products that are owned by the Pepsi-Lipton Partnership.[13]

Plaintiff's opposition contends that with respect to the tea products, Pepsi should be found to be a proper defendant because the "labels of a number of the ready-to-drink Lipton Tea Products bought by the Plaintiff represented that the products were bottled under the authority of PepsiCo." (Opp. at 23.) Plaintiff's reliance on this statement underscores the fact that Pepsi is not a proper party with respect to the tea products—Plaintiff's claims are not based on the **bottling** of the tea products, but rather on their **labeling**. With respect to the labeling of the tea products, Plaintiff's complaint does not contain any allegations to support her attempt to drag Pepsi into the fray, particularly after initially agreeing that Pepsi is an unnecessary defendant for claims related to the partnership's ready-to-drink tea products. While the Opposition attempts to characterize Pepsi's role as a "manufacturer" of the tea products in order to gloss over this pleading deficiency (*id.*), the complaint contains no such allegations, as it merely asserts that the packages of certain tea products state that they are "bottled under the authority" of PepsiCo. (FAC ¶ 19.)

Plaintiff argues as a fall back that Pepsi can be held vicariously liable for the acts of the Pepsi-Lipton partnership because Pepsi is a "joint venturer" in the partnership. To begin, simply stating that Pepsi is a "joint venturer" does not suffice for purposes of imparting vicarious liability. "Under California law, a claim of joint venture requires factual elements [be pleaded] to support the following elements: (1) a joint interest in a common business; (2) an understanding to share profits and losses; and (3) a right to joint control." *Nichols v. Greenpoint Mortg. Funding, Inc.*, No. SA CV 08-750 DOC (MLGx), 2008 U.S. Dist. LEXIS 87644 (C.D. Cal. Aug. 19, 2008), at *9 (dismissing

---

[13] Plaintiff's attempted "gotcha" assertion that Pepsi has "waived any objections to Plaintiff's tea related claims" (Opp. at 24), is without merit. As Pepsi noted in its memorandum in support of its Motion to Dismiss, the tea-related claims were addressed in the motion to dismiss filed by co-defendants Unilever and the Pepsi-Lipton Partnership, and Pepsi's Motion was focused on the Pepsi carbonated beverages. (Mot. at 2.) Pepsi did not—and does not—waive any objections with respect to Plaintiff's tea-related claims, which are addressed in the motion to dismiss filed by Unilever and the Pepsi-Lipton Partnership.

complaint for "fail[ing] to allege any of the elements or the underlying facts to support these elements"). Even if Plaintiff had pleaded the requisite facts to support those elements, however, the partnership is a *limited liability partnership*, and "the individual partners in a registered limited liability partnership generally are not vicariously liable for partnership obligations that do not arise from the partner's personal misconduct or guarantees." *PCO, Inc. v. Christiansen, Miller, Fink, Jacobs, Glaser & Weil LLP*, 150 Cal. App. 4th 384, 389 n.3 (2007).

In addition, California law makes clear that a UCL claim, such as the one that Plaintiff seeks to bring, cannot be predicated on a theory of vicarious liability (whether or not there is a limitation on partnership liability in place). *Id.* at *9; *see also Perfect 10, Inc. v. VISA Int'l Serv. Ass'n*, 494 F.3d 788, 808–09 (9th Cir. 2007) ("an 'unfair practices claim [under the UCL] cannot be predicated on vicarious liability'"); *Emery v. VISA Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (same). Plaintiff's opposition confirms that vicarious liability is the very reason that she seeks to invoke the conclusory "joint venture" allegations, thereby also confirming that her claims are predicated on an improper legal theory and must be dismissed.

## IV.   CONCLUSION

Plaintiff fails to grapple with the fact that all she has alleged with respect to Pepsi carbonated beverages is that she purchased a Pepsi at some unidentified time that bore an ingredient list detailing the true components of Pepsi. This is not enough to survive dismissal. Accordingly, Defendant Pepsi respectfully requests that this Court grant its Motion to Dismiss in its entirety.

DATED:  November 30, 2012                      GIBSON, DUNN & CRUTCHER LLP
                                                DANIEL W. NELSON
                                                TIMOTHY LOOSE


                                                By:  ___/s/   Timothy Loose___

                                                Attorneys for Defendant PepsiCo, Inc.