UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMY MAXWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC.; PEPSICO, INC., and PEPSI LIPTON TEA PARTNERSHIP,<br><br>Defendants. | Case No.: 5:12-CV-01736-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Re: Docket Nos. 33, 37] |

Plaintiff Amy Maxwell ("Plaintiff") filed this putative class action against Defendants Unilever United States, Inc. ("Unilever"), PepsiCo, Inc. ("PepsiCo"), and Pepsi Lipton Tea Partnership ("Pepsi/Lipton"). Plaintiff alleges that the labeling on several of Defendants' food and beverage products as well as websites related to Defendants' products contain statements amounting to misbranding and deception in violation of California and federal laws.

Presently before the Court are two motions to dismiss Plaintiff's Amended Complaint: one filed by PepsiCo and the other filed by Unilever and Pepsi/Lipton. Having fully reviewed the parties' papers and having heard oral arguments of counsel, the Court will grant Defendants' motions.

1
Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

## I. Background

Plaintiff, a California resident, alleges that since 2008 she spent more than $25.00 purchasing the following products: Lipton Pure Leaf Sweetened Bottled Iced Tea (16 oz. glass bottle); Lipton Iced Green Tea to Go Mandarin & Mango, (14 sticks); Lipton Vanilla Caramel Truffle Black Tea (20 bags); Lipton Green Tea Decaffeinated (20 bags); Lipton White Tea Raspberry (16.9 oz. plastic bottle); Lipton Cold Brew Iced Tea (22 bags); Lipton Decaffeinated Tea (72 bags); and Lipton Sweet Tea (128 oz. plastic bottle). Am. Compl. ¶ 149. Plaintiff alleges that she "also bought Lipton Brisk tea products such as Lipton Brisk Lemon Iced Tea and Pepsi carbonated beverages such as Pepsi." Id. The Amended Complaint also contains several statements that assert or imply that Plaintiff has also purchased what she refers to as "Misbranded Food Products." See, e.g., id. § E (titled "Plaintiff Purchased Defendants' Misbranded Food Products"); id. ¶ 17 (defining Plaintiff as an individual who "purchased Defendants' Misbranded Food Products . . ."). Plaintiff defines the term "Misbranded Food Products" in the introduction of the Amended Complaint in the following way:

> In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a class of California consumers who, within the last four years, purchased 1) any carbonated beverage manufactured, distributed or bottled under the authority of the Defendants that contained an artificial flavoring, artificial coloring, or chemical preservative but failed to bear a statement on its label disclosing that fact, or 2) any Lipton or Brisk tea products ("Misbranded Food Products").

Id. at 1–2.

Plaintiff argues that several statements on the packages and websites of these and other products were false, misleading, or otherwise unlawful. Plaintiff alleges that Defendants did not comply with state and federal regulations when making the following types of representations about their products: (a) nutrient content claims; (b) antioxidant nutrient content claims; (c) nutritional value claims; (d) "natural" claims and use of the term "natural"; (e) failure to disclose the presence of chemical preservatives, artificial colors, and artificial flavors; and (f) health claims and use of the term "healthy." See id. §§ C.a–C.g.

2
Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

The Amended Complaint also states that Plaintiff read the labels on Defendants' Misbranded Food Products, id. ¶ 150, as well as Unilever's website containing information about the "Misbranded Food Products," id.¶ 151. Plaintiff avers that she relied on the statements located on the labeling and the websites when making her decision to purchase the products. Id. ¶ 152 ("Plaintiff reasonably relied on Defendants' package labeling, packaging, and website and justified the decision to purchase Defendants' Misbranded Food Products in substantial part on Defendants' package labeling and web claims as well as product packaging . . . ."). She also asserts that she "would not have bought the products had she known the truth about them." Id. ¶ 155.

On July 30, 2012, Plaintiff filed the Amended Class Action Complaint on behalf of herself and on behalf of a putative class she defines as follows:

> All persons in California who, within the last four years, purchased 1) any carbonated beverage manufactured, distributed or bottled under the authority of the Defendants that contained an artificial flavoring, artificial coloring, or chemical preservative but failed to bear a statement on its label disclosing that fact, or 2) any Lipton or Brisk tea products (the "Class").

See id. ¶ 160. In the Amended Complaint, Plaintiff brings forth the following causes of action: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (counts 1–3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., (counts 4–5); violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. (count 6); restitution based on unjust enrichment or quasi-contract (count 7); and breach of warranty in violation of the Song-Beverly Act, Cal. Civ. Code § 1790 et seq. (count 8) and the Magnuson-Moss Act, 15 U.S.C. § 2301 (count 9).

Under California's Sherman Food, Drug, and Cosmetic Laws, the federal labeling requirements are adopted as the food labeling requirements of the state of California. See Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."). The state laws also point to the adoption of specific federal provisions as the parallel state labeling requirements. See, e.g., id. § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as

3

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto. Any food exempted from those requirements under the federal act shall also be exempt under this section."). As such, Plaintiff argues that violations of the federal laws and regulations—namely the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq. as amended by the Nutrition Labeling and Education Act ("NLEA")—would amount to violations of the identical California state requirements.

**II.     Legal Standard**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556–57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). "[M]aterial which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the

4
Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

### III. Discussion

#### A. Warranty Claims

Defendant moves to dismiss Plaintiff's breach of warranty claims brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq. (count 8), and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (count 9).

The Song-Beverly Act provides a right of action for buyers of consumer goods for express or implied warranty violations. Cal. Civ. Code § 1794. The Act defines "consumer goods" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for . . . consumables," id. at § 1791(a) (emphasis added), and defines "consumables" as "any product that is intended for consumption by individuals, or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of consumption or use," Id. at 1791(d). The Court finds that the products at issue fall under this definition of "consumables."

Plaintiff does not dispute the notion that the products at issue are consumables and would therefore be excepted from § 1794. See Am. Compl. ¶ 245 ("Defendants' food products are 'consumables' as defined by Cal. Civ. Code § 1791(d)."); Pl.'s Opp'n to Def. Unilever and Pepsi/Lipton's Mot. to Dismiss 24, Docket Item No. 40 ("The [Amended Complaint] alleges that the food products at issue are consumables."). Rather, Plaintiff argues that the products fall under the provisions of § 1793.35, which provides for the enforcement of express warranties on consumables. The Court rejects this argument because food labels, like the ones at issue, do not constitute express warranties against a product defect. See Astiana v. Dreyer's Grand Ice Cream, Inc., No. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012); Jones v. ConAgra Foods, Inc., -- F. Supp. 2d --, No. C 12-01633 CRB, 2012 WL 6569393, *12–13 (N.D. Cal. Dec. 17, 2012). Labels on the product packaging and websites are "product descriptions rather than promises that [a food or beverage product] is defect-free, or guarantees of specific performance levels." Hairston v. S. Beach Beverage Co., No. CV 12-1429-JFW, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (internal quotation marks omitted). Accordingly, the Court finds that Plaintiff fails to state a claim for a violation of the Song-Beverly Act.

The Magnuson-Moss Warranty Act creates a civil cause of action for consumers to enforce the terms of written warranties. 15 U.S.C. § 2310(d). Similar to her argument for the applicability of the Song-Beverly Act, Plaintiff contends that the labeling on the products at issue constitute express warranties. Having found to the contrary, the Court rejects this argument and finds that Plaintiff fails to state a claim for a violation of the Magnuson-Moss Warranty Act.

### B. Sufficiency of the Pleadings

The Court now turns to whether the remaining claims are sufficient to withstand Defendants' motions in light of the pleading standards set forth in the Federal Rules of Civil Procedure. The Court first notes that the heightened Rule 9 pleading standard applies to claims of false or deceptive advertising brought pursuant to the UCL, FAL, or CLRA. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); see also Herrington v. Johnson & Johnson Consumer

6

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1  Cos., Inc., No. C 09-1597 CW, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010) (subjecting
2  UCL, FAL, and CLRA claims which "sound in fraud" to the heightened Rule 9 pleading
3  standards). Because the remaining claims involve allegations of fraudulent conduct, deception, or
4  misrepresentation, the Rule 9 pleading standard applies. See ConAgra Foods, Inc., No. C 12-01633
5  CRB, 2012 WL 6569393, at *10 (applying the heightened Rule 9 pleading standard to the
6  complaint in a similar suit); Colucci v. ZonePerfect Nutrition Co., No. 12-2907-SC, 2012 WL
7  6737800, *8–9 (N.D. Cal. Dec. 28, 2012) (same). As such, Plaintiff must aver with particularity the
8  specific circumstances surrounding the alleged mislabeling, which give rise to her claims. She must
9  state with clarity the "who, what, when, where, and how" of the fraudulent conduct, Vess, 317 F.3d
10 at 1106, and provide an unambiguous account of the "time, place, and specific content of the false
11 representations," Swartz, 476 F.3d at 764.

12 Applying the Rule 9 pleading standard, the Court finds that the Amended Complaint does
13 not provide a clear and particular account of the allegedly fraudulent, deceptive, misrepresentative,
14 or otherwise unlawful statements. The Amended Complaint fails to unambiguously specify the
15 particular products that have violated particular labeling requirements, the allegedly unlawful
16 representations that were on the products, and the particular statements Plaintiff allegedly relied on
17 when making her purchases.

18 Plaintiff uses the term "Misbranded Food Products" throughout the Amended Complaint on
19 which she lays as the foundation of her several claims. As noted, this term refers to a non-definite
20 class of products: "1) any carbonated beverage manufactured, distributed or bottled under the
21 authority of the Defendants that contained an artificial flavoring, artificial coloring, or chemical
22 preservative but failed to bear a statement on its label disclosing that fact, or 2) any Lipton or Brisk
23 tea products . . . ." Am. Compl. 1–2. In each of the causes of action set forth in the Amended
24 Complaint, Plaintiff alleges that in selling the "Misbranded Food Products" to Plaintiff, Defendants
25 violated state and federal laws. Because the term "Misbranded Food Products" does not refer to
26 specific and particular products, the claims that use that term cannot allege that specific and

7
Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1  particular products contained unlawful labeling. As such, Plaintiff has not met the Rule 9 standard
2  of pleading with specificity which particular products are at issue.

3        This ambiguousness and non-specificity exists throughout the Amended Complaint. Which
4  specific and particular products Plaintiff purchased—the action which gives rise to her lawsuit—is
5  ambiguous. In the Amended Complaint, Plaintiff enumerates at least eight products that she claims
6  to have purchased. Id. ¶ 149. However, she also states that she "bought Lipton Brisk tea products
7  such as Lipton Brisk Lemon Iced Tea and Pepsi carbonated beverages such as Pepsi," id., as well
8  as that she purchased the "Misbranded Food Products," see, e.g., id. § E. The placement of the
9  ambiguous assertion that she purchased a non-definite group of products alongside the enumerated
10 list creates ambiguity and confusion as to precisely which products Plaintiff purchased. In order to
11 glean the precise and particular products at issue here, Defendants—as well as the Court—would
12 have to draw their own inferences based on the equivocal assertions contained in the Amended
13 Complaint. Drawing such inferences about the particular misconduct that is alleged to constitute
14 fraud, deception, or misrepresentation is something the heightened Rule 9 pleading standard of
15 particularity and specificity seeks to avoid. See Semegen, 780 F.2d at 731.

16       When attempting to explicate the bases of her claims, moreover, Plaintiff does not clearly
17 and unambiguously present which allegedly unlawful language referred to which particular of
18 Defendants' products. Rather, the Amended Complaint contains generalized statements that
19 Defendants have made unlawful claims. As but one example: when discussing the contention that
20 Defendants have made unlawful claims about the antioxidant nutrient content of its products,
21 Plaintiff alleges that "Defendants have made multiple unlawful antioxidant claims about their tea
22 and other beverage products," Am. Compl. ¶ 71, and that "[t]he antioxidant labeling for Lipton Tea
23 products violates federal and California law," id. ¶ 68. While this section contains a thorough
24 discussion about the state and federal labeling requirements for antioxidant-related labeling
25 statements, it fails to unambiguously identify which particular products' labeling violated these
26 requirements and present the precise language that constitutes misrepresentation.

In addition, in the section of the Amended Complaint titled "Causes of Action"—in which Plaintiff lists her nine claims that Defendant violated state or federal law—Plaintiff makes not a single mention of a particular or specific product which allegedly contains unlawful labeling. The term "Misbranded Food Products" is used throughout this section; as noted, this term does not refer to a specific and definite class of Defendants' products. Accordingly, the Court is unable to identify the particular products which Plaintiff alleges contain unlawful labeling.

For these reasons, the Court finds that Plaintiff's claims have not been sufficiently pled so as to meet the heightened Rule 9 pleading standard. As such the Court will dismiss the remaining seven claims.

### IV. Conclusion and Order

For the foregoing reasons both Motions to Dismiss are GRANTED. Plaintiff's breach of warranty claims predicated on the Song-Beverly Act (count 8) and the Magnuson-Moss Act (count 9) will be DISMISSED WITH PREJUDICE. The remainder of Plaintiff's claims (counts 1–7) will be DISMISSED WITHOUT PREJUDICE.

If Plaintiffs wish to file an amended complaint, the Court orders that it be pleaded in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this Order.

Because the Amended Complaint is presently dismissed in its entirety, the Court declines to set a case management schedule at this time. However, the Court will address scheduling issues as raised by the parties should it become necessary.

**IT IS SO ORDERED.**

Dated: April 9, 2013



EDWARD J. DAVILA
United States District Judge

9

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS