1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMY MAXWELL, individually and on behalf of all others similarly situated<br><br>                    Plaintiff,<br><br>  v.<br><br>UNILEVER UNITED STATES, INC., PEPSICO, INC., and PEPSI LIPTON TEA PARTNERSHIP,<br><br><br>                    Defendants. | Case No.: 5:12-CV-01736-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[Re: Docket No. 65, 67]** |

Presently before the Court is Defendants Unilever United States, Inc., Pepsico, Inc., and Pepsi Lipton Tea Partnership (collectively "Defendants") Motion to Dismiss Plaintiff Amy Maxwell's ("Plaintiff" or "Maxwell") Second Amended Complaint ("SAC"). Plaintiff filed this putative class action against Defendants alleging that several of Defendants' products have been improperly labeled so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L.R. 7-1(b), the motion was taken under submission without oral argument. Having fully reviewed the parties' papers, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss for the reasons explained below.

**I.      Background**

    Plaintiff filed her first amended class action complaint on July 30, 2012. Dkt. No. 23. The Court issued an Order granting Defendants' Motion to Dismiss on April 9, 2013. Dkt. No. 60. Plaintiff then filed her SAC on April 24, 2013. Dkt. No. 61.

    Plaintiff is a California consumer who purchased eight of Defendants' food products: (1) Lipton Pure Leaf Iced Tea – Sweetened, (2) Lipton Iced Green Tea to Go w/ Mandarin & Mango, (3) Lipton Vanilla Caramel Truffle Black Tea, (4) Lipton Green Tea Decaffeinated, (5) Lipton Decaffeinated Tea, (6) Lipton Sweet Tea, (7) Lipton Brisk Lemon Tea, and (8) Pepsi (collectively known as the "purchased products"). Dkt. No.61 ¶¶ 1-2. Plaintiff brings a putative class action suit against Defendants on behalf of all persons in the United States who, since April 6, 2008 to the present, purchased the same or 83 similar food products ("nonpurchased Products") allegedly mislabeled. FAC ¶ 1. Plaintiff argues that the following food labeling practices of Defendants food products were unlawful: (1) representing "all natural" or "natural" when they contain chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients; (2) failing to disclose the presence of chemical preservatives, artificial flavorings or artificial added colors; (3) nutrient content claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the nutrient content claims being made; (4) making antioxidant claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the antioxidant claims being made; and (5) Unilever makes health claims about its products on the Lipton website that are prohibited by law. Id. ¶ 19. Plaintiff alleges the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., (counts 4-5);and violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., (count 6). Dkt. No. 61 ¶¶ 227-289.

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**II.      Legal Standard**

    **A.   Rule 8(a)**

    Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." <u>Twombly</u>, 550 U.S. at 556-57.

    When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

    **B.   Rule 9(b)**

    Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain

3

"an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

### C. Rule 12(b)(1)

A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Wolfe, 392 F.3d at 362.

On a factual challenge, the party opposing the motion must produce affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the court need not presume the plaintiff's allegations are true. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); accord Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). In the absence of a full-fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

Federal courts are courts of limited jurisdiction, adjudicating only cases which the Constitution and Congress authorize. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). An Article III federal court must ask whether a plaintiff has suffered sufficient

4

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992).

At least one named plaintiff must have suffered an injury in fact. See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### III.    Discussion

Plaintiff contends that her case essentially has two facets. First, Plaintiffs alleges that Defendants' packages and labels do not comply with certain sections of state and federal laws, thereby "misbranding" the product, creating a product that is unlawful and legally worthless. Dkt. No. 61 ¶¶ 6-7. This misbranding gives rise to Plaintiff's first cause of action under the "unlawful" prong of the UCL. Second, Plaintiff claims that Defendants' labels are misleading, deceptive, unfair, and fraudulent. Id. Plaintiff contends that they "reasonably relied in substantial part on the unlawful label statements, and were thereby deceived, in deciding to purchase these products." Id.

Defendants challenge Plaintiff's claims on a number of grounds including: lack of standing; failure to state a claim; and federal preemption of state law claims.

### A.  Requests for Judicial Notice

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As a preliminary matter, Defendants have requested that the court take judicial notice of documents pursuant to Rule 201 of the Federal Rules of Evidence. Dkt. No. 66. Defendants ask that the court take judicial notice of the table of recent "misbranding" cases recently filed in this district, Lipton PURELEAF Iced Tea, bottled label, Lipton Iced Green Tea Mandarin & Mango To Go Sticks label, Lipton VANILLA CARAMEL TRUFFLE Flavored Black Tea label, Lipton GREEN TEA Naturally Decaffeinated label, Lipton White Tea Raspberry Flavor, bottled label, Lipton Cold Brew Iced Tea label, Lipton Decaffeinated Tea label. Id. at 1. A court may take judicial notice of a document on which the complaint "necessarily relies" if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall v. Natl. Educ. Assn., 629 F.3d 992, 998 (9th Cir. 2010); see also Anderson v. Jamba Juice Co., 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012) ("Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the label and the labels are central to the plaintiff's complaint.") In this case, Plaintiff does not object and the packaging labels satisfy these requirements.

Accordingly, the request for judicial notice is GRANTED.

**B. Statutory Framework**

The operative statute in this matter is the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343 et seq. 21 U.S.C. § 343 establishes the conditions under which food is considered "misbranded." Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."

The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq., incorporates the requirements of the FDCA as the food labeling requirements of the state of California. Plaintiff brings claims for relief under the UCL, FAL, and CLRA based on Defendants' alleged violations of the Sherman Law. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. The "fraudulent" prong of the UCL "requires a showing [that]

6

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

members of the public are likely to be deceived." <u>Wang v. Massey Chevrolet</u>, 97 Cal. App. 4th 856, 871 (2002). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." <u>Daugherty v. Am. Honda Motor Co., Inc.</u>, 144 Cal. App. 4th 824, 837 (2006). As for the "unfair" prong, "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." <u>Morgan v. Wallaby Yogurt Co.</u>, Inc., No. 13-CV–00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. March 13, 2014); (citing <u>Davis v. Ford Motor Credit Co.</u>, 179 Cal. App. 4th 581, 594 (2009)). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provision." <u>Bardin v. Daimlerchrysler Corp.</u>, 136 Cal. App. 4th 1255, 1263, 1266 (2006) (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." <u>Schnall v. Hertz Corp.</u>, 78 Cal. App. 4th 1144, 1167 (2000).

### C. Standing for Nonpurchased Products

As noted, to establish Article III standing, a plaintiff must allege facts showing an "injury-in-fact," causation, and redressability such that the injury will be likely redressed by a decision in the plaintiff's favor. <u>Lujan</u>, 504 U.S. at 561-62. An "injury in fact" requires showing "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." <u>Id.</u> at 560 (citations and internal quotation marks omitted).

The UCL and FAL incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury. <u>Kwikset Corp. v. Super. Ct.</u>, 51 Cal. 4th 310, 322-23 (2011); <u>see</u> also <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury ... and 'immediate' causation . . . Neither is required for Article III standing." (internal citations omitted)). Proposition 64 was enacted in 2004 as a means of "confin[ing] [UCL] standing to those actually injured by a defendant's business practices and [ ] curtail[ing] the prior practice of filing suits on

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." Kwikset, 51 Cal. 4th at 321 (internal citations omitted). Under the UCL and FAL, a plaintiff suffers an injury-in-fact when he or she has "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125 (N.D. Cal.2010).

To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising." Id. To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct." In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009). However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Id. A plaintiff can satisfy the UCL's standing requirement by alleging that he or she would not have bought the product but for the alleged misrepresentation. Kwikset, 51 Cal. 4th at 330.

The California Supreme Court has held that the phrase "as a result of" in UCL section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." In re Tobacco II, 46 Cal. 4th at 326. This also applies under the UCL's "unlawful" and "unfair" prong, where the predicate unlawfulness is misrepresentation and deception. Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373, 1385 (2010); see also Kwikset, 51 Cal. 4th 310; In re Actimmune Mkt. Litig., No. 08-2376-MHP, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010), aff'd, 464 F. App'x 651 (9th Cir. 2011); Brazil v. Dole Foods Co., 935 F. Supp. 2d 947 (N.D. Cal. 2013); Kane v. Chobani, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014).

The federal and state statutes relied on by Plaintiff prohibit a particular type of consumer deception, the mislabeling of food products. As such, the actual reliance requirement applies to Plaintiff's claims under all prongs of the UCL. See Figy v. Amy's Kitchen, No. 13-CV-03816-SI,

8

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1   2013 WL 6169503 (N.D. Cal. Nov. 25, 2013); <u>Kwikset</u>, 51 Cal. 4th 310; <u>Wilson v. Frito-Lay N.

2   Am.</u>, 961 F. Supp. 2d 1134 (N.D. Cal. 2013).

3         The parties do not dispute whether Plaintiff has pled standing as to the purchased products.

4   The question for the Court is whether Plaintiff has standing as to the nonpurchased products.

5   Defendants argue that Plaintiff lacks standing to pursue claims based on products she did not

6   purchase because Plaintiff failed to explain how the 83 products with different labels and

7   ingredients, across different product lines, are "substantially similar" to the eight products she

8   bought. Defs.' Reply at 1. Plaintiff argues that she has standing because the 83 nonpurchased

9   products are substantially similar to and contain the same unlawful and misleading labeling claims

10  as the products Plaintiff did purchase. Pl.'s Opp'n at 4.

11        While courts are split as to whether actual purchase is required to establish the requisite

12  injury-in-fact, many courts in this district have found that claims regarding nonpurchased products

13  similar to Plaintiff's do not survive a motion to dismiss. <u>See</u> <u>Ivie v. Kraft Foods Global, Inc.</u>, 961

14  F. Supp. 2d 1033, 1046 (N.D. Cal. 2013) ("there can be no requisite pecuniary injury where

15  plaintiff did not herself purchase the product at issue"); <u>Larsen v. Trader Joe's Co.</u>, No. C-11-

16  05188-SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (finding that as a matter of law

17  plaintiffs could not have suffered a particularized injury for products they did not purchase); <u>Major

18  v. Ocean Spray Cranberries, Inc.</u>, No. 12-CV-03067-EJD, 2013 WL 2558125 (N.D. Cal. June 10,

19  2013) (denying class certification due to lack of typicality where plaintiff did not purchase named

20  products); <u>Granfield v. NVIDIA Corp.</u>, No. C-11-05403-JW, 2012 WL 2847575, at *6 (N.D. Cal.

21  July 11, 2010) ("when a plaintiff asserts claims [for defective product or false advertising] . . .

22  claims relating to products not purchased must be dismissed for lack of standing"); <u>Carrea v.

23  Dreyer's Grand Ice Cream, Inc.</u>, No. C-10-01044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10,

24  2011) (dismissing claims based on products other than those purchased by the plaintiff). In <u>Miller

25  v. Ghirardelli Chocolate Co.</u>, 912 F. Supp. 2d 861, 871 (N.D. Cal. 2012), the court analyzed why

26  the products that plaintiff did not buy were not substantially similar to those he did buy. The

27  identified products were different, looked different, and were labeled differently, so plaintiff did

28

9

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
For the Northern District of California

1    not allege "the sort of similarity of representation or product" that would amount to "the same basic

2    mislabeling practice" such as was found in <u>Astiana v. Dreyer's Grand Ice Cream, Inc.</u>, Nos. C-11-

3    2910-EMC, C-11-3164-EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) or <u>Anderson v.</u>

4    <u>Jamba Juice Co.</u>, 888 F. Supp. 2d 1000 (N.D. Cal. 2012).

5          In this case, Plaintiff has failed to allege substantial similarity among the purchased

6    products and the nonpurchased products. Plaintiff alleges that all of the 91 products are "physically

7    substantially similar" and share identical labeling claims, Dkt. 73 at 7, yet Defendants showed in

8    their motion numerous examples where the products had considerable differences among the

9    labels. <u>See</u> Dkt. No. 67 at 6. Plaintiff leaves the Court analyzing which of the 83 nonpurchased

10   products resemble the eight purchased products, an arduous task the Court is not inclined

11   undertake. Nor is the Court to just assume that every one of the nonpurchased products' labels is

12   actionable in the same way as the more fully described purchased products' labels are. Moreover,

13   the Court is not persuaded by Plaintiff's argument that the 91 products are substantially similar

14   simply because they share an alleged Sherman Law violation.

15         Accordingly, the Court is unable to identify which purchased product is substantially

16   similar to which particular nonpurchased product. All of Plaintiff's claims against the

17   nonpurchased products will be DISMISSED without prejudice.

18         **D. Preemption**

19         Defendants argue that Plaintiff's causes of action predicated upon state law are preempted

20   by the FDCA. Defendants contend that the language in the federal law explicitly precludes

21   Plaintiff, a private actor, from enforcing this federal law and the FDA regulations, and Plaintiff

22   cannot use the Sherman Law as a way to sidestep preemption. Defendants further argue that such

23   enforcement is expressly preempted because a judgment in Plaintiff's favor would impose

24   requirements different from or in addition to the exhaustive federal laws and regulations.

25         The preemption doctrine stems from the Supremacy Clause of Article VI of the U.S.

26   Constitution, under which federal law is deemed the "supreme law of the land." Federal law

27   preempts state law where any of the three forms of preemption are found: (1) express preemption;

28
                                                    10
     Case No.: 5:12-CV-01736-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

United States District Court
For the Northern District of California

(2) field preemption; and (3) and implied preemption. <u>Hillsborough Cnty., Florida v. Automated Med. Labs. Inc.</u>, 471 U.S. 707, 713 (1985). In other words, federal preemption occurs when Congress enacts a statute that explicitly preempts state law; when state law actually conflicts with federal law; or when federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in the field. <u>Chae v. SLM Corp.</u>, 593 F.3d 936, 941 (9th Cir. 2010).

In this case, Defendants argue that express preemption language from the FDCA acts as a bar to Plaintiff's "Natural Flavors" state-based claims. Defendants contend that Plaintiff's claims are expressly preempted because Plaintiff is seeking to impose requirements that are "not identical" to the language of the FDCA statute and the rules and regulations imposed by the FDA.

State consumer protection laws are preempted if they seek to impose requirements that contravene the requirements set forth by federal law. <u>See</u> <u>Wyeth v. Levine</u>, 555 U.S. 555 (2009); <u>see also</u> <u>Astiana v. Ben & Jerry's Homemade, Inc.</u>, Nos. C-10-4387-PJH, C-10-4937-PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011). The FDCA, as amended by the NLEA, contains an express preemption provision, making clear that state laws imposing labeling requirements not identical to FDA mandates are preempted. 21 U.S.C. § 343-1(a). However, "where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." <u>Chacanaca</u>, 752 F. Supp. 2d at 1118. This means that a plaintiff's claims need not fail on preemption grounds if the requirements she seeks to impose are identical to those imposed by the FDCA and the NLEA amendments.

Courts in this district have generally found express preemption under the FDCA only when: (1) the FDA requirements with respect to a particular food label or package are clear; and (2) the product label or package at issue is in compliance with that policy, such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require. <u>Ivie</u>, 2013 WL 685372, at *8. Defendants counter that the labels comply with FDA policy and are not plausibly deceptive or misleading to any reasonable consumer. According to Plaintiff however, the FDA policy is clear that such "natural" labels are misleading where the

11

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

products, in fact, contain artificial or synthetic ingredients. See 58 Fed. Reg. 2302, 2307(Jan. 6, 1993) (permitting "natural" labels only when "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected in the food"). Id.

Numerous courts in this district have rejected the idea that unfair competition claims based on "natural" type labels are expressly preempted by FDA regulations. See Lam, 859 F. Supp. 2d at 1104-05 (rejecting express preemption with respect to "made with real fruit" labels because there was a factual question as to whether a reasonable consumer might be misled by the label); Ben & Jerry's, 2011 WL 2111796, at *10 (rejecting express preemption with respect to the use of the term "natural" where no FDA regulation exists to preempt state law); Ivie, 2013 WL 685372, at *13. In 1993, the FDA declined to adopt a specific regulation controlling "natural" labels on foods.) In this case, Plaintiff has alleged that the products contain artificial flavors. While Defendants argue that none of the challenged ingredients are used for the purposes Plaintiff alleges, and cites to FDA regulations that suggest that the ingredients might be used for other purposes, the Court must accept Plaintiff's allegations as pleaded as true. The disagreement over the purpose of the ingredients is a factual dispute for which the Court finds inappropriate for dismissal at this stage of the proceeding.

For the reasons just discussed, the Court finds that whether the challenged "natural" labels in this case would deceive a reasonable consumer is not akin to defining FDA policy, but rather a factual determination better left to triers of fact. See, e.g., Astiana v. Dryer's Grand Ice Cream Inc., 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (finding a question of fact as to whether a reasonable consumer would normally expect potassium carbonate-an alkalizing agent-to be present in Haagen-Dazs ice cream, based on the FDA's policy statement).

Accordingly, the Court DENIES Defendants' Motion to Dismiss based on preemption.

### E.  Sufficiency of Claims

Plaintiff alleges two different facets of their argument against Defendants. First, Defendants' packages and labels render the products "misbranded" and therefore unlawful; second,

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Defendants' labels are "fraudulent" and "misleading." Plaintiff argues that the first facet of the case does not sound in fraud.

For all claims under the UCL that arise from deceptive advertising, as Plaintiff's claims here do, Plaintiff must plead reliance and show that "members of the public are likely to be deceived." Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008); Kwikset, 51 Cal. 4th 310. Whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate for resolution on the pleadings. Williams, 552 F.3d at 938-39; Bruton, 961 F. Supp. 2d at 1089. Where there are food packaging features that could likely deceive a reasonable consumer, the Ninth Circuit has found that granting a motion to dismiss is inappropriate. Williams, 552 F.3d at 939.

However, where a court can conclude as a matter of law that alleged misrepresentations are not likely to deceive a reasonable consumer, courts have dismissed claims under the UCL, FAL, and CLRA. Jones, 912 F. Supp. 2d at 899; see Red v. Kraft Foods, Inc., No. 10-CV-1028-GW, 2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) ("where . . . the claim alleges that a consumer will read a true statement on a package and then disregard 'well-known facts of life,'" the court granted a motion to dismiss because a reasonable consumer would not be deceived by pictures of vegetables and the true phrase "Made with Real Vegetables"); Carrea v. Dreyer's Grand Ice Cream, Inc., 475 Fed. Appx. 113 (9th Cir. 2012) (unpublished Ninth Circuit case determined that a reasonable consumer would not think the terms "original" or "classic" indicate a wholesome or nutritious product).

### i. "Unlawful" Claims

As discussed above, under the "unlawful" prong of the UCL, Plaintiff must plead reliance when claims are premised on allegedly deceptive advertising. See Kwikset, 51 Cal. 4th 310; Chobani, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014); Brazil, 2013 WL 5312418, at *8-9. Defendants argue that Plaintiff cannot avoid the UCL's pleading requirement under the "unlawful" prong.

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff argues that her claims are not based on misrepresentation, rather on the illegality of the products themselves as their misbranding violates the Sherman Law, and therefore there is no need for Plaintiff to prove reliance. Plaintiff relies on <u>Medrazo v. Honda of N. Hollywood</u>, 205 Cal. App. 4th 1 (2012), and <u>Steroid Hormone Product Cases</u>, 181 Cal. App. 4th 145 (2010), for the proposition that no showing of reliance is required where a defendant sells a product that is illegal to sell. However, as discussed in <u>Chobani</u>, 2014 WL 657300, at *7, these cases are unavailing because <u>Steroid Hormone</u> was decided prior to the California Supreme Court's decision in <u>Kwikset</u> and the alleged unlawful conduct in that case was not based on a statute prohibiting specific types of misrepresentations. Similarly, <u>Medrazo</u> does not discuss <u>Kwikset</u>'s finding that actual reliance applies to claims under the unlawful prong of the UCL. Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance. As this district pointed out in <u>Brazil</u>, if the court held that a plaintiff "has standing to bring claims based solely upon allegations that he would not have purchased a product that was misbranded, purchasers who never 'viewed the defendant's advertising' or misleading labeling would have standing to sue. Such a holding is inconsistent with Proposition 64 and <u>Kwikset</u>." <u>Brazil</u>, 2013 WL 5312418, at *9. Therefore, actual reliance must be pled in order to satisfy the requirements of the UCL.

Accordingly, Plaintiff's first cause of action is DISMISSED without prejudice.

### ii.   "Fraudulent" Claims

The SAC specifies the eight products that have allegedly violated particular labeling requirements, the allegedly unlawful representations that were on the products, and the particular statements Plaintiff allegedly relied on when making her purchases. SAC ¶¶ 140-189. Specifically, Plaintiff asserts that Defendants make these misbranded content claims: (a) "nutrient content"; (b) "antioxidant nutrient content"; (c) "nutritional value claims"; (d)"natural" claims (including "all natural"); (e) and website health claims. SAC ¶¶ 58-139.

14

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

The Court finds that the claims for nutrient content, antioxidant content, nutritional value claims, and natural claims are properly pled, may deceive a reasonable consumer, and are inappropriate to resolve at the motion to dismiss stage. See Jones, 912 F. Supp. 2d at 901; Ivie, 2013 WL 685372, at *12. Plaintiff has not however, alleged sufficient facts supporting her claim that the website constitutes "labeling," which is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(k). Only if the plaintiff establishes that the label contains a specific statement referring the consumer to a specific website for information about the claim in question can the website be considered to be "accompanying" the article as "labeling." See Wilson, 961 F. Supp. 2d, at *14 (holding that even though the product label referred the plaintiffs to the defendant's website, the label did not direct the reader to visit the website for further nutritional information, and so the website did not constitute "labeling"); see also Samet v. Procter & Gamble Co., 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013).

## IV.  Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be GRANTED in part and DENIED in part.

If Plaintiff wishes to further amend the complaint, the Court orders that it be pled in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this order.

**IT IS SO ORDERED**

Dated: August 28, 2014

EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-01736-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS