GIBSON, DUNN & CRUTCHER LLP
DANIEL W. NELSON, appearance *pro hac vice*
dnelson@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:     202.955.8500
Facsimile:     202.467.0539

TIMOTHY W. LOOSE, SBN 241037
tloose@gibsondunn.com
333 S. Grand Avenue
Los Angeles, CA  90071
Telephone:     213.229.7000
Facsimile:     213.229.6746

Attorneys for Defendant
PEPSICO, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY MAXWELL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., PEPSICO, INC., and PEPSI LIPTON TEA PARTNERSHIP,<br><br>Defendants. | CASE NO. 5:12-cv-01736 EJD<br><br>**DEFENDANT PEPSICO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>**REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY UNDER SEPARATE COVER**<br><br>[REFILED WITH NEW HEARING DATE IN ACCORDANCE WITH THE COURT'S ORDER OF DECEMBER 8, 2017, DKT. 122]<br><br>Hearing Date:     March 15, 2018<br>Hearing Time:     9 a.m.<br>Location:             Courtroom 4<br>Judge:                 Hon. Edward J. Davila<br><br>Action Filed:       April 6, 2012<br>TAC Filed:          September 12, 2014<br><br>Trial Date:          None Set |

1

## TABLE OF CONTENTS

2

**Page**

3

I. INTRODUCTION ................................................................................................................ 2

4

II. FACTUAL BACKGROUND ............................................................................................. 4

5

III. THE LEGAL STANDARDS GOVERNING THIS MOTION ....................................... 5

6

IV. PLAINTIFF STILL FAILS TO STATE A CLAIM FOR RELIEF REGARDING ANY
PEPSICO PRODUCT ...................................................................................................... 6

7

8

A.     Plaintiff Still Does Not Identify Any Actionable Misrepresentation In Pepsi-Cola
Labeling ................................................................................................................... 6

9

1.     Plaintiff Fails To Identify Any Statement Or Omission That Could Create An
Impression That The Product Contained No Artificial Preservatives Or
Flavors ............................................................................................................... 6

10

11

2.     Plaintiff Fails To Identify With Specificity The Pepsi-Cola Labeling She
Purports To Challenge, As Required By Rule 9(b) ........................................ 12

12

13

B.     The TAC Provides No Reason To Disturb The Court's Finding That Plaintiff Lacks
Standing To Sue Regarding Carbonated Soft Drink Products She Never Purchased. 14

14

V. CONCLUSION ................................................................................................................ 18

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Third Amended Complaint          Case No. 5:12-cv-01736

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ............................................................................................ 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) .............. 18

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634 (Cal. Ct. App. 2006) ............................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 5

*Brazil v. Dole Foods Co.*,
   No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ................... 9, 12

*Briseno v. ConAgra Foods, Inc.*,
   No. 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750 (C.D. Cal. Nov. 23, 2011) ....................... 14

*Carrea v. Dreyer's Grand Ice Cream, Inc*.,
   No. C 10–01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) ..................... 12, 13

*Cullen v. Netflix*,
   No. 11-CV-01199-EJD, 2013 U.S. Dist. LEXIS 4246 (N.D. Cal. Jan. 10, 2013) ........................... 9

*Dunkel v. eBay Inc.*,
   No. 12-CV-01452-EJD, 2013 U.S. Dist. LEXIS 13866 (N.D. Cal. Jan. 31, 2013) .......................... 8

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................................ 11

*Engurasoff v. The Coca-Cola Co.*,
   No. 3:13-cv-03990-JSW, 2014 U.S. Dist. LEXIS 116936 (N.D. Cal. Aug. 21, 2014) ..................... 8

*Figy v. Frito-Lay N. Am., Inc.*,
   No. 3:13-cv-03988-SC, 2014 U.S. Dist. LEXIS 111732 (N.D. Cal. Aug. 12, 2014) ............... 10, 18

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .............................................................................................. 11

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) .......................................................................................................... 16

*Harris v. Las Vegas Sands L.L.C.*,
   No. CV 12-10858 DMG (FFMx), 2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013) ...... 16

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (1994) ........................................................................................................ 6, 7

*Janney v. Gen. Mills*,
   944 F. Supp. 2d 806 (N.D. Cal. 2013) .............................................................................. 13

*Kane v. Chobani, Inc.*,
   No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) ......... 8, 10, 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................................... 5, 14

*Khasin v. R.C. Bigelow*,
  No. 12-02204 JSW, 2013 U.S. Dist. LEXIS 77084 (N.D. Cal. May 31, 2013) .............................. 18

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (Cal. 2011)..................................................................................................... 9, 10

*Lanovaz v. Twinings N. Am. Inc.*,
  No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 74250 (N.D. Cal. May 23, 2013) ................ 16, 18

*Larsen v. Trader Joe's Co.*,
  2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012) ............................................................ 18

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................................... 19

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ......................................................................................... 17

*Miller v. Ghirardelli Chocolate Co.*,
  No. C 12-04936 LB, 2013 U.S. Dist. LEXIS 49733 (N.D. Cal. Apr. 5, 2013) .............................. 18

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) .................................................................................................. 16, 18

*Route v. Mead Johnson Nutrition Co.*,
  No. CV 12-7350-GW(JEMx), 2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013).............. 15

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ........................................................................................................ 6

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...................................................................................................... 5

*Stephenson v. Neutrogena Corp.*,
  No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) .......................... 18

*Thomas v. Costco Wholesale Corp.*,
  No. 5:12-CV-02908-EJD, 2013 U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013)................... 8, 14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................................................... 13

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ......................................................................... 10, 17, 18

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6)................................................................................................................... 1

Fed. R. Civ. P. 9(b) ............................................................................................................... 1, 5, 14

Gibson, Dunn & Crutcher LLP

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 15, 2018, at 9:00 a.m., in Courtroom 4 of the above-captioned court, located at 280 South First Street, San Jose, California 95113, or as soon thereafter as may be heard, Defendant PepsiCo, Inc. ("PepsiCo") will, and hereby does, move this Court for an order dismissing all of the claims and causes of action related to PepsiCo's carbonated soft drinks contained in the Third Amended Complaint ("Complaint" or "TAC") filed in this action by Plaintiff Amy Maxwell.

***PepsiCo respectfully requests that this Court separately address this Motion, which addresses only the 13 PepsiCo carbonated soft drinks that are challenged in the TAC***.  The other defendants filed a separate motion addressing the other products—i.e., the various tea products—challenged in the TAC.

All of Plaintiff's claims related to PepsiCo's carbonated soft drinks should be dismissed for failing to meet Federal Rule of Civil Procedure 9(b)'s pleading standard and for failure to state a plausible claim for relief.  *See* Fed. R. Civ. P. 9(b), 12(b)(6).  The crux of Plaintiff's entire lawsuit is that she is a health-conscious consumer who was misled into buying original Pepsi cola ("Pepsi-Cola") because she thought it was a health product free of any additives, such as "artificial preservatives and/or artificial flavors." (*E.g.*, TAC ¶¶ 203, 186.)  But even after filing four iterations of her pleading, Plaintiff still cannot identify any statement that could have led her (or any reasonable consumer) to believe that Pepsi-Cola is free of any additives.  The labeling for Pepsi-Cola does not make any such claim, and the only label statement that Plaintiff's TAC identifies is a truthful ingredients list disclosing the presence of phosphoric acid, citric acid, and added caramel coloring.  Because Plaintiff does not, and cannot, plead facts to support the claim that she was led to believe that Pepsi-Cola was free of added preservatives, flavors, or colors, her claims against PepsiCo fail to state a claim and should again be dismissed, this time with prejudice.

In addition, and as she did in the portion of her Second Amended Complaint previously dismissed by this Court (Dkt. 83 at 10), Plaintiff alleges that she purchased only ***one*** of 13 challenged PepsiCo carbonated soft drinks.  Plaintiff does not add any new allegations with regard to the 12 other carbonated soft drinks that she did not purchase, and these claims should be dismissed again for

1   lack of standing under Federal Rule of Civil Procedure 12(b)(1), with prejudice.

2         This Motion is based on this Notice, the following Memorandum of Points and Authorities,

3   all matters of which judicial notice may be taken, including the photographs attached to PepsiCo's

4   Request for Judicial Notice filed concurrently herewith, the papers and pleadings on file herein, and

5   on such additional papers and arguments as may be presented at or before the hearing of this matter.

6                    **MEMORANDUM OF POINTS AND AUTHORITIES**

7         Plaintiff Amy Maxwell's Third Amended Complaint ("TAC") asserts claims against three

8   separate defendants, Unilever United States, Inc. ("Unilever"), the Pepsi Lipton Tea Partnership

9   ("Tea Partnership") and PepsiCo, Inc. ("PepsiCo") (collectively, "Defendants"), regarding dozens of

10  unrelated products.  PepsiCo brings the instant Motion to Dismiss in order to address ***only*** issues that

11  are specific to Plaintiff's claims asserted against 13 carbonated soft drinks ("CSDs") manufactured by

12  PepsiCo.  This Motion does not address Plaintiff's claims directed to the various tea products, which

13  are addressed in a separate motion to dismiss filed by Unilever and the Tea Partnership.  PepsiCo is

14  filing this separate Motion to enumerate the unique reasons why Plaintiff's threadbare claims against

15  PepsiCo's CSDs—which do not fall into any of the "nutrient content," "antioxidant nutrient content,"

16  "nutritional value claims," "natural claims," or "website health claims" categories that have been

17  covered at length in Plaintiff's complaints and analyzed by the Court in its order addressing

18  Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") (Dkt. 83 at 14)—must be

19  dismissed.[1]

20                              **I.  INTRODUCTION**

21        Plaintiff's allegations regarding original Pepsi-Cola and 12 other PepsiCo CSDs have

22  remained virtually unchanged since this Court first dismissed those claims as inadequately pleaded.

23  (*See* Dkt. 60 at 7; *compare* First Amended Complaint ("FAC"), Dkt. 23 ¶ 105, *with* SAC, Dkt. 61

24  ¶¶ 185–189, *and* TAC ¶¶ 182–186.)  PepsiCo respectfully suggests that the reason why the

25  allegations have not changed materially is that Plaintiff's challenges to PepsiCo's CSDs are based on

26  _____

27  [1]  To the extent Plaintiff asserts claims against PepsiCo based on its alleged involvement with Tea
     Partnership products (*see, e.g.*, TAC ¶¶ 27–30), PepsiCo joins in the arguments set out in the

28  separate motion to dismiss filed on behalf of the Tea Partnership.  The instant motion is focused
     ***solely*** on Plaintiffs' claims related to PepsiCo's 13 CSDs.  (*See id.* ¶¶ 182–186, 224–226.)

a faulty premise that cannot be supported by well-pleaded facts.  Plaintiff asserts that she is bringing this lawsuit because she "cares about the nutritional content of food and seeks to maintain a healthy diet."  (TAC ¶ 203.)  She alleges that she bought Pepsi-Cola because she initially believed that the product was completely free of any added flavors or preservatives, and only later learned that Pepsi-Cola contains phosphoric acid and citric acid—ingredients that Plaintiff baldly asserts were used as "artificial preservatives and/or flavors."  (*Id.* ¶¶ 105, 111, 183–186.)

But even after filing four different iterations of her complaint, Plaintiff *still* cannot identify any label statement that reasonably could have led her to believe that Pepsi-Cola was free of any additives.  For example, Plaintiff does not, and cannot, allege that the Pepsi-Cola labeling made any claims whatsoever that the beverage was "all natural" or "healthy" or had "no preservatives," "no artificial flavors," or "no added colors."  And as reflected in PepsiCo's concurrently filed Request for Judicial Notice, Plaintiff cannot make any such allegations because Pepsi-Cola's labeling only consists of a logo, the word "pepsi," and an ingredients statement that truthfully discloses the presence of phosphoric acid, citric acid, added caramel coloring, and other ingredients:

 

(*See* RJN, Exs. A & B.)

Gibson, Dunn &
Crutcher LLP

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Third Amended Complaint          Case No. 5:12-cv-01736

1  Plaintiff's continued failure to identify how she was misled in connection with her alleged

2  purchase of Pepsi-Cola—even in the face of PepsiCo's two prior motions to dismiss, and with the

3  benefit of the Court's two prior dismissal orders (Dkts. 60 and 83)—demonstrates that Plaintiff

4  simply cannot allege that there is any misleading claim made on Pepsi-Cola's label that has caused

5  her to lose money or property.  Likewise, while Plaintiff continues in her effort to challenge 12 other

6  PepsiCo CSDs that she does not allege purchasing (or even ever seeing), she has not alleged any new

7  facts to address the standing problems that this Court identified in its two prior dismissal orders.

8  Thus, Plaintiff's claims asserted against Pepsi-Cola and the 12 other CSDs (which she never

9  purchased) should be dismissed, with prejudice.

10  ## II.  FACTUAL BACKGROUND

11  Plaintiff's original complaint sought only to challenge antioxidant, "nutrient content," and

12  "natural" statements on the labels of certain Lipton Tea products.  These claims remained at the core

13  of the FAC, but instead of dropping PepsiCo from the case as Plaintiffs' counsel stated he would do,

14  the FAC added a cursory but sweeping challenge to PepsiCo's carbonated soft drinks.  The Court has

15  since twice dismissed Plaintiff's amended complaints, finding that she has failed to plead several of

16  her claims adequately.  The allegations in Plaintiff's TAC—her fourth attempt to state a claim—still

17  fail to provide any details about when and where she purchased Pepsi-Cola, how the Pepsi-Cola she

18  purchased was labeled, or how she reasonably relied to her detriment on any Pepsi-Cola labeling.

19  Plaintiff states that at some undefined point in the six-year class period, she bought "Pepsi

20  cola." (TAC ¶¶ 25, 182.)  Plaintiff does not allege that any "all natural" or "health" claims were

21  made on the label of the Pepsi-Cola she purchased.  Instead, Plaintiff asserts that "phosphoric acid"

22  and "citric acid" "appear[ed] on the label of Pepsi as an ingredient," but were "not identified as

23  providing artificial preservatives and/or flavors." (*Id.* ¶ 183.)  Plaintiff goes on to allege that this

24  labeling, which consists of a logo and a listing of the ingredients (*see supra* § I & RJN, Exs. A & B)

25  is "misleading," and that she purchased the product unwittingly because she believed that Pepsi-Cola

26  was a natural or health product free of any added preservatives or flavors.  (TAC ¶¶ 182–186.)

27  Plaintiff has never alleged that she purchased any other PepsiCo CSD besides Pepsi-Cola, but

28  the TAC again identifies 12 other PepsiCo CSD beverages that Plaintiff calls "Substantially Similar

Products."  Plaintiff asserts, without elaboration, that these products (the "Unpurchased Products")—were misleadingly labeled because they "fail[] to identify phosphoric acid and citric acid as providing artificial preservatives and/or flavors," though she neither attaches labeling for these Unpurchased Products nor describes their ingredients panels or label representations.  (*Id.* ¶¶ 210, 225.)  These are precisely the same allegations Plaintiff included in the portion of the SAC expressly rejected by this Court as inadequately pleading substantial similarity.  (Dkt. 83 at 9–10; Dkt. 61 ¶¶ 189, 213.)  Plaintiff's only attempt to respond to the Court's prior ruling as to the Unpurchased Products is the newly-added assertion—made without any factual allegations in support—that the Unpurchased Products "have the same basic ingredients (differing only in flavor) and the same label claims as the purchased regular Pepsi product . . . ."  (TAC ¶ 224.)

### III.  THE LEGAL STANDARDS GOVERNING THIS MOTION

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept factual allegations as true for purposes of a motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  After stripping away the "conclusory statements" in the complaint, the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level."  *Id.* (quotations omitted).  In making this "context-specific" determination, the Court must "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. 664.  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible such "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

This Court has already held that Plaintiff's claims are "subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b)" and therefore must "'state with particularity the circumstances constituting fraud.'"  (Dkt. 83 at 3 (quoting Fed. R. Civ. Proc. 9(b)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (applying Rule 9(b)'s

particularity requirement to UCL and CLRA claims).)  Thus, the TAC's "allegations must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"  (Dkt. 83 at 3 (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).)

As this Court held, this heightened standard applies with particular force to allegations of reliance and falsity:  "'the plaintiff must plead facts explaining *why* the statement [at issue] was false when it was made.'"  (*Id.* at 4 (citation omitted and emphasis added).)  Conclusory allegations fail, because Plaintiff "must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (1994).

## IV.  PLAINTIFF STILL FAILS TO STATE A CLAIM FOR RELIEF REGARDING ANY PEPSICO PRODUCT

### A.  Plaintiff Still Does Not Identify Any Actionable Misrepresentation In Pepsi-Cola Labeling

The Court's most recent order required Plaintiff to plead facts showing both that she relied on a deceptive advertisement and that members of the public were likely to be deceived.  (Dkt. 83 at 13 ("Plaintiff must plead reliance and show that 'members of the public are likely to be deceived.'").)  Similarly, the Court's order granting Defendants' Motions to Dismiss the FAC dismissed Plaintiff's claims (with leave to amend) on the basis that Plaintiff failed to identify the "particular statements" upon which she allegedly relied.  (Dkt. 60 at 7.)  Because Plaintiff repeatedly has failed to identify a particular Pepsi-Cola label statement that she relied upon to conclude (and which would mislead the public into believing) that Pepsi-Cola contained no artificial preservatives, flavors, or colors, her claims should now be dismissed with prejudice.

#### 1.  Plaintiff Fails To Identify Any Statement Or Omission That Could Create An Impression That The Product Contained No Artificial Preservatives Or Flavors

Plaintiff's case is based on the proposition that she "wants to purchase natural or healthy foods" (TAC ¶ 17), and thus would not have purchased Pepsi-Cola had she not believed it was free of any artificial preservatives, flavors, or colors (*id.* ¶ 185).  Plaintiff, however, does not allege any facts to show how she came to conclude that Pepsi was free of such additives.  While Plaintiff makes many assertions about ***other*** products that carry labels making various kinds of "health" claims (*see, e.g.*,

TAC ¶¶ 18, 51–104, 116–136), she **never** alleges that the Pepsi-Cola she purchased contained any such statements.  Nor could she—the only text on the label is the word "pepsi," a logo, and a truthful ingredient statement identifying that the beverage contains "phosphoric acid," "citric acid," "caramel coloring," and other ingredients.  (*See id.* ¶ 183; RJN Exs. A, B.)  Nothing in this pleaded set of facts demonstrates how Plaintiff (or any reasonable consumer) could reasonably have been misled into believing that Pepsi-Cola was free of preservatives, flavors and colors.  Without pleading any facts to show "what is false or misleading about [the challenged] statement"—the TAC fails sufficiently to allege reliance on a label misrepresentation, and Plaintiff's fraud-based UCL, FAL, and CLRA claims must be dismissed.  *GlenFed*, 42 F.3d at 1548.

Plaintiff's own TAC demonstrates why she cannot satisfy the reliance requirement.  Specifically, Plaintiff's theory of reliance is that she "did not know, and had no reason to know, that the products . . . contained undisclosed chemical preservatives and other artificial ingredients because (1) the Defendants *falsely represented on its label that the products were free of artificial ingredients & preservatives*, and (2) failed to disclose those chemical preservatives and artificial ingredients as required by California and federal law."  (TAC ¶ 111 (emphasis added); *see also id.* ¶ 186 ("This product is misleading and deceptive because the label suggests that the product is free of such artificial preservatives and/or artificial flavors.").)  In other words, Plaintiff's alleged reliance is predicated on a representation causing her to believe that the product was "free of such artificial preservatives and/or artificial flavors"—i.e., that it was "natural," without any additives.  (*Id.* ¶ 186.)

Here, however, the first prong in Plaintiff's reliance theory is missing—there is no representation that Pepsi-Cola was "free of artificial ingredients & preservatives."  (*Id.*)   There is likewise no representation that Pepsi-Cola is "all natural" or free from additives.  (*E.g., id.* ¶¶ 17, 102.)  Indeed, Plaintiff does not identify any representation about the product's qualities or characteristics of "healthfulness" that is made on the package at all; there are no allegations that any other statements on the Pepsi-Cola label indicated that it contained (or did not contain) any particular nutrients, antioxidants, or artificial additives.  Without any such statement, Plaintiff cannot point to anything on the label on which she did rely (or could have relied) to conclude that she was

1   purchasing a health product that was free of any artificial preservatives and flavors.[2]  All she

2   identifies is the truthful ingredient list stating that Pepsi-Cola contains phosphoric acid and citric

3   acid—and even then, she fails to quote the entirety of the ingredient list on the label.  (*Id.* ¶ 183.)

4          These allegations simply do not accord with this Court's mandate that Plaintiff allege with

5   particularity the "allegedly unlawful representations that were on the products, and the particular

6   statements Plaintiff allegedly relied on when making her purchase."  Dkt. 60 at 7.  Plaintiff's

7   complaint must allege "which parts of the labeling [she] read" and "*how* [she] relied on the

8   statements" at issue in order to survive dismissal.  *Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-

9   02908-EJD, 2013 U.S. Dist. LEXIS 51189, at *25 (N.D. Cal. Apr. 9, 2013) (emphasis added).  This

10  she clearly cannot do; the principal bases for her contentions appear to be her own unique and

11  undetailed assumptions about the characteristics of the Pepsi-Cola that she bought and the acids she

12  challenges, rather than any statement actually included on the product label or any factual allegations

13  grounded in reality.

14         Under these circumstances, courts dismiss such claims for failure to plead a plausible theory

15  of reliance.  *See*, *e.g.*, *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS

16  134385, at *23–25 (N.D. Cal. Sept. 19, 2013) (dismissing as implausible claims regarding labeling of

17  yogurt products where plaintiff claimed she relied on a statement that the yogurts contained

18  evaporated cane juice but could allege nothing to support her interpretation of such a statement as

19  meaning that the yogurts contained only "'natural sugars from milk and fruit'"); *Dunkel v. eBay Inc.*,

20  No. 12-CV-01452-EJD, 2013 U.S. Dist. LEXIS 13866, at *29–30 (N.D. Cal. Jan. 31, 2013) (rejecting

21  plaintiffs' allegations that eBay fraudulently placed limitations on sellers' ability to sell not outlined

22  in seller agreements because plaintiffs had "not identified any particular statement or practice on the

23  part of Defendant on which they base their claim, let alone any statement or practice having the

24  _____

25         [2] Thus, Plaintiff's claims here are quite different from those advanced in *Engurasoff v. The Coca-
       Cola Company*, No. 3:13-cv-03990-JSW, 2014 U.S. Dist. LEXIS 116936, at *13 (N.D. Cal. Aug.
26     21, 2014).  In *Engurasoff*, the plaintiff alleged that certain Coke labeling affirmatively
       represented that Coke included the statements "'no artificial flavors.  no preservatives added.
27     since 1886.'"  *See* No. 3:13-cv-03990-JSW (N.D. Cal.), Dkt. 15 (*Engurasoff* Amended
       Complaint) ¶ 14.  As detailed above, no similar allegations are or even *could be* made about the
28     labeling on Pepsi.

Gibson, Dunn &
Crutcher LLP

likelihood to deceive the public"); *Cullen v. Netflix*, No. 11-CV-01199-EJD, 2013 U.S. Dist. LEXIS 4246, at *19–21 (N.D. Cal. Jan. 10, 2013) (plaintiff's claims failed Rule 9(b) where he could not allege any factual support for his interpretation of the defendant's representations regarding its streaming video library, because his own unique view of what "30% of viewing" coverage meant had no bearing on how a reasonable consumer would interpret those words).[3]

Plaintiff's allegation that she reasonably relied because she believed the product was not "misbranded" under the Sherman Law and was therefore "legal to buy and possess" (*see* TAC ¶ 184) also fails.  This conclusory assertion is nothing more than an improper attempt to circumvent the Court's prior ruling dismissing her claims premised solely on "misbranding" or "unlawfulness" theories, without reliance.  (Dkt. 83 at 13–14.)  This Court's order confirmed that Plaintiff must plead reliance on a particular label statement, explaining that "Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance."  (*Id.* at 14; *id.* (noting that finding "'standing to bring claims based solely upon allegations that [a plaintiff] would not have purchased a product that was misbranded'" would be "'inconsistent with Proposition 64 and *Kwikset* [*Corp. v. Super. Ct.*, 51 Cal. 4th 310, 333 (Cal. 2011)]."" (quoting *Brazil v. Dole Foods Co.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *9 (N.D. Cal. Sept. 23, 2013))).)

Indeed, other courts have specifically rejected using generalized allegations about "misbranded" products as a method of pleading reliance, explaining that

> rather than allege reliance on an alleged misrepresentation as required by the UCL, at best Plaintiffs['] misbranding theory only alleges reliance on the "salability" of the products.  This is insufficient, as the statute requires reliance *on the allegedly injury-*

---

[3]   Although the Court's order on Defendants' Motions to Dismiss the SAC found that the SAC specified the statements on which Plaintiff allegedly relied, the Court's order appears to address only Plaintiff's "nutrient content," "antioxidant nutrient content," "nutritional value claims," "natural claims," and "website health claims"—i.e., the claims that dominated the SAC.  None of these statements, however, pertains to PepsiCo CSDs, because Plaintiff has never claimed that Pepsi-Cola or any PepsiCo CSD contained any "natural," "nutrient content," "antioxidant nutrient content," or "website health claims."  (*See* Dkt. 83 at 14 (finding that "the claims for nutrient content, antioxidant content, nutritional value claims, and natural claims are properly pled" but not addressing the separate phosphoric acid and citric acid claims directed to PepsiCo's CSDs).)

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Third Amended Complaint          Case No. 5:12-cv-01736

Gibson, Dunn &
Crutcher LLP

*causing practice.*"  *See Kwikset*, 51 Cal. 4th at 327 ("[P]laintiffs need only allege economic injury arising from reliance on Kwikset's misrepresentations.") (emphasis added).

*Figy v. Frito-Lay N. Am., Inc.*, No. 3:13-cv-03988-SC, 2014 U.S. Dist. LEXIS 111732, at *26 (N.D. Cal. Aug. 12, 2014); *id.* at *26–27 ("This is precisely the type of reasoning the Court rejected in *Wilson* when it stated that a 'mere alleged violation of the underlying regulations' is insufficient to state a claim under the UCL."); *accord Kane*, 2013 U.S. Dist. LEXIS 134385, at *33–34 (claim that plaintiff "'would not have purchased Defendants' [Yogurts] had they known they were not capable of being legally sold or held'" could not "suffice to establish reliance," because reliance based on such allegations alone "would eviscerate the enhanced standing requirements imposed by Proposition 64"); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143–44 (N.D. Cal. 2013) ("Ignoring these basic legal rules would invite lawsuits by all manner of plaintiffs who could simply troll grocery stores and the Internet looking for any food product that might form the basis of a class-action lawsuit.  Surely that is not the point of these consumer protection laws.").

In addition, Plaintiff cannot use her claim of misbranding, without more, to carry her burden to plausibly plead deception, because "deception claims must be predicated on more than simple regulatory violations." *Figy*, 2014 U.S. Dist. LEXIS 111732, at *32.  In *Figy*, the plaintiff attempted to plead deception on the basis that "fat free" claims on front-of-package labeling, as well as the alleged failure to comply with the FDA's requirements for sodium labeling, misled and deceived consumers into believing that the challenged pretzel products were healthier than alternative products.  *Id.* at *3–4.  The Court rejected this contention, noting that even taking plaintiff's allegation about FDA's sodium labeling requirements to be true, no reasonable consumer could have been deceived into believing that the pretzels had a low sodium content or were otherwise healthier than alternatives, because the consumer had available truthful statements on both the front and back labels of the products.  *Id.* at *31–32.  The same reasoning applies here:  no reasonable consumer could have been deceived into believing that Pepsi-Cola is a "natural" food or that it does not contain any additives (TAC ¶ 17) simply because the ingredient statement did not include a parenthetical denoting phosphoric acid and citric acid as "artificial preservatives and/or flavors"—something that Plaintiff alleges is required under FDA technical regulations.  (*Id.* ¶ 108.)

Moreover, it is implausible to infer from the few facts pleaded that Plaintiff or any reasonable consumer reasonably could have concluded that the product was completely free of any additives when the ingredient list expressly states that Pepsi-Cola contains "Caramel Color."  (*See supra* § I; *see also* RJN, Ex. B.)  Although Plaintiff does not appear to contend that the "Caramel Color" statement on Pepsi-Cola's label violates any FDA regulation, the TAC alleges that Pepsi-Cola contains "an unlawful and misleading label that fails to disclose the presence of preservatives, artificial colors, and artificial flavors."  (TAC ¶ 105.)  If Plaintiff read and relied upon the ingredient list as she claims (*id.* ¶ 184), and if she truly sought to avoid all additives, including "colors," as she claims (*see id.* ¶ 105; *see also id.* ¶ 16.B, at 28:3), then it is implausible to argue that she was (or that any reasonable consumer could have been) misled into believing that Pepsi-Cola was free of additives.  Her failure to allege any facts demonstrating reliance, and her assertion of facts that actually **contradict** any notion of reasonable reliance or deception, demonstrate that she has failed to allege two essential elements of her UCL, FAL, and CLRA claims.

Finally, there is little reason to believe that the "reasonable consumer" would share Plaintiff's particular point of view regarding phosphoric acid and citric acid, which have been widely present in countless carbonated soft drinks for decades.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995) (holding that the "'reasonable consumer'" is "'a person of ordinary intelligence,'" not an "'unwary consumer,'" and "unless particularly gullible consumers are targeted"—which Plaintiff does not (and cannot) allege here—a defendant "'may expect [consumers] to behave reasonably as well'") (citation omitted); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275, 39 Cal. Rptr. 3d 634 (Cal. Ct. App. 2006) (holding that allegation that "members of the public were likely to have been deceived" "merely concludes the public would likely be deceived, without pleading any facts showing the basis for that conclusion").  The Ninth Circuit has emphasized that the "reasonable consumer" test "requires more than a mere possibility that [the product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016).  The courts have dismissed similar food labeling claims—finding no deception as a matter of law—where, as here, the statements on the packaging, "taken as a whole, do not suggest to a reasonable consumer that the product contains natural

ingredients or is otherwise more healthful than [comparable] products." *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10–01044 JSW, 2011 U.S. Dist. LEXIS 6371, at *15–17 (N.D. Cal. Jan. 10, 2011) (finding no possibility that the statements "Classic" and "Original" would mislead the reasonable consumer into believing ice cream Drumsticks contained only natural ingredients or were healthier than other ice creams), *aff'd on other grounds*, 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5, 2012).

### 2.   Plaintiff Fails To Identify With Specificity The Pepsi-Cola Labeling She Purports To Challenge, As Required By Rule 9(b)

The Court granted PepsiCo's Motion to Dismiss the FAC because Plaintiff failed to allege "with particularity the specific circumstances surrounding the alleged mislabeling, which give rise to her claims." (Dkt. 60 at 7.)  The Court's most recent order similarly emphasized that Plaintiff must plead reliance on a particular statement.  (Dkt. 83 at 4 ("the plaintiff must plead facts explaining why the statement was false when it was made"), 14 ("if the court held that a plaintiff 'has standing to bring claims based solely upon allegations that he would not have purchased a product that was misbranded, purchasers who never 'viewed the defendant's advertising' or misleading labeling would have standing to sue.  Such a holding is inconsistent with Proposition 64 and *Kwikset*'" (quoting *Brazil*, 2013 WL 5312418, at *9)).)  Plaintiff has not, and cannot, plead with particularity the specific circumstances supporting any actionable reliance on a deceptive label statement.

While Plaintiff claims to provide a "specific description of the relevant label representations" (TAC ¶ 2), she does not provide a photo of the Pepsi-Cola label on the product that she allegedly purchased, nor does she provide even a complete description of the label on the product(s) she purchased or identify when she purchased Pepsi-Cola, where, or how often (*id.* ¶¶ 182–186). Plaintiff does not describe whether the label changed over time, or even whether she purchased Pepsi-Cola in the United States.  All she offers is a general statement that she "purchased Pepsi cola in the Class period," a general allegation that the ingredient list identifies phosphoric acid and citric acid without including a parenthetical description of the acids' functions as "artificial flavors or artificial preservatives," and an unparticularized averment that she "reasonably relied" on label representations.  (*Id.*)   Indeed, Plaintiff's allegations regarding the label statement she purports to

challenge have remained virtually unchanged since the FAC, despite this Court's rejection of Plaintiff's claims in the FAC as inadequately alleged:

| FAC (Dkt. 23) ¶ 105 | SAC (Dkt. 61) ¶ 186 | TAC (Dkt. 84) ¶ 183 |
|---|---|---|
| "Defendant PepsiCo's beverages, including the Pepsi bought by the Plaintiff, also contain **phosphoric acid** being used as an artificial flavor and/or acidulant but fail to disclose that fact.  Defendants do the same thing with the **citric acid** and other chemical preservatives and artificial flavors in their products." | "The following unlawful and misleading language appears on the label of Pepsi as an ingredient:<br><br>**'phosphoric acid' and 'citric acid'**" | "The following unlawful and misleading language appears on the label of Pepsi as an ingredient:<br><br>**'phosphoric acid' and 'citric acid' which are not identified as providing artificial preservatives and/or flavors**" |

Plaintiff's cursory allegations about the label of Pepsi-Cola do not suffice.  "The primary evidence in a false advertising case is the advertising itself,"[4] and "attaching only a selection of labels will not suffice under Rule 9(b)" where "[a] plaintiff alleg[es] that product labels or packaging contain misrepresentations . . . ."  *Janney v. Gen. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013). Here, Plaintiff still has not attached a copy of the Pepsi-Cola label that she challenges; in fact, she has not even included a complete description of the product label.[5]

As this Court has emphasized, Plaintiff must, at minimum, plead *when* and *where* she purchased Pepsi-Cola, as well as *what particular label statements form the basis of her claims*.  (Dkt. 83 at 4 ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted))).)  Accordingly, Plaintiff's conclusory assertion that she purchased a Pepsi-Cola at some unspecified time, in an unspecified package, at an unspecified location does not suffice.  *See,*

---

[4]  *Carrea*, 2011 U.S. Dist. LEXIS 6371, at *16.

[5]  Instead, Plaintiff makes generalized statements that she "read and reasonably relied on the labels as described herein when buying the Purchased Products."  (TAC ¶ 203; *see also id.* ¶ 244 (inexplicably stating that Plaintiff—who is *female*—"read and relied on the unlawful claims on the defendants' product labels and based *his* purchasing decisions on the truthfulness of such claims") (emphasis added).)  This is precisely the kind of boilerplate, "ambiguous[] and non-specific[]" allegation this Court previously found failed to satisfy Rule 9(b).  Dkt. 60 at 7–9.

Gibson, Dunn &
Crutcher LLP

*e.g.*, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (explaining that an allegation that a plaintiff purchased a product "repeatedly," yet which "does not allege with any greater specificity the dates on which the purchases were made" nor the "retailer or retailers" where the purchases were made, fails to provide the requisite specificity); *Briseno v. ConAgra Foods, Inc.*, No. 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750, at *37–38 (C.D. Cal. Nov. 23, 2011) (failure to "allege . . . whether the statements remained the same throughout the class period, or, if they did not, on which . . . statement(s) [plaintiff] relied" does not satisfy Rule 9(b)).

Plaintiff's failure to allege her claim with specificity also is revealed by her failure to plead *any* facts detailing why she bought Pepsi-Cola in the first place or what "other food alternatives that . . . satisfied legal standards" or "cheaper alternatives" she would have—or even *could have*—purchased instead of Pepsi.  (TAC ¶ 185.)  This is of crucial relevance, given that Plaintiff's case is predicated on her professed desire to "purchase natural or healthy foods" (*id.* ¶ 17), and she has placed her purchase of Pepsi-Cola at issue.  Moreover, nearly all—if not entirely all—commercially available carbonated colas contain phosphoric acid or citric acid.  Plaintiff's continued failure to support her assertion that she was somehow misled by the truthful ingredients list on Pepsi-Cola requires dismissal under Rule 9(b).  *See Kearns*, 567 F.3d at 1126; *Yumul*, 733 F. Supp. 2d at 1124.

*        *        *

Because the gravamen of Plaintiff's claim is that she was deceived by the labeling of Pepsi-Cola, she was required to provide the *specific* details that her complaint currently lacks.  Plaintiff's unadorned allegations are legally insufficient because they fail to "provide a clear and unambiguous account of the allegedly fraudulent, deceptive, or misrepresentative statements with the specificity and particularity required by Rule 9."  *Thomas*, 2013 U.S. Dist. LEXIS 51189, at *16–17.  Further, Plaintiff's failure to provide the required details of deception and reliance in three consecutive complaints demonstrates that she *cannot* provide them, and the claims relating to Pepsi (and the unpurchased CSDs) should be dismissed with prejudice.

**B.      The TAC Provides No Reason To Disturb The Court's Finding That Plaintiff Lacks Standing To Sue Regarding Carbonated Soft Drink Products She Never Purchased**

Plaintiff's TAC attempts to re-assert claims regarding 12 unpurchased CSDs.  Plaintiff's

claims are foreclosed by this Court's order rejecting virtually *identical* allegations of product similarity in the SAC.  (Dkt. 83 at 10.)

Plaintiff adds a single assertion, phrased in three immaterially different ways, to her TAC in an attempt to evade the Court's prior ruling dismissing her claims as to the Unpurchased Products for failure to allege substantial similarity:  she baldly concludes that the PepsiCo CSDs she did not purchase "have the same basic ingredients (differing only in flavor) and the same label claims as the Purchased regular Pepsi product."  (TAC ¶ 224.)[6]  However, this Court has already rejected Plaintiff's similarly conclusory claims that the Purchased and Unpurchased Products Plaintiff challenges are "'physically substantially similar' and share identical labeling claims" in light of Defendants' showing that the same challenged "products had considerable differences among the labels."  (Dkt. 83 at 10 (quoting Dkt. 73 at 7; Dkt. 67 at 6).)

The TAC provides no reason for this Court to depart from its prior order, particularly with respect to the CSD products.  Under the "substantially similar" standard the Court adopted in its order on the SAC (*id.*), standing to assert claims as to products Plaintiff did not purchase may only be found where the purchased and unpurchased products "contain[] the same controverted ingredient," the labels of the purchased and unpurchased products make the "same representations," and "the only differences between the products [a]re not germane to Plaintiff's claims (i.e. the products only differ[] in terms of flavor)."  *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 U.S. Dist. LEXIS 35069, at *9–10 & n.4 (C.D. Cal. Feb. 21, 2013); *see also*, *e.g.*, *Kane*, 2013 U.S. Dist. LEXIS 134385, at *37–38 (no standing to pursue claims based on unpurchased yogurt flavors where "the alleged *misrepresentations* appear[ed] to be similar across all Defendant's products," but "Plaintiffs d[id] not allege facts sufficient to show that the *products* Plaintiffs did not purchase are 'substantially similar' to those that they did"—even where the purchased products were

---

[6]  (*See also id.* ¶¶ 225–226 (asserting without factual support or differentiation of products with dissimilar ingredients that "[e]ach of the Pepsi products (purchased and non-purchased) is packaged in almost identical fashion and each has the same unlawful failure to identify phosphoric acid and citric acid as providing artificial preservatives and/or flavors" and that "[e]ach Pepsi product (purchased and non-purchased) contains the same basic ingredients, including phosphoric acid and citric acid which are not identified as required by FDA and California law as providing artificial preservatives and/or flavors").)

other flavors of yogurt); *Lanovaz v. Twinings N. Am. Inc.*, No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 74250, at *6 (N.D. Cal. May 23, 2013) ("the claims related to the not purchased products must be nearly identical to the claims for the purchased product"); *accord NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (a lead plaintiff has no standing to assert claims on behalf of class members for injuries he did not personally suffer unless the "misconduct" at issue—the alleged misstatement—"implicates the same set of concerns" (quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003))); *Harris v. Las Vegas Sands L.L.C.*, No. CV 12-10858 DMG (FFMx), 2013 U.S. Dist. LEXIS 185587, at *12-13 (C.D. Cal. Aug. 16, 2013) (same).

Plaintiff's continued assertion of mere conclusory allegations of product similarity make clear that she cannot establish standing to assert a claim regarding the 12 CSDs she did not purchase. Indeed, a quick review of the product labels demonstrates that the product labels are substantially different in ways that materially undermine Plaintiff's theory of deception:

- The labels for Unpurchased Products Pepsi MAX, Pepsi NEXT, Pepsi One, Diet Pepsi, Caffeine Free Diet Pepsi, Diet Pepsi Lime, Diet Pepsi Vanilla, and Diet Pepsi Wild Cherry, all expressly state that they contain either potassium benzoate, potassium sorbate, or calcium disodium EDTA in order to "preserve[] freshness" or "protect flavor."  (*See, e.g.*, RJN, Ex. H; *see also id.* Exs. A–G.)



Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Third Amended Complaint        Case No. 5:12-cv-01736

Gibson, Dunn & Crutcher LLP

- In addition, the label for Diet Pepsi Vanilla clearly notes the presence of artificial flavors. (*Id.*, Exs. E & F.)

 

No reasonable consumer could possibly be misled into believing that these products did not contain preservatives or artificial flavors—and Plaintiff has not alleged *any* other facts supporting her claims of misbranding and deception for these Unpurchased Products, despite having been alerted to these dispositive differences in PepsiCo's Motion to Dismiss the SAC.  (Dkt. 65 at 17.)

The unpurchased CSDs clearly differ from regular Pepsi-Cola in more than just flavor—and as the Court's order on the SAC noted, simply alleging that the products all "share an alleged Sherman Law violation" cannot suffice where, as here, the challenged products "[a]re different, look[] different, and [a]re labeled differently," because such barebones pleading does "not allege 'the sort of similarity of representation or product' that would amount to 'the same basic mislabeling practice'" that could support standing for unpurchased products.  (Dkt. 83 at 9–10 (analogizing to *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 871 (N.D. Cal. 2012)).)  Indeed, courts routinely and resoundingly reject bare assertions of product or label similarity like those in the TAC, particularly when a review of the labels themselves reveals that the label statements on the products differ in material ways.  *See, e.g., Wilson*, 961 F. Supp. 2d at 1141–42 (denying plaintiff standing to

Gibson, Dunn & Crutcher LLP

pursue claims as to "all natural" labeling on unpurchased snack food products with similar ingredients, where plaintiff claimed that "with the exception of flavors," the purchased and unpurchased products "contain the same ingredients and implicate the same concerns," but review of the labels revealed that references to "natural" ingredients on labels varied from product to product).[7]

The Court should again reject Plaintiff's invitation to "just assume that every one of the nonpurchased products' labels is actionable in the same way as the more fully described purchased products' labels." (Dkt. 83 at 10.)  The labels of the Unpurchased Products themselves demonstrate that Plaintiff seeks to challenge the Unpurchased Products on the basis of dissimilar label claims that actually *contradict* her theory of injury for carbonated soft drinks.  (*See* RJN, Exs. A–F.)  And because Plaintiff has again failed to allege any particularized facts demonstrating either the similarity of the labels on the 12 Unpurchased Products to the Pepsi-Cola she allegedly purchased or the identity of the harm suffered, her claims as to the Unpurchased Products should be dismissed with prejudice.  *See Wilson*, 961 F. Supp. 2d at 1141–42; *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2013 U.S. Dist. LEXIS 49733, at *20–29 (N.D. Cal. Apr. 5, 2013); *Stephenson*, 2012 U.S. Dist. LEXIS 105099, at *2–3; *Larsen*, 2012 U.S. Dist. LEXIS 162402, at *13–14.

## V.  CONCLUSION

Plaintiff's TAC does not even attempt to cure the defects PepsiCo and the Court identified in the SAC.  The new pleading still boils down to a single, unsubstantiated assertion regarding PepsiCo

---

[7] *Accord*, *e.g.*, *NECA–IBEW Health & Welfare Fund*, 693 F.3d at 163–64 (plaintiff could not assert claims on behalf of class members who purchased trust certificates he did not purchase); *Khasin v. R.C. Bigelow*, No. 12-02204 JSW, 2013 U.S. Dist. LEXIS 77084, at *10–11 (N.D. Cal. May 31, 2013) (no standing to pursue claims based on unpurchased tea products); *Lanovaz*, 2013 U.S. Dist. LEXIS 74250, at *6–7 (dismissing claims as to tea products that did not bear the "exact same label" as purchased products); *Stephenson v. Neutrogena Corp.*, No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099, at *2–3 (N.D. Cal. July 27, 2012) (dismissing claims as to products never purchased); *Larsen v. Trader Joe's Co.*, 2012 U.S. Dist. LEXIS 162402, at *13–14 (N.D. Cal. June 14, 2012) (same); *cf. Figy*, 2014 U.S. Dist. LEXIS 111732, at *13–14 (finding substantial similarity only where, as distinguished from here, "the mislabeling of the Non-Purchased Products [wa]s not just similar, but identical to the Purchased Products"); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (allowing plaintiffs to challenge different flavors of ice cream because they sufficiently alleged that each product bore the same label and contained the same four allegedly non-natural ingredients).

Gibson, Dunn &
Crutcher LLP

carbonated soft drinks—that Plaintiff purchased a Pepsi-Cola at some point in the last 10 years that truthfully disclosed the presence of phosphoric acid and citric acid on the ingredients label.  Plaintiff still fails to allege any particularized facts about her purchase, the label, and the "precise language that constitutes the misrepresentation," much less describe in any meaningful way how she possibly could have been misled by the truthful ingredients statement on Pepsi's label.  Instead, Plaintiff continues to offer cursory, implausible conclusions and generalized legal arguments that are not entitled to the presumption of truth.  Thus, Plaintiff's TAC—her fourth attempt to plead her claims adequately—yet again fails to set forth the well-pleaded and particularized facts required to state a claim, and the claims against PepsiCo should be dismissed with prejudice.  *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012) (denying leave to amend where amended complaint "failed to cure deficiencies . . . identified in the [court's] order" granting a prior motion to dismiss).

DATED:  January 4, 2018                    GIBSON, DUNN & CRUTCHER LLP
                                           DANIEL W. NELSON
                                           TIMOTHY W. LOOSE


                                           By:    */s/   Daniel W. Nelson*

                                           Attorneys for Defendant PepsiCo, Inc.

Defendant PepsiCo, Inc.'s Motion To Dismiss Plaintiff's Third Amended Complaint          Case No. 5:12-cv-01736