United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMY MAXWELL,<br><br>    Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., et al.,<br><br>    Defendants. | Case No. 5:12-cv-01736-EJD<br><br>**ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 123 |

Presently before the Court is Defendant PepsiCo, Inc.'s ("PepsiCo") motion to dismiss all of the claims and causes of action in Plaintiff Amy Maxwell's ("Plaintiff") Third Amended Complaint ("TAC") relating to Pepsi's carbonated soft drinks. Motion to Dismiss ("Mot."), Dkt. No. 123. Pursuant to Civil Local Rule 7-1(b), this matter is suitable for decision without oral argument. For the reasons stated below, Pepsi's motion is GRANTED.

**I. BACKGROUND**

The Court's first and second dismissal orders (Dkt. Nos. 60, 83) set forth the detailed legal and factual background for Plaintiff's claims. The Court reviews facts relevant to the instant motion below:

Plaintiff is a California consumer who purchased Pepsi and seven other of Defendants' products. Third Amended Complaint ("TAC") ¶¶ 1-2. Plaintiff brings a putative class action suit against Defendants on behalf of all persons in the United States who, since April 6, 2008 to the present, purchased the same or 83 similar food products allegedly mislabeled. *Id.* ¶ 1. Of the 83,

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1

Plaintiff claims the following 12 are "substantially similar" to Pepsi:
- Caffeine Free Pepsi
- Pepsi MAX
- Pepsi NEXT
- Pepsi One
- Pepsi Wild Cherry
- Diet Pepsi
- Caffeine Free Diet Pepsi
- Diet Pepsi Lime
- Diet Pepsi Vanilla
- Diet Pepsi Wild Cherry
- Pepsi Made in Mexico
- Pepsi Throwback

*Id.* ¶ 4.

With respect to these products, Plaintiff alleges a single theory of liability: that PepsiCo engaged in unlawful food labeling practices by failing to disclose the presence of chemical preservatives, artificial flavorings, or artificial added colors. *Id.* ¶ 16. In the allegedly offending products, "phosphoric acid" and "citric acid" appear in the list of ingredients on the side of the can, but the can does not otherwise give any indication that the Pepsi products contain artificial preservatives or flavors. *Id.* ¶ 183. For example, one Pepsi can contains the following labels:

 

PepsiCo's Request for Judicial Notice ("PepsiCo's RJN"), Dkt. No. 124, Exs. A and B.

Plaintiff complains that "phosphoric acid" and "citric acid" are "unlawful and misleading

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

2

language" because they are not identified as providing artificial preservatives and/or flavors." *Id*. ¶ 183. Plaintiff argues that she reasonably relied on these representations, and that she "would not have otherwise purchased this product had she known the truth about this product, i.e., that it contained artificial flavors or artificial preservatives." *Id*. ¶ 185.

The Court has already twice dismissed Plaintiff's claims. Dkt. Nos. 60, 83. After filing her TAC, Defendants again moved to dismiss. Mot. The Court subsequently stayed this case under the primary jurisdiction doctrine, with the exception that it would accommodate the instant motion from PepsiCo. Dkt. No. 122.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction, and may be either facial or factual. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A facial Rule 12(b)(1) motion involves an inquiry confined to the allegations in the complaint. Thus, it functions like a limited-issue motion under Rule 12(b)(6); all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. *Thornhill Publ'g Co. v. General Tel. Elec*., 594 F.2d 730, 733 (9th Cir. 1979).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

3

speculative level" such that the claim "is plausible on its face." *Twombly*, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1998). "[M]aterial which is properly submitted as part of the complaint may be considered." *Twombly*, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." *Smith v. Allstate Ins. Co*., 160 F.Supp.2d 1150, 1152 (S.D.Cal. 2001) (citation omitted); *see also In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

### III. DISCUSSION

All of Plaintiff's claims are premised on her contention that, by listing "phosphoric acid" and "citric acid" as ingredients on the Pepsi can label but not identifying them as artificial flavors

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

4

1 and/or preservatives, Pepsi is unlawfully and misleadingly mislabeled. TAC ¶ 185. Plaintiff
2 claims that Defendants violate California's False Advertising Law, *see* Cal. Bus. & Prof. Code
3 § 17500, the Consumer Legal Remedies Act, *see* Cal. Civ. Code § 1770, and the Unfair
4 Competition Law ("UCL"), *see* Cal. Bus. & Prof. Code § 17200. *Id*. ¶¶ 240-304.

PepsiCo attacks Plaintiff's claims as (1) lacking standing under Rule 12(b)(1); and (2) legally insufficient under Rule 12(b)(6). The Court addresses each in turn.

### A. Requests for Judicial Notice

A court may take judicial notice of a document on which the complaint "necessarily relies" if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Natl. Educ. Assn.*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012) ("Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the label and the labels are central to the plaintiff's complaint.").

PepsiCo requests judicial notice of the eleven product labels at issue (Exs. A-H). Dkt. No. 124. Plaintiff does not appear to object to PepsiCo's request, and the packaging labels satisfy the requirements discussed above. In addition, the Court has previously judicially noticed product labels in this case. Dkt. No. 83 at 6. Accordingly, PepsiCo's request for judicial notice is GRANTED.

Plaintiff requests judicial notice of ingredient definitions which she downloaded from PepsiCo's website. Dkt. No. 128. PepsiCo objects to this request on the ground that the website is not incorporated into or referenced by the TAC. Dkt. No. 130. The Court agrees with PepsiCo that these definitions are not referenced in the TAC or central to Plaintiff's claim. Indeed, as the discussion below reveals, the Court can decide the present motion without considering them. Accordingly, Plaintiff's request for judicial notice is DENIED.

### B. Article III Standing

To have standing under Article III of the U.S. Constitution, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

As with PepsiCo's last motion to dismiss, PepsiCo does not dispute that Plaintiff has standing as to the purchased Pepsi product, and instead only challenges Plaintiff's standing as to the 12 non-purchased Pepsi products. Mot. 14-18. To date, courts have reached different conclusions as to whether a plaintiff has standing for products they did not purchase. *See, e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (collecting cases). In its previous dismissal order, this Court adopted the approach of some courts in this district, which have concluded that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar. Dkt. No. 83 at 7-10. It nevertheless dismissed Plaintiff's claims with leave to amend as to the unpurchased products because Plaintiff had not adequately alleged that the non-purchased products were substantially similar to the purchased products. *Id*.

Here, PepsiCo argues that Plaintiff again failed to adequately allege that the non-purchased products are substantially similar. Mot. 14-18. The Court disagrees. The TAC alleges that the non-purchased products "have the same basic ingredients (differing only in flavor) and the same label claims as the Purchased regular Pepsi product." TAC ¶ 224. It also makes specific allegations as to phosphoric acid and citric acid, the alleged misleading statements at issue here. *Id*. ¶¶ 225-26. Taken as true and construed in the light most favorable to Plaintiff, this is sufficient.

### C. UCL, FAL, CLRA Statutory Standing

In addition to the Article III requirements, the UCL, FAL, and CLRA require that Plaintiff

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

6

demonstrate standing. To have standing under the FAL and the CLRA, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. *See, e.g.*, Cal. Bus. & Prof. Code § 17535 (providing that a plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of a violation of this chapter"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (finding plaintiff's CLRA claim failed because plaintiff failed to allege facts showing that he "relied on any representation by" defendant). To have standing under the UCL's fraud prong, a plaintiff must demonstrate that she actually relied upon the allegedly fraudulent misrepresentation. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). In addition, courts have held that at least for claims under the UCL's unlawful and unfair prongs that are based on misrepresentation or deception, a plaintiff must plead actual reliance to have standing. *See, e.g.*, *In re Actimmune Mktg. Litig.*, No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011).

Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II*, 46 Cal. 4th at 326 (citation and alteration omitted). "A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *Id*. However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id*. at 328. Instead, "[i]t is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." *Id*. at 207.

PepsiCo argues that Plaintiff failed to plead actual reliance as to any of her claims because she did not identify the particular statements she allegedly relied upon.[1] Mot. 6. The Court

---

[1] PepsiCo also, in so arguing, contends that Plaintiff has not alleged reliance under the reasonable consumer standard. However, the reasonable consumer standard is not a standing requirement, but a substantive requirement of UCL, FAL, and CLRA claims. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("But the reasonable consumer standard, unlike the individual reliance requirement described above, is not a standing requirement."). Accordingly, the Court will

agrees. The TAC alleges:

> The following unlawful and misleading language appears on the label of Pepsi as an ingredient: "phosphoric acid" and "citric acid" which are not identified as providing artificial preservatives and/or flavors

TAC ¶ 183. It also alleges that Plaintiff "reasonably relied on the[se] label representations" and "based and justified the decision to purchase the product" on these representations. TAC ¶ 185. However, even accepting these allegations as true and construing them in the light most favorable to Plaintiff, the TAC fails to explain how Plaintiff could have read the words "phosphoric acid" and "citric acid" (or otherwise read the Pepsi label) and been lead to believe that Pepsi did not contain artificial flavors. This theory becomes even more attenuated when viewed in context: colas like Pepsi are artificial products and have been familiar to the public as such for decades. In addition, the ingredients list identifies at least one other artificially sounding flavor: "Caramel Color." PepsiCo's RJN, Ex. B. As such, Plaintiff's theory that she read the words "phosphoric acid" and "citric acid" and concluded that Pepsi did not contain artificial ingredients simply is not plausible under either Rule 8(a) or Rule 9(b).[2]

Because Plaintiff has failed to adequately allege reliance and reliance is a necessary element of all of Plaintiff's claims, Plaintiff's claims are DISMISSED. Although this, in and of itself, is sufficient to decide PepsiCo's motion, the Court also finds for the reasons discussed below that certain substantive standards of the UCL, FAL, and CLRA also provide grounds for dismissal, so the Court will address those as well.

### D. UCL, FAL, CLRA Substantive Claims

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus.

---

discuss this issue separately, below.

[2] As the Court previously found in its order on PepsiCo's motion to dismiss Plaintiff's Amended Complaint, Plaintiff's claims "sound in fraud"—e.g., PepsiCo's alleged misleading labeling of its Pepsi cans—and must be judged under the heightened pleading standard of Rule 9(b). Dkt. No. 60 at 6-7; *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (holding that if "fraud is not a necessary element of a [particular] claim," Rule 9(b) will apply if the plaintiff has "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of [the] claim").

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

8

& Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.2009). The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. and Prof. Code § 17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

False advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the "reasonable consumer" standard. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal.App. 4th 496, 504 (2003); *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002); *cf. Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 472 (9th Cir. 2017) ("[T]he reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation.").

The "reasonable consumer" standard requires a plaintiff to show that "members of the public are likely to be deceived." *Williams*, 552 F.3d at 938; *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360, 8 Cal. Rptr. 3d 22 (2003). As the Ninth Circuit has explained, the "reasonable consumer" standard

> requires more than a mere possibility that [Defendants'] label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486, 495 (2003). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*.

*Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016).

As discussed above, Plaintiff's theory of liability revolves around a single alleged fact: Pepsi listed "phosphoric acid" and "citric acid" as ingredients, but did not identify that Pepsi contained artificial preservatives or flavors. *See id*. ¶¶ 182-86. Plaintiff claims this constitutes an "unlawful" business practice under the UCL because it violates a number of laws and regulations,

including California Health & Safety Code § 110740[3] and 21 C.F.R. § 101.22.[4] TAC ¶¶ 184, 187-202; Opposition to Motion to Dismiss ("Opp'n"), Dkt. No. 127, at 9. Plaintiff also claims this mislead consumers into believing that the Pepsi products did not "contain[] artificial flavors or artificial preservatives," TAC ¶ 185, and as such violated the FAL, CLRA, and unfair and fraudulent prongs of the UCL. TAC ¶¶ 253-304, Opp'n 11. At least this latter set of claims is governed by the "reasonable consumer" standard.[5]

Plaintiff has not alleged claims under the FAL, CLRA, and fraudulent and unfair prongs of the UCL (as well as the unlawful prong of the UCL, to the extent it is premised on violations of the FAL and CLRA) that satisfy the reasonable consumer standard. After carefully reviewing the labels of the Pepsi products at issue, the Court finds that a reasonable consumer would not be deceived by them. The labels contain no affirmative representation that the contents are free from artificial ingredients. Instead, they correctly (a point which Plaintiff does not disagree with) report the ingredients of Pepsi, and identify that these ingredients include "phosphoric acid" and "citric

---

[3] California Health & Safety Code § 110740 provides that "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."
[4] 21 C.F.R. § 101.22(c) provides in relevant part that "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."
[5] Courts in this district have found that the "reasonable consumer" standard applies to claims under the unlawful prong of the UCL when the claim is "grounded in fraud." *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017) (unlawful prong of UCL claims grounded in fraud where plaintiff alleged that defendant made deceptive health claims on its packaging); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (unlawful prong of UCL claims grounded in fraud where the plaintiff alleged "violations of the advertising and misbranding provisions of the Sherman Law"). Under this logic, the Court would conclude that Plaintiff's claim under the unlawful prong of the UCL is "grounded in fraud" and thus subject to the "reasonable consumer" standard because the gravamen of Plaintiff's claim is that Defendant deceptively failed to identify that Pepsi contained artificial flavors or ingredients. *See* TAC ¶¶ 182-86. However, the Ninth Circuit's unpublished opinion in *Bruton*, 703 F. App'x at 471 casts some doubt as to how far this logic extends, as the court there reversed a finding that the "reasonable consumer" standard applied to a plaintiff's unlawful prong UCL claims because the predicate violations "include[d] no requirement that the public be likely to experience deception." Accordingly, the Court will decline to apply the "reasonable consumer" standard to Plaintiff's claims that are based on the unlawful prong of the UCL at least at this stage.

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

10

acid." Neither of these ingredients are substances that an ordinary person would immediately recognize as occurring in nature, and the fact that the labels do not call these out as artificial would not deceive a reasonable consumer into thinking otherwise. Indeed, soft drinks such as Pepsi are highly artificial and processed products that have been around for decades and are familiar to most consumers. It would not be reasonable for a consumer to assume, just based on the absence of some kind of affirmative indicator of artificiality in a back-side ingredient list, that a product was not artificial.

Further, to the extent that "phosphoric acid" and "citric acid" in and of themselves are not enough to suggest artificiality, the label read in its entirety does. For example, the ingredients list also includes "Caramel Color." PepsiCo's RJN, Ex. B. No reasonable consumer would deem this a non-artificial ingredient. Accordingly, to the extent that Plaintiff's theory of deception is premised on the entire Pepsi label (as opposed to simply the words "phosphoric acid" and "citric acid"), it fails for this reason as well.

Plaintiff's argument to the contrary is not persuasive. Plaintiff appears to rest her theory of deception on the salability of the products, which appears to be as follows: According to Plaintiff, by failing to disclose that "phosphoric acid" and "citric acid" were artificial ingredients, PepsiCo violated various laws and regulations (e.g., California Health & Safety Code § 110740 and 21 C.F.R. § 101.22), which rendered the Pepsi products unsalable. Opp'n 13-16. However, because these products were put on the market, Plaintiff continues, consumers were deceived into thinking they did not violate these statutes and/or were otherwise mislabeled. *Id*. This reasoning is circular and has been consistently rejected by courts. *See, e.g.*, *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) ("[D]eception claims must be predicated on more than simple regulatory violations."). The Court likewise declines to entertain this reasoning here.

Accordingly, because, based on the Court's own review of the Pepsi labels, a reasonable consumer is not likely to be deceived into believing that Pepsi does not contain artificial preservatives or flavors, Plaintiff has failed to allege claims under the FAL, CLRA, and fraudulent

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

11

1 and unfair prongs of the UCL (as well as the unlawful prong of the UCL, to the extent it is

2 premised on violations of the FAL and CLRA) that satisfy the "reasonable consumer" standard.

3 As such, these claims fail as a matter of law and are DISMISSED on this basis as well.

### E. Leave to Amend

Leave to amend a complaint, while generally granted liberally, is properly denied when the amendments would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, amendment is futile as to Plaintiff's claims under the FAL, CLRA, and fraudulent and unfair prongs of the UCL (as well as the unlawful prong of the UCL, to the extent it is premised on violations of the FAL and CLRA) because the Court concludes that labels at issue are not deceptive under the "reasonable consumer" test and the labels themselves cannot be changed by further amendment. What remains, then, are the alleged violations of the unlawful prong of the UCL. However, as discussed above, these claims fail because Plaintiff has not plausibly plead reliance. Because this is the same ground under which the Court has previously dismissed these claims, *see* Dkt. No. 83 at 13-14, the Court finds that, under the circumstances here, further amendment would be futile as to these claims as well. Accordingly, the Court will not permit amendment as to any of Plaintiff's claims.

### IV. CONCLUSION

PepsiCo's motion to dismiss all of the claims and causes of action in the TAC relating to Pepsi's carbonated soft drinks is GRANTED. Further, because further amendment would be futile, leave to amend is DENIED.

**IT IS SO ORDERED.**

Dated:

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cv-01736-EJD
ORDER GRANTING DEFENDANT PEPSICO, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

12